**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **HARRISON COMPANY, LLC.,** | § | |
| | § | |
| **Plaintiff,** | § | **Civil Action No.: 3:19-cv-01057-B** |
| | § | |
| **v.** | § | |
| | § | |
| **A-Z WHOLESALERS, INC., and** | § | |
| **BARKAT G. ALI,** | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANTS' RESPONSE AND BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION AND BRIEF FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................................1

II.   OBJECTION TO PLAINTIFF'S SUMMARY JUDGMENT EVIDENCE .......................2

III.  SUMMARY JUDGMENT STANDARD ...........................................................................6

IV.   ARGUMENTS AND AUTHORITIES .................................................................................8

       a.    Existence of Genuine Issues of Material Fact Concerning Customer Numbers......8

       b.    Harrison Fails to Dispense of A-Z's Affirmative Defenses of Lack of Privity
           Of Contract and Lack of Capacity and Authority to Sue .........................................9

       c.    Harrison Fails to Dispense of A-Z's Affirmative Defenses of Modification,
           Novation, Ratification, Consent, and Acquiescence .............................................12

V.    CONCLUSION......................................................................................................................13

VI.   PRAYER ...............................................................................................................................14

CERTIFICATE OF SERVICE ........................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................6, 8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)...............................................................6

*Davis v. Fort Bend County*, 765 F.3d 480 (5th Cir. 2014) ............................................7

*Johnson v. Globalsantafe Offshore Services, Inc*., 799 F.3d 317 (5th Cir. 2015) ...........7

*Matsushita Elec. Inds. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).......................7

*McCallum Highlands, Ltd. v. Wash. Capital Dus. Inc*., 66 F.3d 89 (5th Cir. 1995).......7

*Willis v. Cleco Corp.*, 749 F.3d 314 (5th Cir. 2014)................................................6, 7, 8

<u>Statutes</u>

Tex. Bus. & Com. Code § 2.204(a)...............................................................................13

Tex. Bus. & Com. Code § 2.207(c)...............................................................................13

Tex. Bus. & Com. Code § 2.209(a)...............................................................................13

<u>Rules</u>

Fed. R. Civ. P. 56(a) .....................................................................................................6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **HARRISON COMPANY, LLC.,** | § | |
| | § | |
| **Plaintiff,** | § | **Civil Action No.: 3:19-cv-01057-B** |
| | § | |
| **v.** | § | |
| | § | |
| **A-Z WHOLESALERS, INC., and** | § | |
| **BARKAT G. ALI,** | § | |
| | § | |
| **Defendants.** | § | |

### DEFENDANTS' RESPONSE AND BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION AND BRIEF FOR SUMMARY JUDGMENT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

**COME NOW**, Defendants A-Z Wholesalers, Inc ("A-Z") and Barkat Ali ("Ali"), in the above-entitled and numbered cause, by and through their attorneys, file this *Response and Brief* (the "Response") to *Plaintiff's Motion And Brief For Summary Judgment* [D.E. 51/52] (the "Motion"). Defendants move this Court to deny Plaintiff's Motion and show as follows:

### I.
### INTRODUCTION

1.     On March 25, 2019, Imperial Trading Co. LLC ("Imperial") the parent company and sole member of Plaintiff ("Harrison"), filed suit against Defendants in Dallas County District Court in Cause No. DC-19-04222 (the "State Action"), for alleged damages from Defendants' failure to make payments due and owing to Imperial under certain credit agreements.[1]

---

[1] Plaintiff's Verified Original Petition and Emergency Application For Ex-Parte Appointment of Receiver. p.8, ¶32 and ¶36. [APP 8]

2.      The State Action suit was unsuccessful.  That suit ended with Imperial non-suiting its claims against Defendants.[2]

3.      Plaintiff then maneuvered to sue Defendants in the above-entitled and numbered cause (the "Federal Action"), asserting identical claims and damages against Defendants as were brought by Imperial in the State Action but now gaming the system by using what is claimed to be a subsidiary, Harrison, as the Plaintiff.

4.      Defendants' rebuttal summary judgment evidence attached to this response, together with Defendants' summary judgment evidence attached to its competing Motion for Summary Judgment, clearly establish that Plaintiff is not entitled to Summary Judgment because the evidence will show that there are genuine issues of matter fact concerning "facts" raised by the Plaintiff in their Motion for Summary Judgment.  Additionally, the Court should find that Plaintiff is not entitled to summary judgment as a matter of law, because Plaintiff fails to dispense with Defendants' affirmative defenses.

## II.
## OBJECTION TO PLANTIFF'S SUMMARY JUDGMENT EVIDENCE

5.      Plaintiff's Appendix 14-15, the Declaration of Brad Prendergast, is improper summary judgment evidence to the extent that Mr. Prendergast lacks sufficient knowledge, or alternatively fails to address the source of his knowledge given many of the events pre-date his ability to have personal knowledge, of the following statements:

      a.   "A-Z has two account numbers with Harrison.  Products Harrison sold and delivered to A-Z's Dallas warehouse are identified by customer number 95750, and

---

[2] Motion and Order For Nonsuit Without Prejudice. [APP

those sold and delivered to A-Z's Waco warehouse are identified by customer number 95751."

6. Plaintiff's Appendix 14-15, the <u>Declaration of Brad Prendergast</u>, is improper summary judgment evidence to the extent that the following statements are legal conclusions and not factual statements, as "who" is owed is a question of law.

    a. "Late in 2017, I became concerned with A-Z's outstanding balances due Harrison that, at the time, were in excess of $3,000,000."

    b. "Despite these demands, A-Z and Ali have failed and refused, and continue to fail and refuse, to pay Harrison the amounts due and owing."

    c. "A-Z owes Harrison, after allowing all just and lawful offsets, payments, and credits a total of $2,575,335.73 for accounts 95750 and 95751."

7. Plaintiff's Appendix 14-15, the <u>Declaration of Brad Prendergast</u>, is improper summary judgment evidence to the extent that the following statements are hearsay:

    a. ¶6/2 is hearsay and conclusory.

    b. ¶9/2-3 are hearsay.

    c. ¶11/1 is conclusory.

    d. ¶11/2-3: is hearsay.

    e. ¶13/1-2: is hearsay.

    f. ¶14/1-5: is hearsay.

    g. ¶14: "We hired and relied on outside counsel…". "Counsel recommended we file suit in Texas State…and we followed counsel's advice". "In connection with the State Court Case, I was asked to verify facts in a Petition…". "I subsequently learned that some of the facts were incomplete or misstated".

      h.  ¶15/1,3: is hearsay.

      i.  ¶16/1,3: is hearsay.

8.     Plaintiff's Appendix 1-2, the <u>Declaration of Wayne Baquet</u>, is improper summary judgment evidence to the extent that the following statements are legal conclusions and not factual statements, as "who" supplied goods to A-Z is a question of law.

      a.  "With respect to the instant dispute, A-Z Wholesalers, Inc. ("A-Z") ordered various quantities of tobacco products and other sundries from Harrison, and Harrison supplied those goods to A-Z."

9.     Plaintiff's Appendix 1-2, the <u>Declaration of Wayne Baquet</u>, is improper summary judgment evidence to the extent that the following statements are hearsay:

      a.  Paragraph 1 last sentence tells you his statements are hearsay.

      b.  Paragraph 7 sentence 1 is hearsay as to what the trucks say on them.

      c.  Paragraph 7 sentence 2 is hearsay as what name is on invoices.

      d.  Paragraph 7 sentence 2 is hearsay as to what "Bossier" means.

      e.  Paragraph 8 sentence 1 is hearsay.

      f.  Paragraph 9 sentence 1 is hearsay.

      g.  Paragraph 10 sentence 1 is hearsay and conclusory.

      h.  Paragraph 11 sentence 1 is conclusory.

      i.  Paragraph 12 sentence 1 is hearsay as to what the invoices bear.

      j.  Paragraph 12 sentence 2 is hearsay and conclusory.

      k.  Paragraph 13 sentence 1 is hearsay.

      l.  Paragraph 14 sentence 1 is hearsay.

      m.  Paragraph 14 sentence 2 is hearsay.

    n.  Paragraph 15 sentence 1 is hearsay.

    o.  Paragraph 15 sentences 2, 3 and 4 are hearsay.

    p.  Paragraph 16 sentence 1 is hearsay.

    q.  Paragraph 16 sentence 2 is hearsay.

10.    Plaintiff's Appendix 40-43, the <u>Declaration of Wayne Baquet</u>, is improper summary judgment evidence to the extent that the following statements are hearsay:

    a.  Paragraph 1 last sentence tells you her statements are hearsay "gained from my employment".

    b.  Paragraph 3 sentence 2 shows lack of knowledge she is the controller for Imperial not Harrison.

    c.  Paragraph 4 sentence 1 she has no personal knowledge.

    d.  Paragraph 5 sentences 1 and 2 she has no personal knowledge.

    e.  Paragraph 6 sentences 1, 2, 3 and 4 are hearsay and she has no personal knowledge.

    f.  Paragraph 7 sentences 1 and 2 are hearsay and she has no personal knowledge of these documents as Imperial's controller.

    g.  Paragraph 8 sentences 1 and 2 are hearsay and she has no personal knowledge of these documents as Imperial's controller.

    h.  Paragraph 9 sentences 1 and 2 are hearsay and she has no personal knowledge of these documents as Imperial's controller.

    i.  Paragraph 10 sentences 1 and 2 are hearsay and she has no personal knowledge of these documents as Imperial's controller.

    j.  Paragraph 11 sentences 1 does not meet the requirements for business records as her accounting department is with Imperial not Harrison.  She has attested she is

the comptroller for Imperial not Harrison and she is not qualified as the custodian of the records for Harrison.

k.   Paragraph 12 sentence 1 is hearsay and the declarant does not meet the requirements for business records as her accounting department is with Imperial not Harrison. She has attested she is the comptroller for Imperial not Harrison and she is not qualified as the custodian of the records for Harrison.

### III.
### SUMMARY JUDGMENT STANDARD

11.   The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.[3]  A court must grant summary judgment "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  A party may move for summary judgment on one or more claims or any part thereof.[4]  When a party moves for summary judgment, Rule 56 dictates that the Court must grant summary judgment if the record demonstrates that there is **no genuine issue of material fact and that the movant is entitled to judgment as a matter of law**.[5]

12.   For the purposes of this determination, a fact is material if it might affect the outcome of the suit, and a genuine issue of material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[6]

13.   A party seeking summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record which it believes

---

[3] Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).
[4] Federal Rule of Civil Procedure 56(a).
[5] Fed. R. Civ. P. 56(a); Citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).
[6] Willis v. Cleco Corp., 749 F.3d 314, 317 (5th Cir. 2014)("A genuine dispute of fact exists when evidence is sufficient for a reasonable jury to return a verdict for the non-moving party"); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)("a fact is material if it "might affect the outcome of the suit.").

demonstrate the absence of a genuine issue of material fact.[7]   However, when the burden of proof at trial rests on the nonmovant, a movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case to be entitled to summary judgment.[8]

14.     The burden then shifts to the opposing party to show with **significant probative evidence** that there exists a genuine issue of material fact.[9]   To satisfy its burden, the party opposing summary judgment is required to identify **specific** evidence in the record and to articulate the **precise** manner in which that evidence supports its opposition to the movant's claim.[10]   The nonmovant has to establish that there is a genuine issue of material fact on which a jury might return a verdict in its favor.[11]

15.     And while a Court should draw all reasonable inferences in favor of the nonmovant, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.[12]   Courts resolve factual controversies in favor of the nonmoving party "only when an actual controversy exists, that is when both parties have submitted evidence of contradictory facts."[13]

16.     In the instant case, summary judgment in favor of the Plaintiff would be improper

---

[7] Davis v. Fort Bend County, 765 F.3d 480, 484 (5th Cir. 2014)("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact").

[8] Johnson v. Globalsantafe Offshore Services, Inc., 799 F.3d 317, 320 (5th Cir. 2015)("When the burden at trial rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case.").

[9] Davis v. Fort Bend County, 765 F.3d 480, 484 (5th Cir. 2014)("The burden then shifts to the nonmoving party to go beyond the pleadings and by her own affidavits, or by the `depositions, answers to interrogatories, and admissions on file,' designate `specific facts showing that there is a genuine issue for trial.").

[10] Willis v. Cleco Corp., 749 F.3d 314, 317 (5th Cir. 2014)("To satisfy its burden, the party opposing summary judgment is required to identify specific evidence in the record, and to articulate the `precise manner' in which that evidence support[s] their claim.").

[11] Matsushita Elec. Inds. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

[12] Davis v. Fort Bend County, 765 F.3d 480, 484 (5th Cir. 2014)("A party cannot "defeat summary judgment with conclusory allegations, unsubstantiated assertions, or `only a scintilla of evidence.").

[13] McCallum Highlands, Ltd. V. Wash. Capital Dus. Inc., 66 F.3d 89, 92 (5th Cir. 1995), opinion corrected on denial of reconsideration, 70 F.3d 26 (5th Cir. 1995).

because of the absence of support for Plaintiff's claims, and Defendants have produced strong support to the contrary.  Here, the evidence conclusively establishes that as a matter of law, Harrison, does not have standing to bring the asserted claims.

## IV.
## ARGUMENTS AND AUTHORITIES

a.    **Existence of Genuine Issues of Material Fact Concerning Customer Numbers**

17.    A genuine issue of material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[14]

18.    Here, the fact is undisputed that Imperial and Harrison "are now, and have always been, separate legal entities. (Pl. *Brief*, pg. 2; Pl. App 1, Baquet ¶ 2; Pl. App.14, Pendergast ¶ 2; Def. APP. 195, RFA No. 7).

19.    Also, undisputed is the fact that Harrison "has not assigned or transferred, in whole or in part, the Credit Agreement or the Guaranty. (Pl. *Brief*, pg. 3; Pl. App. 15, Pendergast ¶ 5).

20.    What is disputed, however, is Plaintiff's contention that "A-Z has two account numbers with Harrison [where] products Harrison sold and delivered to A-Z's Dallas warehouse are identified by customer number 95750, and those sold and delivered to A-Z's Waco warehouse are identified by customer number 95751". (Pl. *Brie*f, pg 4).

21.    Plaintiff has no evidence to support the contention that Harrison sold and delivered product to A-Z under customer numbers 95750 and 95751.  In fact, the evidence shows that Imperial assigned A-Z customer numbers 95750 (Dallas) and 95751 (Waco); while Harrison had assigned A-Z the following customer numbers 17501 (Dallas) and 17502 (Waco).[Def. Exhibit Q,

---

[14] <u>Willis v. Cleco Corp.</u>, 749 F.3d 314, 317 (5th Cir. 2014)("A genuine dispute of fact exists when evidence is sufficient for a reasonable jury to return a verdict for the non-moving party"); <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 248 (1986)("a fact is material if it "might affect the outcome of the suit.").

APP 256-276](highlights added to aid in locating information) (**See Also** Def. Exhibit Y, APP 614-15).

22.     The undisputed fact that Imperial and Harrison are two separate entities aligns with Defendants' contention that A-Z operated under different customer numbers while doing business with either Imperial or Harrison.  The evidence clearly supports that A-Z's customer numbers under Harrison were 17501 and 17502, not 95750 and 95751 as misrepresented by Plaintiff.

23.     The customer number contention creates a genuine issue of material fact, because if customer numbers 95750 and 95751 were issued by Imperial to A-Z for goods sold and delivered by Imperial to A-Z, then for this and other reasons Harrison has no standing to sue Defendants.

**b.     Harrison Fails To Dispense of A-Z's Affirmative Defenses of Lack of Privity of Contract and Lack of Capacity and Authority to Sue**

24.     The bedrock of Harrison's claims is that Harrison, not Imperial sold and shipped goods to A-Z (Pl. *Brief*, pg 4; Def. APP 195, RFA No.8/9), however the evidence does not support this contention.

25.     First, all the invoices relied upon by Plaintiff evincing default and right to payment clearly state on the face of the invoice that the issuer of said invoices was Imperial, not Harrison (Def. APP 33-182).

26.     Second, the shipping manifests associated with said invoices state that right to payment belongs to Imperial, as the manifests specifically indicate as follows:

> *"I acknowledge receipt of the product(s) listed on the above referenced invoice(s) and by signing this document agree that the company and/or person listed below is financially responsible for paying the amount of the invoice(s), and all costs and attorney fees associated with any collection efforts, **to Imperial Trading Co., Inc**.*

> *All amounts not paid with in 30 days after invoice date, with a*
>
> *minimum charge of .50 per month."* (Exh. R, Def. APP 277-315)
>
> (emphasis added) (highlights added to aid in locating information).

27.     Third, A-Z directed payment on said invoices and manifest to Imperial (Exhibit S, Def. APP 316-473).

28.     Four, the evidence shows that 1) order fulfilment and shipping was conducted by Imperial personnel; 2) price negotiations were conducted under Imperial; 3) it was Imperial who requested adequate assurances of and security for future performance. (Exhibit T, Def. APP 474-483) (highlights added to aid in locating information).

29.     Fifth, the evidence shows that at all times during the relevant period October, 2018 through March, 2019, it was Imperial, not Harrison that 1) served A-Z with Notice of Default and Demand for Payment; 2) who A-Z communicated with regarding Compromise Offers & Settlement Negotiations; and 3) whose auditors sought verification from A-Z for amounts owed. (Exhibit U; Def. APP 484-492) (highlights added to aid in locating information).

30.     Sixth, the evidence shows that at all times during the relevant period, October, 2018 through March, 2019, it was Imperial, not Harrison that maintained UCC liens on A-Z's assets. Moreover, the public records show that Harrison did not record a UCC-1 financing statement as to A-Z until April 17, 2019 which was terminated on March 24, 2020--all after the relevant period. (Exhibit V, Def. APP 493-500) (highlights added to aid in locating information).

31.     Lastly, Imperial's Vice President, Brad Prendergast, swore in a verified petition under penalty of perjury in cause no. DC-19-04222, that Imperial was the entity that sold and shipped goods to A-Z and that the right to payment concerning invoices now sued upon by Harrison belonged to Imperial. (Def APP. 1-14, 18).   Now Mr. Prendergast offers a sworn

declaration in these proceedings, in direct contradiction, where he now alleges that outstanding balances are owed to Harrison (Pl. APP 14-15).

32.     Notwithstanding that the amount of arrearage between A-Z and Imperial is in dispute, A-Z readily admits that it has an arrearage with Imperial, not Harrison.  A-Z's agreement with Harrison had been terminated pursuant to TEX. BUS. & COM. CODE § 2.106(c), which provides that "[t]ermination" occurs when either party pursuant to a power created by agreement or law puts an end to the contract otherwise than for its breach. On "termination" all obligations which are still executory on both sides are discharged but any right based on prior breach or performance survives.   Here, Plaintiff offers no evidence that Defendants breached any performance due Harrison prior to termination of the agreement.  All Plaintiff offers to evince A-Z's breach as to Harrison are "Imperial's invoices"—despite the invoices and shipping manifests clearly establishing right to payment to Imperial.  Plaintiff further fails to dispense with the fact that the invoices and shipping manifests together are documents of title.  A "sale" consists in the passing of title from seller to buyer for a price, and here, the documents purport that Imperial is the seller.

33.     The Plaintiff argues that because the Imperial invoices contain the name "Bossier" written on its face, which internally tells accounting and/or management that Harrison sold and shipped the product to Harrison's customers (Pl. Brief, pg 2.), therefore this internal notation apparently establishes Harrison's capacity and authority to sue for breach.  Notwithstanding that the shipping manifests do not contain the "Bossier" identifier, there is nothing on the face of the invoices or shipping manifests that would place A-Z on notice that the offer and acceptance was between Harrison and A-Z.  The name Harrison does not appear anywhere on either the invoices or manifests.  At best, Harrison is a remote undisclosed seller, and the Plaintiff offers no statute or

caselaw that would give Harrison the capacity or authority to sue.  There was never a meeting of the minds between Harrison and A-Z during the relevant period to establish a contract that Imperial would now be acting as the agent of Harrison. To the contrary, the evidence shows that Imperial and Harrison were separate and distinct entities. Each had their own invoices and their own customer numbers.  Moreover, and very important is the undisputed fact that A-Z had paid in full all Harrison invoices prior to terminating its agreement with Harrison, therefore there is no issue of breach prior to termination (Def. Exhibit Y, APP 614-615) (highlights added to aid in locating information).  Plaintiff offers no evidence to the contrary.

34.    All the foregoing evinces that during the relevant period, it was Imperial, not Harrison that sold to, shipped to, possessed right to payment from, and demanded payments from A-Z.

35.    Plaintiff's Motion makes no attempt to dispense of these issues.  As such, the Court should sustain Defendants' affirmative defenses of Lack of Privity of Contract and Lack of Capacity and Authority to Sue.

**c.    Harrison Fails to Dispense of A-Z's Affirmative Defenses of Modification, Novation, Ratification, Consent, and Acquiescence.**

36.    Over the years, A-Z and Imperial have entered into numerous payment modification agreements.

37.    Although the payment agreements were constantly being modified, amended, and extended, one constant emerges—that is, the negotiations for modification are all taking place between A-Z and Imperial, not A-Z and Harrison.

38.    At one point, A-Z and Imperial entered into a modified payment agreement that called for A-Z to make a ten thousand dollars ($10,000) extra payment over and above on weekly invoices to satisfy the arrearage.  (Exhibit W, Def. APP 501-586) (highlights added to aid in

locating information).

39.     At other points, the agreement called for five thousand dollars ($5,000) and seven thousand dollars ($7000) extra payments weekly, and at other times their agreement called for lumpsum payments. (Exhibit X, Def. APP 587-613) (highlights added to aid in locating information).

40.     A-Z and Imperial had a pattern and practice in their ordinary course of performance to constantly modify the terms of their agreement for the sake of preserving their business relationship.   The TEX. BUS. & COM. CODE provides that "[c]onduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree".[15]  Further, a contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.[16]   Additionally, an agreement modifying a contract within this chapter needs no consideration to be binding.[17]

41.     Here, the conduct and emails between Imperial representatives and A-Z evince a consistent pattern of modification, ratification, acquiescence, and consent to alter payment and shipment terms.

## V.
## CONCLUSION

42.     Defendants have shown that a genuine fact issue remains concerning whether customer numbers were issued by Harrison or Imperial.   Also, Defendants have shown that

---

[15] Tex. Bus. & Com. Code § 2.207(c).
[16] Tex. Bus. & Com. Code § 2.204(a)
[17] Tex. Bus. & Com. Code § 2.209(a).

Plaintiff is not entitled to judgment as a matter of law, because the Plaintiff failed to dispense with Defendants' affirmative and other defenses.  Considering all the foregoing, the Court should deny Plaintiff's Motion for Summary Judgment.

**VI.**
**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Defendants request that hearing be set on Plaintiff's Motion for Summary Judgment, and upon said hearing, the Motion be denied in its entirety, and tax to the Plaintiff cost and reasonable attorney's fees and grant Defendants such further relief, both at law and equity to which Defendants may be justly entitled.

Dated: July7, 2020

Respectfully submitted,

  /s/ Joyce W. Lindauer
Joyce W. Lindauer
State Bar No. 21555700
Guy Harvey Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
joyce@joycelindauer.com
guy@joycelindauer.com
**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 7, 2020, a true and correct copy of the foregoing was served on all parties via the Court's ECF system.

  /s/ Joyce W. Lindauer
Joyce W. Lindauer