UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HARRISON COMPANY LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-1057-B |
| | § | |
| A-Z WHOLESALERS, INC. and | § | |
| BARKAT G. ALI, | § | |
| | § | |
| Defendants. | § | |

### HARRISON'S REPLY IN SUPPORT OF ITS
### MOTION FOR SUMMARY JUDGMENT

Plaintiff, Harrison Company, LLC ("Harrison"), files this Reply in Support of its Motion for Summary Judgment (the "Motion") (Docs. 51-53), and states:

### INTRODUCTION

The Court should grant Harrison's Motion based on the competent, relevant, uncontroverted record and applicable law. A-Z Wholesalers, Inc. ("A-Z") and Barkat Ali's response does not raise or identify a single genuine issue of material fact. Rather, the response is an attempt to move the debt to Imperial—as opposed to Harrison—so that Barkat Ali can avoid his guaranty obligations to Harrison. Presumably, Barkat Ali has the wherewithal to pay the debt and A-Z has no intention of doing so. There is no legal justification that supports moving the debt from Harrison, and Amar Ali's self-serving, subjective belief is neither competent evidence nor relevant to the outcome.

Harrison is suing A-Z and Barkat Ali, Amar's father, to recover amounts due under a Credit Agreement and Guaranty, respectively. Defendants' position on the debt, to whom it is

1

owed, and why have been a moving target.[1]  The gist of all of Defendants' arguments presents a legal, not factual, issue: whether Harrison's conduct terminated, modified, amended, or released the Credit Agreement and Guaranty.  Defendants argue it did and, as a result, Harrison no longer has standing to sue.  That is not the case, and Defendants' own "evidence" contradicts their position.

Defendants have "sworn" to at least two different dates when they argue A-Z terminated its relationship with Harrison.[2]  And, inexplicably, Defendants included in the record with their motion for summary judgment a draft promissory note that Amar Ali revised and that acknowledges the validity of the Credit Agreement mere months before this lawsuit was filed.  *See* Doc. 56, App. 24-28.  The promissory note: (1) disclaims any alleged "oral" agreement; and, (2) states that Louisiana law shall govern this dispute.  *See* Doc. 61 at pp. 14-15.  Nevertheless, Defendants argue Harrison's conduct created an alleged *oral* contract between A-Z *with Imperial*, under *Texas* law, in an attempt to avoid Barkat Ali's guaranty obligations to Harrison.[3]

---

[1] First, Defendants' claimed that Harrison assigned the Credit Agreement to Imperial, and that Imperial modified the Credit Agreement.  Next, Defendants abandoned their assignment and modification argument (admitting that the Credit Agreement had not been assigned), and instead, alleged that they simply stopped doing business with Harrison and entered into an oral agreement with Imperial.  Now, without any writing (as Louisiana law requires), Defendants argue, for the first time in their response, that A-Z formed a new contract *with Imperial* under the *Texas* UCC, pursuant to A-Z's and Amar Ali's subjective belief.

[2] Defendants' declarations (executed prior to Harrison filing its Motion) state that A-Z terminated its relationship with Harrison in 2018 (*see* Doc. 56, App. 217, ¶ 3; App. 222, ¶ 3); however, Defendants' Responses to Harrison's Second Set of Interrogatories (served after Harrison filed its Motion) state that the relationship terminated in 2015.  *See* Doc. 62, App. 6, 10, A-Z's 2d Disc. Resp., Rogs. 12, 25; App. 16, Barkat's 2d Disc. Resp, Rog. 14.  Both declarations are contradicted by the promissory note (*see* Doc. 56, App. 24-28) that Defendants' attached to their motion.

[3] If these contract "defenses" did not tie to standing, then they would simply be mitigation arguments; but Defendants have done nothing to advance an alternative amount or calculation of the debt.

## ARGUMENT AND AUTHORITIES

Defendants' two-fold response is unpersuasive. First, they dispute Harrison's facts without any competent contradictory admissible evidence to raise a genuine issue of material fact. Second, they complain that Harrison "failed to dispense" with Defendants' affirmative defenses, which is not Harrison's burden.

In support of its Motion, Harrison's proof included: (1) the parties' Credit Agreement and Guaranty; (2) uncontroverted testimony that Harrison did not assign the Credit Agreement and Guaranty; (3) uncontroverted testimony regarding (i) Harrison's relationship with Imperial; and (ii) Imperial's shared accounting services; and, (4) business records showing (i) account balances confirmed by A-Z; and (ii) subsequent sales, debits, and credits that (iii) reconcile with A-Z's existing account balance. All of this evidence is objective and not in dispute.

Indeed, Defendants admit (1) that the Credit Agreement was not assigned; and, (2) that there is no other written contract between the parties. *See* Doc. 65, ¶ 19. Defendants further admit that a debt is owed (*id.* at ¶ 32); and Defendants effectively admit that there was no "modification" *with Harrison*. *See id.* at ¶ 37 ("Although the payment agreements were constantly being modified, amended, and extended, one constant emerges—that is, the negotiations for modification are all taking place between A-Z and Imperial, not A-Z and Harrison.") (emphasis added).

We know from Defendants' motion and appendix that their contention that "negotiations . . . are all taking place between A-Z and Imperial" is premised, at least in part, on the fact that Amar Ali is emailing and talking with Wayne Baquet (*see*, *e.g.*, Doc. 66, Ex. X, App. 566-67, 579-83; Amar Ali Decl., App. 584-85, ¶ 4) who was, and still is, an officer of both Harrison and

3

Imperial. We also know from materials offered by Defendants that Amar is dealing with Sandy Zazulak and Brad Prendergast regarding A-Z accounting issue and balances. *See*, *e.g.*, Doc. 66, Ex. T, App. 444-48; Exs. W, X, App. 471-576. Defendants' spin on these undisputed facts is they created a new agreement between A-Z and Imperial. Harrison's reply is the entire relationship with A-Z is predicated on the Credit Agreement and Guaranty and that Harrison did not terminate the Credit Agreement and Guaranty by putting its parents name on its invoices, by sharing officers, or by sharing accounting services.

The Credit Agreement and Guaranty is the only written contract between the parties, is the basis for Harrison's claims, and Harrison is the proper plaintiff to sue for the amounts due and owing.

### A. Harrison, A-Z, and Barkat Ali (not Imperial) are the Parties to the Credit Agreement, which has not been assigned.

Harrison has standing to sue for breach of the Credit Agreement. *See* Doc. 52 at 15; Doc 61 at 6. Defendants do not argue that Harrison lacks standing to sue A-Z and Barkat Ali *under the Credit Agreement*. Instead, Defendants allege that that A-Z's debt is owed under a separate, unspecified oral agreement (or agreements), or pursuant to an alleged course of performance with Imperial, which curiously is not guaranteed by Barkat Ali.

### B. There is no "other" agreement with Imperial.

Because Defendants cannot dispute Harrison's standing *under the Credit Agreement*, Defendants argue that some *other* alleged "agreement" (for which there is no proof, no writing, and no terms) was breached, such that Imperial (not Harrison) must sue A-Z for breach of Defendants' subjectively defined, undocumented "agreement" to pay for goods sold and delivered to A-Z.

Under the guise of various affirmative defenses (including standing, modification, and novation), Defendants argue that A-Z's debt is owed to *Imperial*, not Harrison. Defendants' argument is premised on the following conclusory, self-serving allegations: (1) that the Credit Agreement terminated and/or that Harrison released Defendants from their obligations under the Credit Agreement; (2) that a new agreement (or series of agreements) between Imperial and A-Z (not Harrison nor Barkat Ali) was created *orally*, or pursuant to an alleged course of conduct *with Imperial* that somehow (inexplicably) modifies or negates the Credit Agreement *with Harrison*; and, (3) that A-Z owes a debt to Imperial pursuant to that undefined and unsubstantiated "agreement." Tellingly, when asked to state the terms of its alleged "agreement" and/or modification with Imperial, A-Z could not provide any detail, stating:

> RESPONSE: A-Z contends that the parties had agreed to new terms which had not been breached by A-Z as is evidenced by the MOA, which allowed A-Z to make partial payments on arrearages. In essence the MOA allowed A-Z flexibility to pay down amounts in arrearage such that the overall balance would continue to go down. The MOA established that the business relationship between A-Z and Imperial would continue with A-Z continuing to purchase from Imperial and with Imperial continuing to ship/deliver product, all with the proviso that A-Z would pay down the arrearage as it also paid subsequent invoices. A-Z relies on the oral representations of Imperial personnel and executives, supported by text messages between Amar Ali and Wayne Baquet, Brad Prendergast, Sandy Zazulak, and Shauntrice Jones previously produced.

Doc. 62, App. 8, A-Z's 2d Disc. Resps., Rog. 19; *see also id.*, App. 7, 10, 16, A-Z's 2d Disc. Resps., Rogs. 16, 25, Barkat's 2d Disc. Resps., Rog. 14). The "MOA" is the alleged "Modified Oral Agreement," which Defendants subjectively define as "the oral modification of a [sic] payment terms concerning Imperial's invoices to A-Z." There is no evidence of such agreement. But where else could A-Z's arrearage come from if not from A-Z's purchases from Harrison?

Defendants' affirmative defenses—which do not dispute the existence of the debt—rest on numerous conclusory assumptions and conditions that Defendants do not support with evidence. Defendants seem to contend that Harrison "ratified" or "acquiesced" to a modification

or new agreement, but provide no evidence of necessary conditions precedent to support those theories—e.g.: (1) Harrison releasing the Defendants from (or terminating) the Credit Agreement; and/or, (2) a superseding modification or new contract with Imperial.

Without a legal or factual defense to Harrison's claims, Defendants seek to create an alternative, conclusory narrative that ignores Harrison's pleadings and objective evidence. Defendants treat their subjective perception as undisputed *fact*, on which they base their standing and alleged contract defenses. Harrison's uncontroverted record discloses the relationship between it and its parent, how accounting and record keeping are shared, and how the two entities share officers. Harrison's internal and shared procedures with Imperial do not release A-Z or Barkat Ali from their debt to Harrison nor do they create a new agreement with Imperial that includes a release from Harrison.

Neither A-Z nor Barkat provide any evidence of the purported mystery "agreement" on which each defense rests. Instead, Defendants rely on documents that are not relevant to any element of Harrison's claim or any defense—invoices, shipping manifests, payments, demand letters, refinancing negotiations, UCC filings, and Imperial's non-suited state Court action[4]—to argue: (1) that the Credit Agreement is no longer operative; and thus, (2) that the "readily admit[ed]" debt is owed to Imperial (not Harrison). These documents speak for themselves and the only issue is whether they are a defense to Harrison's claims. They are not.

Harrison preemptively addressed these arguments in its brief in support of its Motion (Doc. 52), in its response to Defendants' motion (Doc. 61), and its objections to Defendants' summary judgment evidence (Doc. 64). Indeed, nowhere in the two voluminous appendices that

---

[4] Harrison addressed this "evidence" in its brief in response to Defendants' motion for summary judgment (Doc. 61), which is incorporated by reference under Rule 10(c), Fed. R. Civ. P.

Defendants submit to attempt to create a material fact question (*see* Docs. 56 and 66) can Defendants point to a *written* modification or novation.

In addition to Defendants' modification and novation arguments, which Harrison previously addressed, Defendants conclusory ratification, consent, and acquiescence arguments rest on the same false premise—i.e., that the Credit Agreement (and Harrison) inexplicably go away, such that *Imperial*—through alleged oral representations or conduct—can modify and/or negate Defendants' obligations to *Harrison.*

### C. Defendants fail to address Louisiana law that, under the facts, bars their defenses.

Louisiana law governs this dispute (*see* Doc. 56, App. 24-28; Doc. 61 at pp. 14-15; *see also* Doc. 52 at pp. 9-10), and prohibits any oral modification or agreement. *See* Doc. 52, at p. 15 (citing Louisiana statutes). Moreover, as recently as January 11, 2019, A-Z wrote that "THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES." *See* Doc. 56, App. 27. At that same time, A-Z acknowledged the continuing validity of the Credit Agreement *with Harrison. See, e.g.*, Doc. 56, App. 24, 26, ¶¶ 1, 5; Doc. 56, App. 218, Amar Ali Decl., ¶ 4. Nevertheless, in their Response to Harrison's Motion, Defendants argue, for the first time, that their relationship with Harrison terminated under Tex. Bus. & Com. Code (the "Texas UCC") (*see* Doc. 65, ¶¶ 32, 40), ignoring the fact that Louisiana law controls.[5]

Even if Texas law applied (and it does not), "Section 2.209 provides that agreements modifying contracts must satisfy the statute of frauds of section 2.201 if the modified contract is within that section's provisions. Section 2.201 requires a writing for the sale of goods of $500 or more." *Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 715 (Tex. App. 1988), *writ granted* (July

---

[5] *See* Doc. 56, App. 26-27, ¶ 9 ("THIS PROMISSORY NOTE *AND THE <u>OTHER LOAN DOCUMENTS</u> AND THE RIGHTS AND OBLIGATIONS OF <u>THE PARTIES</u> HEREUNDER AND <u>THEREUNDER</u> SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF LOUISIANA.") (emphasis added).

12, 1989), *writ denied* (Mar. 28, 1990), *writ withdrawn* (Mar. 28, 1990).  Thus, Defendants arguments fail under Texas law.  *See also* Doc. 52 at pp. 15-16.

## D. Defendants did not meet their summary judgment burden on any affirmative defense.

Defendants admit: (1) for affirmative defenses, Harrison must merely demonstrate an absence of evidentiary support; (2) Defendants must identify *specific* evidence and articulate the *precise* manner in which its evidence supports its opposition; and, (3) a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  *See* Doc. 65 at p. 7, ¶¶ 13-15.  Moreover, as this Court has stated:

> The non-moving party [i.e., Defendants] must show that the evidence is sufficient such that a reasonable jury could return a verdict for the non-movant. *Muñoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). The court will not make credibility determinations, weigh the evidence, or draw inferences, but instead confine its inquiry to facts material under the governing legal standard. *Anderson*, 477 U.S. at 255.

*Douglas v. Wells Fargo Bank, N.A.*, No. 3:17-CV-2588-B, 2018 WL 5809381, at *2 (N.D. Tex. Nov. 6, 2018) (Boyle, J.) (emphasis added).  Defendants did not meet this burden.

Defendants' response to Harrison's record consists of circumstantial evidence that does not establish the essential elements of any defense (*see*, *e.g.*, Doc. 65, ¶ 22).  Defendants have no personal knowledge of Harrison's internal accounting practices or its reassignment of reference numbers (*See* Doc. 61 at pp. 4, 6), and Defendants' conclusory, subjective beliefs (and any unilateral mistake of fact or law) is irrelevant.  *See*, *e.g.*, Doc. 65, ¶ 33 (subjectively claiming A-Z was not on "notice" that it was doing business with Harrison).  Although notice is not an element of Harrison's claims for breach, is the Credit Agreement not notice?

Defendants' response is an attempt to improperly shift their burden to Harrison.  To obtain summary judgment, Harrison does not have to "dispense of issues" before Defendants "identify specific evidence, and articulate the precise manner in which its evidence supports its

8

opposition, to shift the burden to Harrison" (which Defendants admit is *their* burden).  *See* Doc. 65 at p. 7, ¶ 14.

### E.  Defendants' objections to Harrison's declarations are meritless.

Defendants' response begins with objections to Harrison's declarations.  *See* Doc. 65, ¶¶ 5-10 (alleging, *e.g.*, lack of knowledge and hearsay).  The Court should overrule them.

On summary judgment, a court may rely on affidavits and declarations, even though such testimonial documents are generally inadmissible at trial.  *See* Fed. R. Civ. P. 56(e); *see also Thomas v. Atmos Energy Corp.,* 223 F. App'x 369, 374 (5th Cir. 2007).  In looking at an individual's own statements, a declarant's opinions and conclusions are admissible as long as they are "rationally based on the perception of the witness."  *United States v. Cantu,* 167 F.3d 198, 204 (5th Cir. 1999) (citing Fed. R. Evid. 602); *see also Baxter v. Gov't Employees Ins. Co.*, No. CIV.A. 3:08-CV-0957-, 2009 WL 2883512, at *2 (N.D. Tex. Sept. 4, 2009).  Significantly, the Fifth Circuit has held that personal knowledge may be implied by an employee's position in a corporate hierarchy.  *See DirecTV, Inc. v. Budden,* 420 F.3d 521, 529–30 (5th Cir. 2005) (admitting as evidence an affidavit that did not purport, on its face, to be based on personal knowledge, on the grounds that personal knowledge may be implied by the maker's position). Personal knowledge, in a corporate setting, may also be based—at least in part—on access to company records and reports, and not just personal presence during the events at issue.  *See id.* at 530 n. 40 (internal citations omitted).  Indeed, "[a]n affiant's personal knowledge may be reasonably inferred from the 'nature of their participation in the matters to which they swore.'" *Hovanas v. Am. Eagle Airlines, Inc.*, No. CIV.A. 3:09-CV-0209-, 2010 WL 1993271, at *1 (N.D. Tex. May 18, 2010) (Boyle, J.) (quoting *DirecTV,* 420 F.3d at 529–30).

Here, Defendants' objections to Harrison's declarations are primarily conclusory allegations.  This court has held that "[u]nsubstantiated assertions are not competent summary

9

judgment evidence." *See Nat'l Urban League, Inc. v. Urban League of Greater Dallas & N. Cent. Texas, Inc.*, No. 3:15-CV-3617-B, 2017 WL 4351301, at *3 (N.D. Tex. Sept. 29, 2017) (Boyle, J.) (internal citations and quotations omitted), *aff'd*, 750 F. App'x 305 (5th Cir. 2018). Because the district court does not have a "duty to sift through the record in search of evidence to support a party's opposition to summary judgment," this Court has overruled objections where the defendant: (1) claimed that an affidavit was not based on personal knowledge, but failed to point to any specific portion of the affidavit to support its allegation; and, (2) objected to almost every statement on the basis that the facts in each statement were disputed. *See id.* Accordingly, Defendants' similar objections to Harrison's declarations should be overruled. *See id.*

## CONCLUSION

The record conclusively establishes standing, and the debt owed to Harrison under the Credit Agreement and Guaranty. Defendants' arguments to the contrary are, at best, conclusory and factually unsupported contradiction. Similarly, Defendants have no evidence of each essential element of any affirmative defense, which nevertheless fails under Louisiana statutory law. The Court should grant Harrison's motion for summary judgment in its entirety, and deny Defendants' motion for summary judgment.

Respectfully submitted,

*/s/ Joseph A. Unis, Jr.*
David L. Swanson
  State Bar No. 19554525
  dswanson@lockelord.com
Joseph A. Unis, Jr.
  State Bar No. 24075625
  junis@lockelord.com
Anna K. Finger
  State Bar No. 24105860
  anna.k.finger@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-6776
T: 214-740-8000
F: 214-740-8800
**ATTORNEYS FOR PLAINTIFF
HARRISON COMPANY, L.L.C.**

## CERTIFICATE OF SERVICE

I certify that on July 21, 2020, I filed this document using the Court's Electronic Case Filing ("ECF") system, which will automatically deliver a notice of electronic filing to Defendants' counsel of record, who are registered ECF users. Delivery of such notice of electronic filing constitutes service of this document as contemplated by Rule 5 of the Federal Rules of Civil Procedure. *See* LR 5.1.

*/s/ Joseph A. Unis, Jr.*
Counsel for Plaintiff