**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **HARRISON COMPANY, LLC.,** | § | |
| | § | |
| **Plaintiff,** | § | **Civil Action No.: 3:19-cv-01057-B** |
| | § | |
| **v.** | § | |
| | § | |
| **A-Z WHOLESALERS, INC., and** | § | |
| **BARKAT G. ALI,** | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANTS' REPLY TO HARRISON'S RESPONSE AND BRIEF IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

**COME NOW**, Defendants A-Z Wholesalers, Inc ("A-Z") and Barkat Ali ("Ali") (collectively, the "Defendants"), in the above-entitled and numbered cause, by and through their attorneys, file this *Reply* (the "Reply") to *Plaintiff's Response and Brief in Opposition to Defendants' Motion for Summary Judgement* [D.E. 60/61] (the "Response"). Defendants respectfully reply and show as follows:

**I.
INTRODUCTION**

1.      Like a magician, Harrison is quite adept at illusion and slight-of- hand.  First, the illusion is arranged by having cross executive board and management teams between Harrison and its sole-member, Imperial.  For instance, Brad Prendergast, serves as both Imperial's Chief Financial Officer and Harrison's Secretary/Treasurer. [D.E. 53, APP14, ¶2]  Also, Wayne Baquet, serves as both Imperial's President and Chief Executive Officer and Harrison's President.  [D.E. 53. APP 1, ¶ 2].

2.     Next, to further the illusion, they often paint "Imperial" on one side of delivery trucks and "Harrison" on the other. [D.E. 53, APP 2, ¶7].  Depending upon the situation and the advantage sought, executives will sometimes put on the "Imperial" hat, and at other times, they wear the "Harrison" hat.

3.     Therefore, in order to see through the illusion, the observer must direct their attention to the documents themselves.

## II.
## UNDISPUTED FACTS

4.     When looking at the actual documents or lack thereof, these facts are undisputed:

a.     Harrison offers no "Harrison" labeled invoices to sue upon covering the relevant period. [D.E. 53, APP 25, 27].

b.     The Harrison labeled statements and invoices offered by A-Z have different terms and account numbers than the Imperial labeled invoices sued upon [D.E. 66, APP 226-246].

c.     Harrison offers no "Harrison" labeled shipping manifests to sue upon. [D.E. 66, APP 247-285].

d.     Harrison offers no evidence that its' business relationship with A-Z (and the Credit Agreement) was not terminated prior to the relevant period. [D.E. 66, APP 584, ¶3].

e.     The Harrison Credit Agreement references customer accounts numbers (#175__) which is other than accounts #95750 and #95751 that are being sued upon. [D.E. 53, APP 37-38].

f.     Harrison offers no rebuttal evidence concerning Defendant's written modification/novation evidence. [D.E. 66, APP 471-583].

g.   Brad Prendergast signed a verified Petition stating that A-Z owed Imperial $2,575,335.73 [D.E. 56, APP 1-14, 18] then subsequently signed a declaration that A-Z owed Harrison the same $2,575,335.73 [D.E 53, APP 14-18].

### III.
### ARGUMENT AND AUTHORITIES

**a.   No Evidence Harrison Sold Goods or Transferred Title to Goods Sold to A-Z**

5.   A "sale" consists in the passing of title from the seller to the buyer for a price.[1]

6.   Pursuant to the Credit Agreement: *"Parties hereby agree that all purchases made and extensions of credit are subject to the following terms and conditions…this credit application and the following personal guaranty **shall apply to all sales made by the Seller to Purchaser** and not merely to the business location or operation noted herein"*. [D.E. 56, APP 21].

7.   Harrison offers no evidence that it sold any goods to A-Z during the relevant period.

8.   Here, Harrison completely relies on Imperial's invoices, although Harrison had the pattern and practice of issuing its own Harrison labeled invoices during the period it was involved in selling goods to A-Z. [D.E. 66, APP 226-246].

9.   Moreover, the Harrison Credit Application relied upon by the Plaintiff evinces that Harrison issued A-Z customer account numbers #17501 and #17502--shown on the face of the Credit Application in handwriting is written: "2- Account Numbers"; and  then directly below this notation is the number "175". [D.E. 56, APP 19].  Further, Defendants exhibits [D.E. 66, APP 226-246] evinces Harrison's pattern and practice of using customer account numbers #17501 and 17502 when referencing A-Z.

---

[1] U.C.C. § 2-106(1).

10.      But here, Harrison sues on Imperial's invoices which show completely different customer numbers: #95750 and #95751.  [D.E. 56, APP 33-182].  [See also D.E. 53, APP 16, ¶7]. Moreover, Harrison offers no evidence that Harrison issued A-Z the account numbers sued upon.

11.      As such, Harrison fails to show any evidence of having met a necessary condition precedent – that being, first, Harrison must actually have sold goods or have transferred title to goods sold to A-Z in order for there to have been a subsequent breach.  Without a sale to A-Z during the relevant period, the Harrison Credit Application and Ali personal guarantee could not have been triggered.

12.      At best, Harrison is an undisclosed third party, with Imperial being the real party in interest evinced by the Imperial labeled invoices and shipping manifests.  The Federal rules, however, have codified prudential standing requirements and impose limitations on third parties suing in Federal Court.[2]   The Fifth Circuit has long applied the prudential requirement that a party must assert its own rights.[3]  As such, Harrison would not have prudential standing to sue for breach caused by alleged non-payment of invoices and shipping manifests which transferred title of goods from Imperial to A-Z and set payment terms between Imperial and A-Z—documents which clearly establish that any rights, if any, belong to Imperial.

**b.      The Termination of the Harrison Agreement and the Modification of the Imperial Agreement**

13.      To be clear, Defendants maintain that the Harrison Credit Agreement was terminated, and A-Z began a new relationship with Imperial during the relevant period. [D.E. 66, APP 584-585].  As between Imperial and A-Z, the party's terms and conditions were constantly

---

[2] BCC Merch. Solutions, Inc. v. Jet Pay, LLC, 129 F. Supp. 3d 440, 450 (N.D. Tex. 2015) (referencing FRCP 17(a)).
[3] Superior MRI Servs. v. Alliance HealthCare Servs., 778 F.3d 502, 504 (5th Cir. 2015).

undergoing modification or novation. These modifications are reflected in the series of written emails between the parties. [D.E. 66, APP 471-583].

14.    The Uniform Commercial Code requires no formal offer and acceptance for a contract modification to be effective as between the parties.[4]  Moreover, a "writing" for purposes of the statute of frauds may consist of separate writings, connected together by express reference to each other or internal evidence of their unity, relation, or connection; by so connecting the writings, otherwise separate documents may incorporate by reference the terms of each document.[5]

15.    Harrison fails to even address the mountain of emails evincing the modification/novation of the Imperial terms and conditions, and the pattern of Imperial's ratification, consent, and acquiescence to the changed terms.  While the emails are separate writings, the content of each offers internal evidence of their unity and relationship to the invoices now relied upon by Harrison.

16.    By avoiding the issue, Harrison attempts to perpetuate the illusion that it has standing to sue on the Harrison Credit Agreement by arguing that the agreement had not been assigned to Imperial.  Defendants' concede the point.  Nonetheless, the Harrison Credit Agreement has no binding effect over A-Z during the relevant period because the relationship had been terminated and all outstanding Harrison invoices had been paid in full for complete satisfaction and accord prior to termination.  Harrison offers no evidence to the contrary.

17.    Moreover, the terms of the Harrison labeled invoices differ substantially from the Imperial labeled invoices.  Harrison had the pattern and practice of setting payment terms as "Net 14 Days" [D.E. 66, APP 226-231], whereas Imperial had the pattern and practice of setting payment terms as "Net 30 Days". [D.E. 56, APP 33-182].  Clearly, A-Z was transacting with

---

[4] Hunt Oil Co. v. Federal Energy Regulatory Com., 853 F.2d 1226, 1238 (5th Cir. 1988).
[5] Id. at 1241.

separate entities under unique terms, which the Plaintiff does not dispute. [D.E. 53, APP 2, ¶2]. But, at all times during the relevant period, A-Z was solely transacting with Imperial. Plaintiff offers no evidence to the contrary.

**c.    The Contradiction Between Plaintiff's Verified Petition and the Declaration is Material**

18.    While it may be debatable whether Imperial's Verified Petition in State Court, signed by Brad Prendergast who serves as both Imperial's Chief Financial Officer and Harrison's Secretary/Treasurer, which asserts that A-Z owed Imperial $2,575,335.73 is a judicial admission, it is nonetheless a relevant admission by the corporate representative of a party opponent. Even if not taken a judicial admission, the statement nonetheless can be offered into evidence as a statement of a party opponent pursuant to FRE 801(d)(2).

19.    Additionally, Plaintiff's argument that the State Court Petition filed by Imperial was superseded or amended by the Federal Complaint filed by Harrison is not law, as these are separate and distinct entities and Plaintiffs.

**d.    Insider Information is Not Relevant**

20.    Harrison argues that 1) Harrison outsourced its accounting and/ or payment processing services to Imperial; 2) Imperial's invoices referencing the name "Bossier" indicates internally that Harrison is the seller/shipper; and 3) Imperial would credit payments received from A-Z to the customer's accounts with Harrison. Even if these assertions are taken as true, the argument is irrelevant to the analysis as these facts would be insider information as between Imperial and Harrison. Further, Defendants admit that they have no personal knowledge of Imperial's or Harrison's internal operations, therefore Harrison's and Imperial's insider information is insufficient to place Defendants on notice that allegedly Harrison could be the real party in interest—notwithstanding the invoices and shipping manifests indicate Imperial is the real

party in interest.  At best, Harrison is an undisclosed third party without standing to sue in Federal Court.

## IV.
## CONCLUSION

21.     Defendants have shown that they are entitled to summary judgment as a matter of law because Harrison lacks standing to sue A-Z for alleged default on Imperial's invoices.  Further, Plaintiff offered no evidence that the Harrison Credit Agreement was not terminated prior to the relevant period, nor does Plaintiff offer any evidence that the customer numbers on Imperial's invoices represent Harrison accounts.  To the contrary, the evidence shows that Harrison had unique invoices, unique account numbers, and unique payment terms for A-Z which are distinct from Imperial's.  The summary judgment evidence also shows that terms and conditions between Imperial and A-Z were constantly being modified and Plaintiff offers no evidence that the modified terms were breached---more importantly, that claim, if any would belong solely to Imperial. Additionally. Defendants' have shown that Imperial's corporate representative, Brad Prendergast has made inconsistent sworn statements.  He first swore A-Z owed the monies to Imperial when he found it advantageous to wear the Imperial hat, now the same representative is working his magic by putting on his Harrison hat and declaring the monies are owed Harrison.    Finally, Imperial's and Harrison's internal operations and internal notations have no relevance as to who the title transfer documents--consisting of Imperial's invoices and shipping manifests--say the contracting parties are.  For all these reasons, Defendants' are entitled to summary judgment.

## V.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants request that hearing be set on Defendant's Motion for Summary Judgment, and upon said hearing, the Motion be granted in its

entirety, and to tax the Plaintiff for cost and reasonable attorney's fees and grant Defendants such

further relief both at law and equity to which Defendants may be justly entitled.

Dated: July 21, 2020.

Respectfully submitted,

  /s/ Joyce W. Lindauer
Joyce W. Lindauer
State Bar No. 21555700
Guy Harvey Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
joyce@joycelindauer.com
guy@joycelindauer.com
**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 21, 2020, a true and correct copy of the foregoing was served on all parties via the Court's ECF system.

  /s/ Joyce W. Lindauer
Joyce W. Lindauer