UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HARRISON COMPANY LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-1057-B |
| | § | |
| A-Z WHOLESALERS, INC. and | § | |
| BARKAT G. ALI, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff Harrison Company LLC's Motion for Summary Judgment (Doc. 51) and Defendants A-Z Wholesalers, Inc. and Barkat G. Ali's Motion for Summary Judgment (Doc. 54). For the reasons that follow, Plaintiff's Motion for Summary Judgment (Doc. 51) and Defendants' Motion for Summary Judgment (Doc. 54) are **DENIED**. Further, Harrison's Objections to and Motion to Strike (Doc. 69) and Defendants' objections as set forth in their Motion for Summary Judgment (Doc. 54) are **MOOT**.

## I.

## BACKGROUND[1]

Plaintiff Harrison Company LLC is a regional food distributor in Bossier City, Louisiana. Doc. 52, Pl.'s Br., 2. In 2008, three trusts acquired Plaintiff's parent entity, Noble Feldman, Inc., which in 2014 merged into Imperial Trading Company LLC. *Id.* Imperial then became Plaintiff's sole member, sharing common upstream ownership, yet remaining "separate entities." *Id.* Starting in

---

[1] All facts are taken from the motions, which cite to the parties' appendices. *See* Doc. 53, Pl.'s App.; Doc. 56 Defs.' App.

2015, "Imperial and [Plaintiff] began sharing certain executive level management and accounting services functions . . . ." *Id.*

On March 11, 2011, Defendant A-Z and Plaintiff executed a Credit Agreement, which Defendant Ali guaranteed. *Id.* at 3. As a result of the Credit Agreement, Defendant A-Z has two account with Plaintiff. *Id.* at 4. However, Plaintiff alleges that as of late 2017, Defendant A-Z had accrued an outstanding balance in excess of $3,000,000 on these accounts. *Id.* at 5. Plaintiff alleges that as a result, Brad Prendergast, Imperial's Chief Financial Officer, and Wayne Baquet, Imperial's President and Chief Executive Officer, began discussing with Defendant A-Z how to collect this debt. *Id.* Plaintiff explains that without any agreement, in late 2019, it retained Locke Lord LLP in its attempts to collect on the debt. *Id.* at 5–6. Plaintiff alleges that despite these attempts to collect, which included a demand letter, Defendants have failed to pay Plaintiff what it is currently owed—which it believes is $2,575,335,73. *Id.* at 6.

Defendants, unsurprisingly, tell a different story. They point out that originally, Imperial brought a state civil suit based on the same alleged missed payments. Doc. 57, Defs.' Br., 4–5. That suit was eventually dismissed without prejudice. Doc. 56, Defs.' App., Ex. B (motion to dismiss without prejudice), 15–16; *id.*, Ex. C (order granting dismissal without prejudice), 17. Defendants believe "that there are no outstanding invoices due [Plaintiff]," and that the invoices in question involve a contract agreed upon between Imperial and Defendant A-Z, not Plaintiff and Defendant A-Z. Doc. 57, Defs.' Br., 7. Defendants argue that Defendant A-Z had an open account with Imperial, and that they "never entered into a guarantee with Imperial." *Id.* As evidence that the debt in question involved a contract between Defendants and Imperial, and not Plaintiff, Defendants point out that the invoices in question are labeled with Imperial's, not Plaintiff's, name. *See* Doc. 57,

Defs.' Br., 11 (citing Doc. 56, Defs.' App., Ex. I, (Invoices), 33–181).

On May 2, 2019, Plaintiff filed suit against Defendants, alleging breach of contract by Defendant A-Z and breach of guaranty by Defendant Ali. Doc. 1, Compl., 3–4. Plaintiff also seeks attorneys' fees. *Id.* at 5. On June 16, 2020, both parties filed motions for summary judgment. Doc. 51, Pl.'s Mot.; Doc. 54, Defs.' Mot. All briefing has been filed, and the motions are ripe for review.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary-judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & Fr. Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). Usually, this requires the movant to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted). But if the non-movant ultimately bears the burden of proof at trial, the summary-judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting an essential element of the non-movant's claim. *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 n.10 (5th Cir. 2017).

Once the summary-judgment movant has met this burden, the burden shifts to the non-movant to "go beyond the pleadings and designate specific facts" showing that a genuine issue exists.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (citations omitted). Instead, the non-moving party must "come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) ( quotation marks omitted). "[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations incorporated and quotations marks omitted). But the court need not "sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citation and quotation marks omitted). If the non-movant is unable to make the required showing, the court must grant summary judgment. *Little*, 37 F.3d at 1076.

## III.

## ANALYSIS

In sum, there are genuine disputes of material fact that prevent summary judgment on Defendants' affirmative defenses and the parties' cross-motions for summary judgment on Plaintiff's breach-of-contract and breach-of-guaranty claims. The Court will first address Defendants' affirmative defenses, and then the parties' cross-motions for summary judgment on Plaintiff's breach-of-contract and breach-of-guaranty claims.

A.     *Defendants' Affirmative Defenses*

Defendants assert four affirmative defenses in their motion for summary judgment: (1) standing, (2) judicial estoppel, (3) modification, and (4) novation. Doc. 57, Defs.' Br., 12–13.

1.      <u>Standing</u>

Defendants first allege that Plaintiff does not have standing to sue on the contract. Defendants explain "that the Ali Guarantee was granted to Harrison, and the invoices relied upon" to invoke that guarantee were issued by Imperial, "an entirely separate and distinct corporation[.]" Doc. 57, Defs.' Br., 11 (internal citations omitted). Defendants acknowledge that the Credit Agreement states that the guarantee "shall apply to all sales made by Seller to Purchaser," and that the Credit Agreement defines the Seller and Purchaser as Plaintiff and Defendant A-Z, respectively. *Id.* (citation and emphasis omitted). But Defendants note that in the state action, Imperial stated that it "was the entity that sold and delivered goods to A-Z." *Id.* at 11–12 (citation omitted). And Defendants argue that after Imperial acquired Plaintiff, "all future sales [involving Defendants] were conducted through Imperial." *Id.* at 12 (citations omitted). Finally, Defendants point out that in Imperial's UCC Financing Statement, "it has been Imperial holding a lien on the assets of A-Z for shipment of sundries and cigarettes to A-Z[.]" *Id.* (citation omitted). From all of this, Defendants argue that because the at-issue sales were outside of the original Credit Agreement and involved Imperial, it is Imperial, not Plaintiff, who has standing to sue on the contract. *See id.* (citation omitted).

In response, Plaintiff argues that Defendants' argument "is based on Defendants' unsupported contention that [Plaintiff] assigned the Credit Agreement to Imperial." Doc. 61, Pl.'s Resp., 6. Plaintiff notes that Defendants concede that the Credit Agreement was between Defendants and Plaintiff. *Id.* To Plaintiff, that Imperial's name was on invoices is not relevant, and this "formatting change to the invoices is explained by [Plaintiff's] declarations." *Id.* (citation omitted). These declarations explain that "[b]ecause Imperial is the more prominent brand in the portfolio, invoices

bear the 'Imperial' name and also reference the location from where the products are being shipped, e.g., 'Bossier,' which internally tells accounting and/or management that [Plaintiff] sold and shipped the product to [Plaintiff's] customer." *Id.* at 4. (citation omitted).

Contractual standing "is really an issue of 'contract interpretation' that goes to the merits of a claim," and "is 'entirely distinct from standing for purposes of Article III [of the Constitution].'" *Cotton v. Certain Underwriters at Lloyd's of London*, 831 F.3d 592, 594 (5th Cir. 2016) (quoting, *inter alia, Perry v. Thomas*, 482 U.S. 483, 492 (1987)). Though there is not much law on the subject of contractual standing, the Court finds *South Shore Hellenic Church, Inc. v. Artech Church Interiors, Inc.*, 183 F. Supp. 3d 197 (D. Mass. 2016), instructive. In *South Shore*, the plaintiff, South Shore Hellenic Church (SSHC), brought a breach-of-contract action against the defendant involving repairs to the Panagia Greek Orthodox Church. 183 F. Supp. 3d at 202. The defendant sought summary judgment, alleging that Panagia signed the contract, *id.* at 211, and that SSHC was not a party to the contract and thus lacked contractual standing. *Id.* at 203. SSHC argued that Panagia was "another well known and recognized name for SSHC and that SSHC therefore entered into the contract . . . ." *Id.* at 211.

The court denied summary judgment based on standing, finding a genuine dispute of material fact. *Id.* at 212. The court noted that cutting against SSHC's standing was the fact that the contract referred to Panagia and not SSHC. *Id.* But in support of standing was the fact that Panagia's president explained in an affidavit that "Panagia Greek Orthodox Church" was a "well known" "trade name[]" for SSHC. *Id.* at 211. Because on the one hand a corporation can do business under a trade name, *see id.* (citations omitted), but on the other, there was conflicting evidence on whether Panagia was actually a trade name for SSHC, the Court denied summary judgment on the issue of

standing. *Id.* at 212.

Similarly, there is conflicting evidence here. On the one hand, Plaintiff explains that the invoices "internally tell[] accounting and/or management that [Plaintiff] sold and shipped the product to [Plaintiff's] customer." Doc. 61, Pl.'s Resp., 4. Defendants do acknowledge that the original Credit Agreement was between Plaintiff and Defendants. Doc. 57, Def.'s Br., 11. Plaintiff and Imperial share officers. Doc. 61, Pl.'s Resp., 4 ("For efficiency and economy, Imperial and [Plaintiff] began sharing certain executive level management and accounting services functions beginning in 2015.") (citations omitted). Additionally, the Promissory Note between Imperial and Defendants acknowledges the validity of the original Credit Agreement. Doc. 56, Def.'s App., Ex. F (Promissory Note), 24. But on the other hand, the invoices *externally* say "Imperial" on them, *see* Doc. 56, Ex. I (Invoices), 33–181,[2] and the notice of default stated that the "Credit Agreements executed [were] in favor of Imperial by [Defendants], *see id.*, Ex. H (Notice of Default and Demand), 30–32. Moreover, the draft promissory note is between A-Z and Imperial. *See id.*, Ex. F (Promissory Note), 24. Thus, the Court must leave it to a jury to weigh the conflicting evidence.

To be sure, *South Shore* is not directly on point. First, the court there was applying Massachusetts law. *See generally S. Shore*, 183 F. Supp. 3d at 197. However, contractual standing is a general contract principle, *see Cotton*, 831 F.3d at 594 (citation omitted), and the parties have not pointed to any conflicting law either in Texas or Louisiana.[3] Second, in *South Shore*, the plaintiff alleged that it contracted with the defendant under a trade name, *see* 183 F. Supp. 3d at 211, while

---

[2] Interestingly, Plaintiff itself points out that Defendants admit that they have no knowledge of this internal accounting system. *See* Doc. 61, Pl.'s Resp., 4 (citation omitted).

[3] Plaintiff argues that Louisiana, not Texas, law applies. Doc. 52, Pl.'s Br., 9–10.

here, Plaintiff alleges that Imperial and Plaintiff are distinct entities. *See* Doc. 61, Pl.'s Resp., 3 (citations omitted). However, because Imperial and Plaintiff share "common upstream ownership," *id.*, like in *South Shore*, there is overlap between the companies as to who signed the contract or contracts. *See S. Shore*, 183 F. Supp. 3d at 211 ("The circumstances thus involve an agent representing one or more principals and a dispute regarding which principal was the contracting party."). Moreover, there is arguably more of a contractual standing issue here than in *South Shore*, as there is no evidence to suggest Plaintiff and Imperial are the same company—Plaintiff readily admits that Imperial is a separate entity. *See* Doc. 61, Pl.'s Resp., 3. And third, in *South Shore*, there was only one contract at issue, and the defendant was arguing that the plaintiff never was a party to that one contract. *See id.* at 203. Here, however, Defendants are arguing that there *is* a contract between the parties, but that the real contract at issue was agreed to between Defendants and Imperial. *See* Doc. 57, Defs.' Br., 11–12. But this is a distinction without relevance: the issue is still who contracted with Defendants as to the specific goods at issue here.[4]

Therefore, the Court concludes that there is a genuine dispute of material fact as to whether Plaintiff has contractual standing. Defendants' motion for summary judgment on this ground is thus **DENIED**.

2.    Judicial estoppel

Next, Defendants believe that Plaintiff is judicially estopped from bringing this lawsuit. Doc.

---

[4] Defendants' standing argument is not premised on whether "[Plaintiff] assigned the Credit Agreement to Imperial," as Plaintiff suggests. *See* Doc. 61, Pl.'s Resp., 6. As just explained, *see supra* at 5, Defendants argue that there is a separate agreement between Imperial and Defendants that is at issue here. Plaintiff seems to concede this in its reply. *See* Doc. 68, Pl.'s Reply, 4 ("Defendants argue that some *other* alleged 'agreement' . . . was breached, such that Imperial (not [Plaintiff]) must sue . . . .").

57, Def.'s Br., 12. Specifically, Defendants believe that Plaintiff "is judicially estopped from asserting entirely inconsistent 'verified' statements of facts under its parent corporation, and then when the claims are defeated, running to Federal Court using a subsidiary to assert diametrically opposed statements of facts." *Id.*

For judicial estoppel to apply, two conditions must be met: (1) "it must be shown that 'the position of the party to be estopped is clearly inconsistent with its previous one;'" and (2) "that party must have convinced the court to accept that previous position." *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (quoting *Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 833 (5th Cir. 2000)).

Imperial's position in the state law suit was not accepted by the state court. Imperial dismissed its lawsuit without prejudice. Doc. 56, Defs.' App., Ex. B (motion to dismiss without prejudice), 15–16; *id.*, Ex. C (order granting dismissal without prejudice), 17. Thus, Imperial never "convinced the court to accept" its position. *Hall*, 327 F.3d at 396 (citation omitted).

Therefore, Defendants' motion for summary judgment based on judicial estoppel is **DENIED**.

3.    <u>Doctrine of novation and modification</u>

Additionally, Defendants argue that the doctrine of novation and modification bar Plaintiff's lawsuit. Doc. 57, Defs.' Br., 13. In support, Defendants contend that "the parties modified the terms of the business relationship by extinguishing any personal guarantee of Ali, evinced by the Promissory Note." *Id.* Defendants believe that Plaintiff has not evidence "that the contract . . . was not modified . . . ." *Id.*

Regardless of the state law applied to this case,[5] Defendants' novation and modification arguments are conclusory and, therefore, summary judgment on these affirmative defenses must be denied. Defendants state, in a conclusory fashion, that the Promissory Note "extinguish[ed] any personal guarantee of Ali," without explaining how it did so. *See* Doc. 57, Defs.' Br., 13. And Defendants' reliance on emails in its reply to prove that a modification or novation occurred, *see* Doc. 72, Defs.' Reply, 4–5 (citation omitted)*,* is not proper evidentiary support, as "[r]eply briefs cannot be used to raise new arguments." *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016) (citation omitted).

Moreover, Defendants' arguments that Plaintiff has "no competent evidence . . . that the contract sued upon was *not* modified," *see* Doc. 57, Defs.' Br., 13 (emphasis added), spins the summary-judgment burden on affirmative defenses on its head. The movant asserting an affirmative defense first "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017) (emphasis in original) (citation omitted). Only then does "the burden shift[] to the nonmovant to establish an issue of fact that warrants trial." *Id.* (citation omitted).

Therefore, Defendants' motion for summary judgment based on modification and novation is **DENIED**.

---

[5] Plaintiff contends that Louisiana, not Texas, law applies. *See* Doc. 52, Pl.'s Br., 9–10. However, because Plaintiff concedes that the Court does not need to address this issue to decide the motions, *see id.* at 10, the Court declines to do so. The Court will address the choice-of-law issue, if necessary, at trial. DThe Court does note, however, that despite Plaintiff's arguments to the contrary, *Laing v. Capital One NA*, 2010 WL 11618389, at *2 (N.D. Tex. Jan. 15, 2010), contained different contractual issues and is not necessarily controlling. *See* Doc. 52, Pl.'s Br., 10 (arguing that *Laing* is controlling on the choice-of-law issue).

B.    *Parties' Breach-of-Contract Arguments*

Both parties seek summary judgment on Plaintiff's breach-of-contract and guaranty claims. *See* Doc. 52, Pl.'s Br., 10–12; Doc. 57, Def.'s Br., 13.

The elements to a breach-of-contract claim are "(1) the existence of a valid contract between plaintiff and defendant; (2) the plaintiff's performance or tender of performance; (3) the defendant's breach of the contract; and (4) the plaintiff's damage as a result of the breach." *In Re Staley*, 320 S.W.3d 490, 499 (Tex. App.—Dallas 2010, no pet.) (citation omitted). In Louisiana, they are virtually the same, except Louisiana law omits element (3) above. *See Denham Homes, L.L.C. v. Teche Fed. Bank*, 182 So. 3d 108, 119 (La. App. 2015) (citations omitted).

Genuine disputes of material fact prevent summary judgment for either party on Plaintiff's breach-of-contract claim. First, as discussed above, there is a genuine dispute of material fact on whether Plaintiff has standing to bring suit. This dispute prevents the Court from granting summary judgment for Plaintiff. Moreover, it is also prevents the Court from granting summary judgment for Plaintiff on its breach-of-guaranty claim, because if the contract that was breached was between Imperial and Defendant A-Z, then Plaintiff does not have standing to bring a breach of a guaranty based on that contract. *See Byrd v. Estate of Nelms*, 154 S.W.3d 149, 157 (Tex. App.—Waco, pet. denied) (explaining that "to recover on a breach of guaranty agreement, the plaintiff must prove: (1) the existence and ownership of the guaranty agreement; (2) the terms of the underlying contract by the holder; (3) the occurrence of the conditions upon which liability is based; and (4) the failure or refusal to perform the promise by the guarantor") (citations omitted).

Additionally, there are other factual disputes that prevent summary judgment for both parties. For example, Defendants point out that "the evidence show that Imperial assigned

[Defendant] A-Z customer numbers 95750 . . . and 95751 . . .; while [Harrison] assigned [Defendant] . . . numbers 17501 . . . and 17502 . . . ." Doc. 65, Def.'s Resp., 8–9 (citations omitted). Plaintiff does not respond to this evidence in its reply. *See generally* Doc. 68, Pl.'s Reply. Thus, because there is a genuine dispute as to which customer numbers Defendant A-Z owes money,[6] there is also a genuine dispute of material fact remains as to whether Defendant A-Z missed any of the payments owed to Plaintiff. *See Weems v. Dallas Indep't Sch. Dist.*, 260 F. Supp. 3d 719, 731 n.5 (N.D. Tex. 2017) ("[T]he Court is not obligated to scour or sift through the record to find evidence in support of a party's position." (citing *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998))).

Therefore, both parties' motions for summary judgment on Plaintiff's breach-of-contract and breach-of-guaranty claims are **DENIED**.[7]

D.    *Parties' Objections to Evidence*

Defendants object to several pieces of Plaintiff's summary-judgment evidence. *See* Doc. 65, Defs.' Resp., 2–6. However, because the Court does not rely on these sources of evidence in this Order, those objections are **MOOT**.

Similarly, because the Court does not rely on Amar B. Ali's declaration in its Order, Plaintiff's Objections to and Motion to Strike (Doc. 69) are hereby **MOOT**.

---

[6] Defendants admit that some sort of debt is owed. Doc. 65, Defs.' Resp., 11.

[7] Because both motions are denied, the parties' motions for summary judgment for attorneys' fees is also **DENIED**. *See* Doc. 52, Pl.'s Br., 17; Doc. 57, Def.'s Br., 13–14.

## IV.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. 51) and Defendants' Motion for Summary Judgment (Doc. 54) are **DENIED**. Further, Plaintiff's Objections to and Motion to Strike (Doc. 69) as well as Defendants' objections as set forth in their Motion for Summary Judgment (Doc. 54) are **MOOT**.


SO ORDERED.

SIGNED: September 15, 2020.


JANE J. BOYLE
UNITED STATES DISTRICT JUDGE