Joyce W. Lindauer
State Bar No. 21555700
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, TX 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HARRISON COMPANY LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-1057-B |
| A-Z WHOLESALERS INC. and | § | |
| BARKAT G. ALI, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' RESPONSE AND BRIEF IN SUPPORT OF THEIR AFFIRMATIVE DEFENSES**

COME NOW, Defendants A-Z Wholesalers, Inc. ("A-Z") and Barkat G. Ali ("Ali") (collectively, "Defendants"), by and through counsel, pursuant to the Court's *Order* (the "Order") [Doc. No. 88], hereby file their *Response and Brief In Support Of Their Affirmative Defenses* (the "Response"), and in support of same would show the Court as follows:

Defendants shall address each affirmative defense in a logical sequence, grouping certain defenses which share common elements.

A. **Capacity / Authority to Sue / Privity of Contract / Lack of Standing**

1. "What is typically referred to as 'standing' in a contractual context, i.e., 'standing' to sue on the contract, is not the same as standing in the jurisdictional sense, even though the

analyses of the two types of standing **contain similar elements**."[1]  Although, "[a] party to a contract has standing to maintain a suit on the contract. It is an elementary rule of law that privity of contract is an essential element of recovery in an action based on contractual theory. Thus, in order to maintain an action to recover damages flowing from the breach of a written agreement it is ordinarily a necessary **prerequisite that there be a privity** existing between the party damaged and the party sought to be held liable for the repudiation of the agreement."[2]

2.  Defendants contend that the elements for contractual standing, which the Plaintiff lacks, are as follows:

- Privity of Contract
- Plaintiff has suffered an injury in fact;
- that is fairly traceable to the challenged conduct of the defendant; and
- that is likely to be redressed by a favorable judicial decision.[3]

3.  The lack of privity of contract, lack of injury suffered, and lack of fairly traceable conduct are evinced by the following:

- HAR005748: Imperial is the supplier, not Harrison.
- Exhibit F: Text message establishes Imperial as supplier, not Harrison.
- APP 452: Email establishes that Imperial was the supplier, not Harrison.
- APP 33-182: Invoices establish Imperial Trading and A-Z Wholesalers as the contracting parties, with terms and conditions different than the Harrison invoices.
- APP 183 -190: Cancelled checks establish that payment performance was owed to Imperial.
- APP 29: UCC-1 establishes that lien rights were terminated as to Harrison and granted as to Imperial.
- APP 191-192: Open Invoice Report establishes that payment is owed to Imperial not Harrison.
- HAR000505: Audit Letter establishes that amounts are due and owing to Imperial not Harrison.
- Exhibit A: Emails establish that the sales function was assumed by Imperial Trading, where as the credit agreement only concerns sales made by Harrison.

---

[1] Wheeler v. White, 314 S.W.3d 225, 229 (Tex. App.—Houston [14th Dist], May 6, 2010, pet. rev. denied).
[2] TLC Hosp., LLC v. Pillar Income Asset Mgmt., 570 S.W.3d 749, 766 (Tex. App.—Tyler, March 15, 2018, pet. rev. denied).
[3] Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (U.S. 2016).

- Exhibit B: Letter establishes that price changes were being controlled by Imperial Trading not Harrison.
- Exhibit C1/C2: Credit Memos establish that Imperial Trading and not Harrison was liable for issuing credits, where as Harrison was liable for credits during the period Harrison sold goods to A-Z.
- Exhibit D: Email establishes that the 800-341-7567 Customer Service/Retail Service phone number goes to Imperial Trading not Harrison, which also has an Imperial Voice Recording.
- January 7, 2021, Draft Transcript of Deposition of Amar Ali, pgs.146/18-149/17: Establishes that Harrison is not suing for breach of the payment terms as established by the open invoices, and therefore cannot establish a triggering event to establish breach of the Credit Agreement by Defendants.
- APP 19-21: Barkat Ali personally agrees as follows: "I agree to pay in the event **the account** becomes delinquent…". The account refers to account numbers 17501 and 17502.
- The non-existence of outstanding Harrison labeled invoices.

4. The lack that a favorable judicial decision would redress any alleged injury is evinced by the following:

- January 7, 2021, Draft Transcript of Deposition of Amar Ali, pg 85/1-6: Establishes that the last purchase from Harrison was on March 31, 2015 and monies owed should have been paid off in June 2015. A decision in favor of Harrison would still leave A-Z exposed to claims by Imperial Trading.

**B.**  **Statute of Limitations**

5. Pursuant to La. C.C. Art. 3494(4), provided Louisiana law is controlling, establishes a 3 year statute of limitation for suits on an open account. Texas has a 4 year statute of limitations pursuant to CPRC § 16.004(c).

- Under either regime, the statute of limitations has run. January 7, 2021, Draft Transcript of Deposition of Amar Ali, pg 85/1-6: Establishes that the last purchase from Harrison was on March 31, 2015 and monies owed should have been paid off in June 2015.
- January 7, 2021, Draft Transcript of Deposition of Amar Ali, pgs.146/18-149/17: Establishes that Harrison is not suing for breach of the payment terms as established by the open invoices, and therefore cannot establish a triggering event to establish breach of the Credit Agreement by Defendants.

### C. Procedural Pre-Requisites/ Accord & Satisfaction

6. The Harrison terms and conditions required of Harrison that "[a]ll sums received by Seller shall first be applied to the oldest charges, then to the next oldest, and so forth."[4]

7. The following evinces that (i) Plaintiff had a prerequisite to apply payment to the oldest invoices first; (ii) Plaintiff received full accord and satisfaction:

- January 7, 2021, Draft Transcript of Deposition of Amar Ali, pg 85/1-6: Establishes that the last purchase from Harrison was on March 31, 2015 and monies owed should have been paid off in June 2015.
- January 7, 2021, Draft Transcript of Deposition of Amar Ali, pgs. 115/5- 119/12: Establishes that First In/First Out was the agreement related to application of payments on open invoices and that all Harrison invoices were paid in full. If this prerequisite had been performed, then Harrison cannot have a claim against A-Z, as there are no open Harrison Invoices.

### D. Reasonableness & Good Faith

8. "A determination as to good faith involves a determination of a state of mind established by factual inferences as to which reasonable persons might differ. Determination depends on the credibility of the witnesses testifying as to their own states of mind wherein the fact finder (usually a jury) should be given an opportunity to observe the demeanor, during direct and cross-examination, of the witnesses whose states of mind are at issue."[5] As for reasonableness, "it usually is for the jury to decide whether the conduct in question meets the reasonable man standard."[6]

9. The following evinces that Defendants acted reasonably and in good faith.

- January 7, 2021, Draft Transcript of Deposition of Amar Ali, pg 84/12-18: Establishes that Defendants were unaware that Harrison even existed after the acquisition by Imperial Trading.
- January 7, 2021, Draft Transcript of Deposition of Amar Ali, pg 85/1-6: Establishes that the last purchase from Harrison was on March 31, 2015 and monies owed should have been paid off in June 2015.

---

[4] APP 19-21. Credit Agreement and Guaranty.
[5] Shifrin v. Wilson, 412 F. Supp. 1282, 1295 (1976).
[6] Id. at 1296.

- January 7, 2021, Draft Transcript of Deposition of Amar Ali, pg 120/21-24: Establishes that the Harrison Credit Agreement was thought to have terminated naturally.
- January 7, 2021, Draft Transcript of Deposition of Amar Ali, pg 190/8-18: Establishes that A-Z ceased doing business with Harrison at the end of March, 2015. Therefore performance to Imperial was proper.

E.   **Unclean Hands**

10.   Unclean hands is an affirmative defense available when the plaintiff is seeking an equitable remedy.[7] To the extent Plaintiff seeks damages in equity, Plaintiff claims are barred. The following establishes Plaintiff's unclean hands by claiming in several instance that its Parent Company is owed by A-Z, but wrongfully sues Defendants under a separate and distinct entity:

- APP 1-14, 18, 30-32: establishes that Imperial Trading asserts A-Z owes it money ,not Harrison.
- HAR000505: Audit Letter establishes that amounts are due and owing to Imperial not Harrison.
- HAR005748: Imperial is the supplier, not Harrison.

F.   **Unconscionability**

11.   "Texas's common-law doctrine of unconscionability requires the party asserting unconscionability to show that enforcement of the contract would be shockingly oppressive, abusive, or unreasonable."[8].

12.   The following documents establish that enforcement of the Harrison credit agreement and guaranty would be shockingly oppressive, abusive, and unreasonable:

- January 7, 2021, Draft Transcript of Deposition of Amar Ali, pgs.146/18-149/17: Establishes that Harrison is not suing for breach of the payment terms as established by the open invoices, and therefore cannot establish a triggering event to establish breach of the Credit Agreement by Defendants.
- APP 191-192: Open Invoice Report establishes that payment is owed to Imperial not Harrison. Enforcement of the credit agreement and guaranty as to Harrison

---

[7] In re Nolle, 265 S.W.3d 487, 494 (Tex. App.—Houston [1st Dist.] 2008, no pet.); accord Cantu v. Guerra & Moore, LLP, 448 S.W.3d 485, 496 (Tex. App.—San Antonio 2014, pet. denied) ("Unclean hands is an affirmative defense that may bar a party with unclean hands from obtaining equitable relief.")
[8] Besteman v. Pitcock, 272 S.W.3d 777, 789 (Tex. App. -- Texarkana 2008, no pet.).

- would still leave A-Z with exposure to liability on an open account with Imperial Trading.
- APP 1-14, 18, 30-32: establishes that Imperial Trading asserts A-Z owes it money, not Harrison.
- HAR000505: Audit Letter establishes that amounts are due and owing to Imperial not Harrison.
- HAR005748: Imperial is the supplier, not Harrison.
- Exhibit F: Text message establishes Imperial as supplier, not Harrison.
- Exhibit A: Emails establish that the sales function was assumed by Imperial Trading, where as the credit agreement only concerns sales made by Harrison.

### G.    Novation / Modification

13.    "A novation occurs if a contract evidences an intention to relinquish and extinguish pre-existing claims and rights of action; in lieu of the old obligation, a party accepts the promise of performance of the new obligation instead of the performance itself."[9] The novation contract discharges the original obligation and only the new obligation may be enforced.[10] The elements for novation are as follows:

- a previous valid obligation;
- a mutual agreement of all parties to the acceptance of a new contract;
- the extinguishment of the old contract or obligation; and
- the validity of the new contract.[11]

14.    Evidence of previous valid obligation is supported by:

- APP 19-21: Barkat Ali personally agrees as follows: "I agree to pay in the event **the account** becomes delinquent…". The account refers to account numbers 17501 and 17502.
- APP 226-231: Evidence of Harrison selling product to A-Z under the previous valid obligation.

15.    The mutual agreement of all the parties to acceptance of a new contract is evinced by:

---

[9] Priem v. Shires, 697 S.W.2d 860, 863 n.3 (Tex. App.-Austin 1985, no writ).
[10] Id.  See also Farkooshi v. Afisco Interest, LLC, No. 14-13-00201-CV, 2014 Tex. App. LEXIS 9270, at *10 (Tex. App.—Houston [14th Dist.] Aug. 21, 2014).
[11] Flanagan v. Martin, 880 S.W.2d 863, 867 (Tex. App.—Waco 1994).

- Exhibit E: Various text messages between Amar Ali and upstream management of Plaintiff evincing that Plaintiff affirmed a breached contract and thus waived its breach of contract claim by causing the detrimental reliance of Defendants under new payment terms and conditions.
- HAR005748: Imperial is the supplier, not Harrison.
- APP 29: UCC-1 establishes that lien rights were terminated as to Harrison and granted as to Imperial.
- APP 183 -190: Cancelled checks establish that payment performance was owed to Imperial.
- APP 33-182: Invoices establish Imperial Trading and A-Z Wholesalers as the contracting parties, with terms and conditions different than the Harrison invoices.

16. The extinguishment of the old contract or obligation is evinced by the following:

- APP 471 – 576: Emails memorializing the extinguishment of the old contract or obligation.
- HAR000505: Audit Letter establishes that amounts are due and owing to Imperial not Harrison.

17. The validity of the new contract is supported by:

- January 7, 2021, Draft Transcript of Deposition of Amar Ali, pg 222/4-22: Establishes that Balance owed was to Imperial, not Harrison.
- APP 191-192: Open Invoice Report establishes that payment is owed to Imperial not Harrison.
- APP 247- 285: Establishes the Imperial, not Harrison was tendering performance.
- APP 183 -190: Cancelled checks establish that payment performance was owed to Imperial.

**H.** **Doctrine of Waiver**

18. Because waiver is an affirmative defense, its elements must be proven by the party who pleads it.[12]. "The elements of waiver are (1) an existing right, benefit, or advantage; (2) knowledge of its existence; and (3) an actual intent to relinquish the right, or intentional conduct inconsistent with the right." [13]. "Ordinarily, the existence of waiver is a question of fact. In determining if waiver has in fact occurred, courts examine the acts, words, or conduct of a party to determine if it "unequivocally manifested" an intention to no longer assert the right in question.

---

[12] See Tex. R. Civ. P. 94.
[13] Ulico Cas. Co. v. Allied Pilots Ass'n, 262 S.W.3d 773, 778 (Tex. 2008).

Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances."[14]

19. Evidence of an existing right in favor of Harrison and knowledge of its existence is supported by:

- APP 19-21: Barkat Ali personally agrees as follows: "I agree to pay in the event **the account** becomes delinquent…". The account refers to account numbers 17501 and 17502.
- APP 226-231: Evidence of Harrison selling product to A-Z under the previous valid obligation.

20. Evidence of an actual intent to relinquish the right, or intentional conduct inconsistent with the right is evinced by:

- Exhibit E: Various text messages between Amar Ali and upstream management of Plaintiff evincing that Plaintiff affirmed a breached contract and thus waived its breach of contract claim by causing the detrimental reliance of Defendants under new payment terms and conditions.
- HAR005748: Imperial is the supplier, not Harrison.
- Exhibit F: Text message establishes Imperial as supplier, not Harrison.
- APP 452: Email establishes that Imperial was the supplier, not Harrison.
- APP 33-182: Invoices establish Imperial Trading and A-Z Wholesalers as the contracting parties, with terms and conditions different than the Harrison invoices.
- HAR000505: Audit Letter establishes that amounts are due and owing to Imperial not Harrison.
- APP 191-192: Open Invoice Report establishes that payment is owed to Imperial not Harrison.
- APP 29: UCC-1 establishes that lien rights were terminated as to Harrison and granted as to Imperial.

I. **Failure to Mitigate Damages**

21. "The doctrine of mitigation of damages prevents a party from recovering for damages resulting from a breach of contract that could be avoided by reasonable efforts on the part

---

[14] Geis v. Colina Del Rio, LP, 362 S.W.3d 100, 111 (Tex. App.—San Antonio, May 4, 2011).

of the plaintiff. A defendant has the burden of proving two elements: (1) the plaintiff's lack of diligence; and (2) the amount by which the failure to mitigate increased damages."[15]

22. Evidence of the Plaintiff's failure to mitigate damages is evinced by the following:

- Exhibit G: Various emails evincing that Plaintiff rejected prior settlement offers and unilaterally refused to accept payments from A-Z as established by the Novation/Modified Contract (*see APP 471 – 576: Emails memorializing the extinguishment of the old contract or obligation*), which would have had the effect of reducing the open invoice balance and any interest accrual therefrom.

**J.     Mutual Mistake**

23. Defendants concede that the affirmative defense of mutual mistake was raised in error. Any mistake is in fact unilateral on the part of Plaintiff.

**K.     Failure of Consideration**

24. "Failure of consideration, an affirmative defense, occurs when, because of some supervening cause after a contract is formed, the promised performance fails. There is a lack of consideration where a purported contract lacks mutuality of obligation."[16]

25. The following evinces the lack of mutuality of obligation on the part of Harrison:

- HAR005748: Imperial is the supplier, not Harrison.
- Exhibit F: Text message establishes Imperial as supplier, not Harrison.
- APP 452: Email establishes that Imperial was the supplier, not Harrison.
- APP 33-182: Invoices establish Imperial Trading and A-Z Wholesalers as the contracting parties, with terms and conditions different than the Harrison invoices.
- Exhibit A: Emails establish that the sales function was assumed by Imperial Trading, where as the credit agreement only concerns sales made by Harrison.

**L.     Ratification/ Consent/ Acquiescence**

26. "Ratification occurs if a party recognizes the validity of a contract by acting or performing under the contract or by otherwise affirmatively acknowledging it, or, in other words

---

[15] Transworld Leasing Corp. v. Wells Fargo Auto Fin., LLC, 2012 Tex. App. LEXIS 8275, *11 (Tex. App. –San Antonio, October 3, 2012).
[16] Burges v. Mosley, 304 S.W.3d 623,628 (Tex. App.—Tyler, January 20, 2010).

if a party by its conduct recognizes a contract as valid, having knowledge of all relevant facts, it ratifies the contract."[17]

27. Evidence that Plaintiff ratified, consent to, and acquiesced to a novation or modification to the original payment terms and conditions:

- APP 33-182: Invoices establish Imperial Trading and A-Z Wholesalers as the contracting parties, with terms and conditions different than the Harrison invoices.
- APP 183 -190: Cancelled checks establish that payment performance was owed to Imperial.
- APP 29: UCC-1 establishes that lien rights were terminated as to Harrison and granted as to Imperial.
- APP 191-192: Open Invoice Report establishes that payment is owed to Imperial not Harrison.
- HAR000505: Audit Letter establishes that amounts are due and owing to Imperial not Harrison.
- APP 471 – 576: Emails memorializing the extinguishment of the old contract or obligation.
- Exhibit E: Various text messages between Amar Ali and upstream management of Plaintiff evincing that Plaintiff affirmed a breached contract.

**M.    Justification / Just & Proper Exercise of Management Discretion**

28. "The affirmative defense of justification can be based on the exercise of either: (1) one's own legal rights; or (2) a good-faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken."[18]

29. Evidence that Defendants are justified in not giving payment performance to Plaintiff:

- HAR005748: Imperial is the supplier, not Harrison.
- Exhibit F: Text message establishes Imperial as supplier, not Harrison.
- APP 452: Email establishes that Imperial was the supplier, not Harrison.
- APP 33-182: Invoices establish Imperial Trading and A-Z Wholesalers as the contracting parties, with terms and conditions different than the Harrison invoices.
- APP 191-192: Open Invoice Report establishes that payment is owed to Imperial not Harrison.

---

[17] Barrand, Inc. v. Whataburger, Inc., 214 S.W.3d 122, 146 (Tex. App.--Corpus Christi 2006, pet. denied); see Mo. Pac. R.R. Co. v. Lely Dev. Corp., 86 S.W.3d 787, 792 (Tex. App.--Austin 2002, pet. dism'd).
[18] Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen, 525 S.W.3d 671, 697 (Tex. 2017).

- HAR000505: Audit Letter establishes that amounts are due and owing to Imperial not Harrison.
- Exhibit A: Emails establish that the sales function was assumed by Imperial Trading, where as the credit agreement only concerns sales made by Harrison.
- Exhibit B: Letter establishes that price changes were being controlled by Imperial Trading not Harrison.
- Exhibit C: Credit Memos establish that Imperial Trading and not Harrison was liable for issuing credits, where as Harrison was liable for credits during the period Harrison sold goods to A-Z.
- Exhibit D: Email establishes that the 800-341-7567 Customer Service/Retail Service phone number goes to Imperial Trading not Harrison, which also has an Imperial Voice Recording.
- January 7, 2021, Draft Transcript of Deposition of Amar Ali, pg 222/4-22: Establishes that Balance owed was to Imperial, not Harrison.

## SUMMARY STATEMENT

30.   Defendants have not marshalled all there evidence and reserve the right to enter additional supportive documents, facts, and testimony at trial.

WHEREFORE, PREMISES CONSIDERED, Defendants pray the Court finds its affirmative defenses are sufficiently supported by competent evidence, and denies Plaintiff's *Motion to Clarify and Reconsideration*, and grant Defendants such other and further relief, both at law and equity, to which they may be duly entitled.

DATED: January 11, 2021

Respectfully submitted,

  /s/ Joyce W. Lindauer
Joyce W. Lindauer
State Bar No. 21555700
Guy Harvey Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
joyce@joycelindauer.com
guy@joycelindauer.com
**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on January 11, 2021, a true and correct copy of the foregoing was served on all parties via the Court's ECF system.

                                             /s/ Joyce W. Lindauer
                                             Joyce W. Lindauer