UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HARRISON COMPANY LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:19-CV-1057-B |
| A-Z WHOLESALERS INC. and BARKAT G. ALI, | § § § § | |
| Defendants. | § | |

### HARRISON COMPANY LLC'S MOTION IN LIMINE

Plaintiff Harrison Company, LLC ("Harrison") moves the Court to exclude any evidence, argument, or reference—in the form of exhibits, oral testimony, deposition testimony, argument, or otherwise—on the following topics:

1. ***Any argument regarding alleged payment and/or offset that Defendants did not plead and is an affirmative defense.*** During Amar Ali's deposition as A-Z's corporate representative, on January 7, 2021 (three weeks before trial), Defendant A-Z Wholesalers Inc. ("A-Z") alleged for the first time that it has paid all amounts, in full, that Harrison claims it is owed. Exhibit A, Excerpt from Dep. of Amar Ali, 85:3-19; 121:1-7; 170:1-4; 265:17-20. Defendants did not plead the affirmative defense of payment. *See* ECF No. 50, Defs.' First Am. Ans. to Pl.'s Orig. Compl. ¶¶26-46. And no Defendant produced any evidence to Harrison or to the Court other than self-serving conclusory testimony in support of a payment defense. A-Z also alleged for the first time in Amar's deposition that it is entitled to certain offsets or credits that are not reflected in Harrison's damages calculation. Exhibit A, Amar Dep. 225:15-23-226:4; 242:18-248:10. Defendants also did not plead the affirmative defense of offset. *See* ECF No. 50, Defs.' First Am.

Ans. to Pl.'s Orig. Compl. ¶¶26-46.  Accordingly, to allow Defendants to testify at trial as to any offset or payment they now claim A-Z is entitled would unfairly surprise and prejudice Harrison.

Payment is an affirmative defense under Louisiana law.[1]  *LSREF 2 Baron, LLC v. Tauch*, 751 F.3d 394, 400 (5th Cir. 2014) (citing *Touro Infirmary v. Marine Med. Unit, Inc.*, 699 So.2d 90, 93 (La.Ct.App. 1983)).  Therefore, Defendants were required to affirmatively plead the defense.  Fed. R. Civ. P. 8; *see Battle*, 2018 WL 3438913, at *4.  Offset/set-off is also an affirmative defense required to be affirmatively pleaded.  *See Garrison Realty LP v. Fouse Architecture & Interiors, P.C.*, 546 Fed. App'x 458, 465 (5th Cir. 2013); *see also Miller v. Pride Int'l Inc.*, 2006 WL 1235959, at *1 (E.D. La. May 3, 2006) (holding that defendants waived their setoff defense by not pleading it before the deadline where defendants sought to set-off disability benefits and medical payments against any judgment plaintiff may be awarded).

"The failure to plead an affirmative defense generally results in waiver of that defense." *Garrison Realty, LP*, 546 Fed. App'x at 465.  A court may excuse a defendant's failure to plead an affirmative defense only if the opposing party is not prejudiced.  *Id.*  Here, Defendants have never before claimed that they paid all amounts due and owing to Harrison.  Indeed, when Harrison moved for summary judgment, and submitted the declaration of Sandy Zazulak with detailed accounting records, Defendants offered no rebuttal.  Rather, their defenses have pertained only to Imperial being the contracting party for the balance at issue as opposed to Harrison.  In fact, A-Z has never before claimed to have paid the outstanding balance to Imperial, either.  Instead, A-Z only claims that it was excused from performance (or, prior to that, Defendants argued that the

---

[1] As set forth in Harrison's Bench Brief on Application of Louisiana Law, the substantive law of Louisiana governs this dispute because the parties agreed to application of Louisiana Law in the Credit Agreement.  However, choice-of-law is immaterial to this issue because Louisiana and Texas law do not conflict.  *See Metro. Life Ins. Co. v. Battle*, 2018 WL 3438913, at *4 (N.D. Tex. 2018) (citing *BMG Direct Mktg. Inc. v. Peake*, 178 S.W.3d 763, 778 (Tex. 2005)).

Credit Agreement had been assigned or orally modified). A-Z did not produce any evidence to challenge Harrison's calculation of the outstanding balance, either before or during Amar's deposition. Therefore, any evidence or testimony introduced by Defendants at trial reflecting payments, offsets, or credits would be a complete ambush on Harrison. Having not received any of that evidence or testimony beforehand—despite asking for it—Harrison will be unable to fairly prepare any response or rebuttal evidence. Accordingly, Harrison respectfully requests that any such evidence and/or testimony be excluded from the trial of this case. Harrison further requests that any question on payment and/or offset be excluded from the jury charge because Defendants waived those affirmative defenses.

2. ***Claim by Defendants about Harrison and/or Imperial's internal accounting and/or operations.*** Defendants admit that they do not have any personal knowledge of Harrison's internal accounting or operations and, therefore, cannot testify or otherwise present evidence on those issues at trial. A witness may only testify to a matter if evidence is introduced to support a finding that the witness has personal knowledge of the matter. Fed. R. Evid. 402; *see UNF West, Inc. v. Nat'l Labor Relations Board*, 844 F.3d 451, 464 (5th Cir. 2016). For instance, in *UNF West*, the Court upheld the exclusion of testimony where "there was no evidence that the witnesses were in a position to observe the relevant parties or actions at key moments." *Id.*

Here, Defendants admit that they have no personal knowledge of Harrison's or Imperial's internal operations. Exhibit B, 6/18/20 Email from Counsel for Defs.; Exhibit C, Excerpt from A-Z's Resp. to Pl.'s Second Set of Disc. Resps., RFA 156-157; Exhibit D, Excerpt from Barkat Ali's Resp. to Pl.'s Second Set of Disc. Resps., RFAs 195-196; Exhibit E, Excerpt from Dep. of Barkat Ali 60:18-63:7; 88:2-8. As the corporate representative of A-Z, Amar Ali also admitted that he has never worked in Harrison's accounting department and never received a tutorial on Harrison's

3

accounting system. Exhibit A, Amar Dep. 106:12-13; 250:14-20. Accordingly, the Court should exclude from trial any testimony or other evidence by Defendants relating to Harrison's or Imperial's internal operations and accounting. This includes, but is not limited to, which entity employs certain staff members and how each entity processes its orders and accounting (and the reason behind applying that method), as well as which entity receives payments, how those payments are applied, and how those payments are reported for tax purposes (notwithstanding how any check is made out by any customer). Simply put, Defendants would be impermissibly speculating; and even then, their self-serving, conclusory testimony is contradicted by actual Harrison employees (and, for example, documents such as their W-2s).

3. ***Testimony on any topic that A-Z's Designated Corporate Representative was unprepared to address and/or refused to address at his deposition.*** Despite receiving advance notice of the topics on which A-Z's corporate representative would be deposed, Amar Ali (A-Z's designee on each of those topics) was unprepared to testify on various topics consequential to this case. *See* Fed. R. Civ. P. 30(b)(6) (requiring that a corporation responding to a deposition notice must present and prepare a designee "beyond matters personally known to that designee"); *see also Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 43 (5th Cir. 2006) (holding that the corporation is required to prepare the representative "to the extent matters are reasonably available, whether from documents, past employees, or other sources."). To allow Defendants to introduce any evidence at trial on the matters Amar Ali could not articulate in his deposition would unfairly ambush and prejudice Harrison at trial. *See* Fed. R. Evid. 403. Therefore, any such evidence should be excluded. *See* Fed. R. Evid. 403. Specifically, A-Z failed to prepare its designee on the following matters:

    a. <u>Harrison's Damages Amount</u>. Defendants have never contested the outstanding dollar amount calculated by Harrison (see also, No. 1, above). Instead, Defendants only contend that Harrison is not the party to whom the balance is owed. *See* Exhibit A, Amar Dep. 260:23-261:11. In A-Z's 30(b)(6) deposition, Amar Ali admits that he has not analyzed any supporting document or internal accounting at A-Z, nor has he made any effort to calculate A-Z's outstanding balance (whether with Harrison or Imperial). Exhibit A, Amar Dep. 263:7-264:7; 261:21-262:11. And none of the alleged "documentation" he claims he could subsequently reference has been produced to Harrison. Thus, A-Z should not be permitted to testify or present evidence at trial on any new calculation of a contradictory dollar amount.

    b. <u>Additional Agreements with Harrison</u>. Defendants contend that "[t]he Credit Agreement and other correspondence makes up the entirety of the agreement between A-Z and Harrison." In A-Z's 30(b)(6) deposition, Amar Ali testified that email communications and oral conversations, generally, were the "other correspondence" referred to in A-Z's discovery responses. Exhibit A, Amar Dep. 151:2-14. But, Amar could not point to any specific emails or "other correspondence" that A-Z was referring to or that A-Z contends reflect a contractual agreement between A-Z and Harrison apart from the Credit Agreement. Exhibit A, Amar Ali Dep. 151:2-152:20; 154:11-155:8. Amar reasoned that he had not reviewed all the documents to do so. *Id.* For Defendants to now review the documents and identify whatever emails they contend constitute a contractual agreement between Harrison and A-Z (other than the Credit Agreement) and then testify at trial without any prior notice to Harrison would be unfair and prejudicial.

    Further, when asked if he recalled any specific modification of the Credit Agreement between Harrison and A_Z, Amar Ali testified: "I can *imagine* a few that *probably would have been* altered or modified." Exhibit A, Amar Ali Dep. 86:13-17 (emphasis added). He proceeded

5

to "guess" as to terms that "would have been" altered. *Id.* at 86:19-87:88:14. Amar could not recall or testify to any specific modification to the Credit Agreement. Without those details, Harrison cannot adequately prepare to avoid unfair surprise at trial with respect to any evidence Defendants may attempt to introduce relating to some alleged contract between Harrison and A-Z other than the Credit Agreement (although there is none).

Harrison cannot be expected to prove a negative. Defendants asserted novation, modification, and an alleged agreement with Imperial (not Harrison), as affirmative defenses. Tellingly, Defendants (who now purport to have claims against Imperial) did not join and did not assert any third-party claim against Imperial in this ligation. It is not Harrison's job to connect-the-dots in support of Defendant's conclusory defenses. Allowing Defendants to continue to "make it up as they go" at trial would unfairly prejudice Harrison, and would also impermissibly confuse the jury.

4. ***References to Imperial's State Court Lawsuit.*** Based on Defendants' prior filings, Harrison anticipates that Defendants intend to introduce copies of, and testify about, Imperial's March 2019 lawsuit against A-Z in the 101st District Court of Dallas County, Texas (Cause No. DC-19-04222) (the "State Court Lawsuit"). *See, e.g.*, Defs.' Resp. and Br. in Supp. of their Affirmative Defenses (ECF No. 89). However, that litigation—which was nonsuited shortly after filing, prior to any adjudication on the merits—is irrelevant to this proceeding and will only prejudice Harrison and confuse the jury.

Irrelevant evidence is inadmissible. Fed. R. Evid. 401. Evidence is relevant only if it has a tendency to make a fact that is of consequence in determining the action more or less probable than it would be without that evidence. Evidence is also inadmissible if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury,

6

undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. "Judicial admissions are not conclusive and binding in a separate case from the one in which the admissions were made;" and, "withdrawn pleadings are no longer judicial admissions." *Blankenship v. Buenger*, 653 Fed. App'x 330, 335-36 (5th Cir. 2016) (emphasis in orig.) (internal citations and quotations omitted).

Defendants have repeatedly argued that the State Court Lawsuit is evidence that A-Z's outstanding balance is owed to Imperial, not Harrison. But, that is not evidence. It is undisputed that Imperial is not a party to the Credit Agreement (which is why the undersigned counsel nonsuited the State Court Lawsuit, and filed this lawsuit on behalf of imperial). This case is a lawsuit by Harrison against A-Z (and Barkat) for breach of the Credit Agreement (and Guaranty). As the Court previously held, "Imperial's position in the state law suit was not accepted by the state court." ECF No. 76. Instead, Imperial voluntarily dismissed its lawsuit without prejudice. The State Court Lawsuit does not serve as an admission by Harrison or by Imperial (who is not a party to this case) and is therefore irrelevant to this trial. That Imperial's and Harrison's shared management (none of whom are attorneys) mistakenly sought to recover, as Imperial, on a claim that Imperial did not have a right to (because that right legally belongs to Harrison) has no bearing on whether the claim, in fact, belongs to Harrison. Accordingly, any evidence of the State Court Lawsuit should be excluded.

5. ***Defendants' Subjective Beliefs.*** Defendants' subjective beliefs about who A-Z was doing business with are irrelevant and any testimony on those beliefs should be excluded at trial. Irrelevant evidence is inadmissible. Fed. R. Evid. 401. Evidence is relevant only if it has a tendency to make a fact that is of consequence in determining the action more or less probable than it would be without that evidence. Evidence is also inadmissible if its probative value is

7

substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

The only evidence of any agreement is the Credit Agreement. The parties to the Credit Agreement are Harrison, A-Z, and Barkat (as guarantor). Harrison's claims in this lawsuit are for breach of contract and to collect on a guaranty. A-Z's subjective belief of who it was doing business with after Harrison rebranded its invoices—more than 3 years into the parties' relationship under the Credit Agreement—is irrelevant and testimony as to such beliefs should be excluded at trial. For example, A-Z's subjective belief that a delivery truck driver was delivering goods for Imperial (not Harrison) at any given time is irrelevant to whether deliveries were being made by Harrison. The entity that employs the truck driver and the ownership of the goods in the warehouse from which those deliveries shipped are objective facts, whether they match A-Z's belief or not. Testimony and evidence of A-Z's subjective beliefs will only mislead the jury as to the objective facts and waste time at trial. Accordingly, the Court should exclude such evidence at trial.

6. *Alleged (but unproven) agreements with, and conclusory allegations against, Imperial.*

Any evidence regarding an alleged agreement between A-Z and Imperial, or allegations of wrongdoing against Imperial, should be excluded at trial as irrelevant and prejudicial. *See* Fed. R. Evid 401; 403.

First, testimony or evidence relating to an agreement, if any, between A-Z and Imperial is irrelevant to the claims in this lawsuit. Imperial is not a party to this case or to the Credit Agreement. As the Court previously held, "the focus of [this] litigation is the alleged breach of the Credit Agreement by A-Z and the resulting liability." ECF No. 31. "Harrison has asked only for damages stemming from the alleged breach of the Credit Agreement". *Id.* "To award such

relief, the Court must determine whether the Credit Agreement was breached; doing so requires no one other than the signatories to the Credit Agreement—Harrison and A-Z. . . ." *Id.*

Defendants contend that they do not owe Harrison any money because—after failed attempts to claim that the agreement was assigned or modified—Defendants now contend that the Credit Agreement terminated in March 2015 (based simply on the fact that *Harrison* changed the format of its invoices). Defendants seek to exploit that irrelevant but easily explained fact, to argue that A-Z entered into an *oral* agreement with Imperial instead (although Defendants cannot provide any evidence as to the terms of that agreement, or the "who," "what," "when," "where," and "why" supporting Defendants' conclusory self-serving allegations). Whether A-Z entered into an agreement with Imperial is irrelevant unless Harrison was also a party to that agreement, which A-Z does not allege. Imperial could not have agreed to terminate the Credit Agreement because it is not a party to the contract. Whether A-Z had an agreement with Imperial has no bearing on whether the products A-Z ordered were through Harrison or whether any payment was made to Harrison. And tellingly, Defendants did not assert any third-party claim against Imperial in this lawsuit (although Defendants clearly could have joined Imperial, if they believed they had legitimate claims). Therefore, whether A-Z had an agreement with Imperial (which it has no evidence of) has no bearing on this suit. To present such irrelevant evidence to the jury would only create confusion. Accordingly, it should be excluded.

Second, any allegation of breach or wrongdoing by Imperial is irrelevant and the prejudice such evidence would cause to Harrison substantially outweighs its probative value. Again, Defendants could have joined Imperial, but did not assert any third-party claim. Throughout this litigation, Defendants have accused Imperial of breaching some alleged agreement with A-Z. But, Imperial is not a party to this lawsuit and its breach of any contract with A-Z is entirely unrelated

to whether A-Z breached its contract with Harrison. A-Z also accused Imperial of "being unconscionable." Exhibit A, Amar Ali 281:16-21. Defendants have absolutely no basis for such accusation and did not plead any claim against Imperial. Indeed, as stated above, Imperial is not a party to this lawsuit. Any testimony or other supposed evidence relating to allegations of wrongdoing against Imperial will merely confuse the jury and prejudice Harrison at trial. Such evidence should therefore be excluded.

7. ***Settlement Communications.*** Any communications between A-Z and Harrison or Harrison's management (with or without their respective counsel, and including any communication referencing or sent on behalf of Imperial) relating to negotiations between the parties to settle A-Z's outstanding balance under the Credit Agreement, or wherein Harrison offered any modified payment term in an effort to compromise, are protected by Rule 408 and must be excluded at trial. Any communication between A-Z and Imperial (with or without their respective counsel) relating to negotiations between the parties must be excluded for the same reason, and because those communications are irrelevant.

Evidence of settlement negotiations may not be used to prove or disprove the validity or amount of a disputed claim. Fed. R. Evid. 408. Rule 408 protects "conduct or statements made in compromise negotiations regarding a claim that was disputed as to validity or amount." *Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 295 (5th Cir. 2010) (citing Fed. R. Evid. 408) (internal quotation marks omitted). "This protection extends to legal conclusions, factual statements, internal memoranda, and the work of non-lawyers and lawyers alike so long as the communications were intended to be part of negotiations toward compromise." *Id.* "Litigation need not have commenced for Rule 408 to apply." *Id.*

Harrison anticipates that Defendants will attempt to testify regarding, and introduce evidence of, compromise negotiations between Harrison and A-Z. Those communications are protected by Rule 408 and may not be introduced at trial by Defendants for the purpose of proving that Harrison's claim is invalid, or for the purpose of disputing the amount of Harrison's claim. Similarly, Harrison anticipates that Defendants will argue that communications referencing, or purportedly sent on behalf of, Imperial, are evidence that the debt is owed to Imperial, not Harrison. But as stated above, "[Rule 408's] protection extends to legal conclusions, factual statements … and the work of non-lawyers and lawyers alike…." The relationship between Harrison and Imperial is a legal issue; and the effect, if any, of the entities (1) consolidating management and accounting functions, and (2) promoting the "Imperial" brand, are legal conclusions (or, alternatively, factual statement). To the extent Harrison's and Imperial's shared management misstated the legal relationship between the entities, or confused any fact, while attempting to resolve the parties' dispute under the Credit Agreement, any mistaken legal conclusion or factual statement is irrelevant. Indeed, in addition to being protected by Rule 408 (like settlement communications between A-Z and Harrison), any communication that Defendants contend was between A-Z and Imperial should also be excluded as irrelevant and inadmissible. Any alleged agreement or modification between A-Z and Imperial—in an attempt to resolve Defendants' outstanding balance under the Credit Agreement—has no effect on the Credit Agreement, or Harrison's claim, and focusing on such evidence at trial would only create confusion of the issues for the jury.

Respectfully submitted,

/s/ Anna K. Finger

**David L. Swanson**
  State Bar No. 19554525
  dswanson@lockelord.com
**Joseph A. Unis, Jr.**
  State Bar No. 24075625
  junis@lockelord.com
**Anna K. Finger**
  State Bar No. 24105860
  anna.k.finger@lockelord.com
**LOCKE LORD LLP**
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-6776
T: 214-740-8000
F: 214-740-8800

**ATTORNEYS FOR PLAINTIFF
HARRISON COMPANY, L.L.C.**

## CERTIFICATE OF SERVICE

I certify that on January 18, 2021, I served this document on all counsel of record via the ECF system and/or email.

/s/ Anna K. Finger
Counsel for Plaintiff