# EXHIBIT B

## Page 1

```
          UNITED STATES DISTRICT COURT
           NORTHERN DISTRICT OF TEXAS
                 DALLAS DIVISION
HARRISON COMPANY LLC,          §
                               §
         Plaintiff,            §
                               §
v.                             § Civil Action No.
                               § 3:19-CV-1057-B
A-Z WHOLESALERS INC. and       §
BARKAT G. ALI,                 §
                               §
         Defendants.           §


          ORAL AND VIDEOTAPED DEPOSITION OF
                       AMAR ALI,
    INDIVIDUALLY AND AS CORPORATE REPRESENTATIVE OF
                 A-Z WHOLESALERS, INC.
                   JANUARY 7, 2021
                 (REPORTED REMOTELY)
```

## Page 2

ORAL AND VIDEOTAPED DEPOSITION of AMAR ALI, produced as a witness at the instance of the Plaintiff, and duly sworn, was taken in the above-styled and numbered cause on the 7th day of January, 2021, from 10:14 a.m. to 7:03 p.m., before Kim M. Dickman, CSR in and for the State of Texas, reported by machine shorthand, at 616 Clariden Ranch Road, in the City of Southlake, County of Tarrant, State of Texas, pursuant to the Federal Rules of Civil Procedure, Notice, and the provisions stated on the record.

## Page 3

```
              A P P E A R A N C E S
FOR THE PLAINTIFF:
     Mr. David L. Swanson
     Mr. Joseph Anthony Unis, Jr.
     Ms. Anna K. Finger
     LOCKE LORD LLP
     2200 Ross Avenue
     Suite 2800
     Dallas, Texas 75201
     214.740.8000
     dswanson@lockelord.com
     junis@lockelord.com
     anna.k.finger@lockelord.com

FOR DEFENDANTS:
     Mr. Guy Harvey Holman
     JOYCE W. LINDAUER ATTORNEY, PLLC
     1412 Main Street
     Suite 500
     Dallas, Texas 75202
     972.503.4033
     guy@joycelindauer.com

ALSO PRESENT:

     Mr. Wayne Rennke, Videographer
```

## Page 4

```
                    I N D E X
WITNESS                                    PAGE
AMAR ALI
EXAMINATION BY MS. FINGER                    7
EXAMINATION BY MR. HOLMAN                  284
EXAMINATION BY MS. FINGER                  291
CORRECTIONS MADE BY WITNESS                299
SIGNATURE OF WITNESS                       300
REPORTER'S CERTIFICATION                   301
EXHIBITS                           IDENTIFIED
Exhibit  1 - Notice of 30(b)(6) Deposition
             of A-Z Wholesalers Inc.        63

Exhibit  2 - Credit Application             75

Exhibit  3 - Harrison Company, L.L.C., Terms
             or Conditions                  77
Exhibit  4 - Imperial Invoice to A-Z Wholesale
             Dallas                        197

Exhibit  6 - Defendant A-Z Wholesalers, Inc.'s
             Responses and Objections To
             Plaintiff's First Set of Discovery
             Requests                      144
Exhibit  8 - Defendant A-Z Wholesalers, Inc
             Response to Plaintiff's Second Set
             of Discovery Requests         159
Exhibit 10 - 9-10-18 Imperial/Baquet letter to
             A-Z Wholesalers, Inc., Barkat G.
             Ali, Amar B. Ali              270

Exhibit 11 - E-mail string top e-mail being
             1-12-19 Amar Ali e-mail to Zazulak  175
Exhibit 12 - Wayne Baquet text messages    181
Exhibit 13 - 4-10-14 Wayne Baquet e-mail to
             Wayne Baquet                  184

Exhibit 14 - Declaration of Amar B. Ali    189
```

## Page 5

```
                    I N D E X
Exhibit  18 - E-mail string top e-mail being
              12-22-14 Barkat e-mail to Thomas,
              Amar Ali                       194
Exhibit  29 - 10-30-15 bradp e-mail to Amar Ali,
              barkat1950                     213
Exhibit  31 - 6-15-18 Imperial/Prendergast e-mail
              to A-Z Wholesalers, Inc.       228
Exhibit  32 - 5-31-18 A/R Aged Trial Balance by
              Chain Number                   227
Exhibit  33 - 3-15-19 Zazulak e-mail to Amar Ali  231
Exhibit  34 - Declaration of Sandy Zazulak   248
Exhibit  38 - Defendants' First Amended Answer
              To Plaintiff's Original Complaint  266
Exhibit  39 - Subpoena to Testify at a Deposition
              in a Civil Action To: Amar Ali  65
Exhibit  40 - Plaintiff's First Set of Discovery
              Requests to Defendant A-Z      142
              Wholesalers, Inc.
```

## Page 6

        P R O C E E D I N G S
        THE VIDEOGRAPHER: Going on the record; the time is 10:14 a.m. Today is Thursday, January 7th, 2021. This is the beginning of the videoconference deposition of Amar Ali, individually and as corporate rep of A-Z Wholesalers, Incorporated in the case styled Harrison Company, LLC versus A-Z Wholesalers, Incorporated, et al.
        This deposition is taking place at 616 Clariden Ranch Road, Southlake, Texas, 76092.
        The court reporter is Kim Dickman. We're with Dickman Davenport, 4228 North Central Expressway, Suite 101, in Dallas, Texas.
        The reporter will now make a brief statement for the record and ask that all parties make their appearances with their agreements, after which she may swear in the witness.
        THE REPORTER: My name is Kim Dickman, Texas Certified Shorthand Reporter Number 2181. This deposition is being held via videoconferencing equipment. The witness and the reporter are not in the same room. The witness has been sworn in remotely pursuant to agreement of all parties.
        The parties stipulate that the testimony is being given as if the witness was sworn in person.

## Page 7

All parties please state their agreement on the record at this time.
        MS. FINGER: My name is Anna Finger, at Locke Lord, and I represent the plaintiff, Harrison, in this law -- in this deposition.
        MR. HOLMAN: Good morning. My name is Guy Holman with the law firm of Joyce Lindauer. I represent the defendant and Amar Ali, in his individual capacity and corporate capacity.
        MR. UNIS: Joe Unis is also on the line for plaintiff, Harrison.
        THE REPORTER: I think we lost the witness.
        Can you hear me, Mr. Ali?
        THE WITNESS: Yes, ma'am.
                    AMAR ALI,
having been first duly sworn, testified as follows:
                    EXAMINATION
BY MS. FINGER:
    Q. Mr. Ali, can you please state your full name for the record?
    A. My name is Amar Barkat Ali.
    Q. Mr. Ali, my name is Anna Finger and I represent Harrison in this lawsuit and in this deposition today, and moving forward, if I refer to

## Page 8

Harrison, will you understand that I'm referring to the plaintiff in this case, Harrison Company, LLC?
    A. Yes.
    Q. You are here to testify today on behalf of yourself individually as well as the defendant in this case, A-Z Wholesalers, Incorporated; is that right?
    A. Yes.
    Q. So moving forward, if I say A-Z in my questions, will you understand that I'm referring to the defendant A-Z Wholesalers, Incorporated?
    A. Yes.
    Q. Your lawyer is here, Mr. Ali; is that right?
    A. Correct.
    Q. Have you ever been deposed before?
    A. Yes, I have.
    Q. How many times?
    A. It's hard to remember if I was being deposed or if I attended a deposition, but probably a couple of times as a person being deposed.
    Q. And in those depositions that you were being deposed, were you a fact witness or a party to those lawsuits?
    A. I believe I was in one of them a corporate representative for a party in the lawsuit and in the other I was a fact witness as an attorney for one of

## 105

1  Q. Do you know the address?
2  A. I don't have the address memorized, but I
3  have -- I have seen the facility. I've been there.
4  Q. When did you go there?
5  A. Oh, boy. I probably went there in 2011,
6  probably in 2012, maybe again in '13.
7  Q. Why did you go there in 2011?
8  A. I believe that I -- I was invited to tour the
9  facility and the warehouse to kind of see what goes on
10 behind the curtain as they were pulling one of our
11 orders and watch that process a little bit. Also I
12 believe it was another sort of endeavor to continue to
13 court A-Z Wholesale to remain a loyal customer of
14 Harrison to see if there was ways that we could
15 purchase more product from Harrison because their
16 experience with us had been fairly good, our
17 experience with them was fairly good, and so in any
18 business relationship you're always trying to figure
19 out a way where you can do a little more together,
20 right, deep in the partnership, deep in the
21 relationship.
22 Q. You didn't receive a tutorial on Harrison's
23 accounting system when you visited the warehouse in
24 2011, did you?
25 A. Did I receive a tutor -- define what you mean

## 106

1  by tutorial.
2  Q. Did anyone in Harrison's accounting
3  department give you a walk-through of how Harrison's
4  internal accounting system works while you were there
5  in 2011?
6  A. Not -- no, not to that extent.
7  Q. What about in 2012?
8  A. Nothing like that to that extent.
9  Q. What about in 2013?
10 A. No, no one -- no one gave me an accounting
11 tutorial on what -- how they handle their accounting.
12 Q. They've never done that, right?
13 A. Harrison has never given me a tutorial on
14 their accounting system.
15 Q. What would you do with the invoice after you
16 received it upon delivery?
17 A. We check each item line by line, SKU by SKU,
18 make sure that the quantity matches up with what was
19 delivered because the pricing for each SKU can vary,
20 right, so we want to make sure because, let's say, for
21 example, we counted 7,000 cartons, right?
22     THE WITNESS: You're allowed to be here.
23 You can sit down if you want.
24     MR. BARKAT ALI: Oh, yeah.
25     THE WITNESS: That was my dad, by the

## 107

1  way, that was Barkat.
2     MR. BARKAT ALI: How are you?
3  A. And so let's say, for example, the driver
4  made a delivery of 7,000 cartons, for example. We
5  counted 7,000, it says 7,000 on the invoice, we signed
6  off on it, no damage, no nothing, driver's off. Then
7  we go through each invoice line by line, SKU by SKU to
8  make sure that if we ordered 600 Marlboro Light
9  cartons, box, that we got 600 cartons of those, right.
10 Q. (By Ms. Finger) Let me clarify, Mr. Ali.
11 I -- I don't mean to cut you off, but I believe you --
12 you told us a little bit about how thoroughly you
13 check the invoice when you receive it.
14     What I meant by my question this time
15 more specifically was, once you've done all that and
16 you yourself have reviewed the invoice, where do you
17 take it from there?
18 A. Where do I take what from there?
19 Q. The invoice.
20 A. Like physically where does it go?
21 Q. Yes. Do you give to it A-Z's accounting
22 department or what happens next?
23 A. So once the product is received, right, which
24 is the process we went through line by line, SKU by
25 SKU, all that sort of stuff, and the product is

## 108

1  received into our system, right, so we -- it goes into
2  our system, our inventory goes up by 7,000 SKUs, at
3  that point, that invoice makes its way to accounts
4  payable.
5  Q. Who is responsible for importing the
6  information from the invoice into A-Z's system?
7  A. Various staff members.
8  Q. Can you tell me any of their names from March
9  2011 to March 2015?
10 A. No. It's whoever was available that could
11 just scan the stuff, it goes right into our system, we
12 hit received, boom, done.
13 Q. Do you remember the names of who was in
14 accounting at A-Z from March 2011 to March 2015?
15 A. No, not exactly. I mean, over the years
16 we've had a lot of turnover in employees and stuff.
17 Q. From March 2012 to March 2015, who was
18 responsible for maintaining the books and records at
19 A-Z?
20 A. When you say books and records, can you be
21 more specific?
22 Q. I mean the accounting books.
23 A. We have lots of sort of traunches for
24 accounting, so we have accounts receivable, we have
25 accounts payable, generally those two people are

Amar Ali - January 7, 2021

### 249

1   A. Yep.
2   Q. Actually, we're going to skip ahead to --
3   A. We should talk about paragraph 6 because it's
4   inaccurate, but --
5   Q. How so?
6   A. Product Harrison sold and delivered to A-Z
7   Wholesalers, Inc. are identified by customer number
8   95750, and for those sold and delivered to Waco --
9   its -- its Waco warehouse by customer number 95751,
10  those are not the customer numbers from Harrison.
11  Q. That's because you believe those are the
12  customer numbers for Imperial; is that right?
13  A. It's not that I believe. Facts are a
14  stubborn thing and the invoices are the best evidence.
15  Pull up a Harrison invoice, pull up an Imperial
16  invoice, and you will see that there are two separate
17  customer numbers for each respective warehouse;
18  further, the reason why I agree -- disagree is because
19  it says that product -- for products that were sold
20  and delivered to its Waco warehouse. Well, neither
21  Harrison nor Imperial actually ever delivered anything
22  to the Waco warehouse, so that is also inaccurate. It
23  was all delivered to Dallas.
24      The Harrison customer number that Dallas
25  had is 17501. The Harrison customer number that A-Z

### 250

1   Waco had was 17502. The customer number that A-Z had
2   with Imperial was 95750 and the Waco warehouse with
3   Imperial at 95751. So when Mister -- or when Sandy
4   testifies in an affidavit that Harrison sold this
5   product and delivered it by customer number 95750,
6   that should say product sold by Imperial, not by
7   Harrison.
8   Q. And your statement just now is based on the
9   invoices you received, correct?
10  A. Oh, it's based on more than just invoices,
11  but the invoices are just the best evidence. You
12  could throw those up and anybody can see that that's
13  completely false, that would just stop it.
14  Q. Mr. Ali, you never worked for Harrison, did
15  you?
16  A. No.
17  Q. How long did you work for Harrison's
18  accounting department?
19  A. I never worked for Harrison's accounting
20  department.
21  Q. If you can turn to Exhibit D of this
22  exhibit -- of this exhibit, please, yeah. So Exhibit
23  D of Sandy's declaration which is on page --
24  A. D, I'm there.
25  Q. The label page is on 11 and then Exhibit 12

### 251

1   is the first page?
2   A. I am there.
3   Q. Have you reviewed this document before?
4   A. The only time I've looked at this document
5   from what I recall was just a few days ago or a couple
6   days ago when my father was being deposed.
7   Q. Okay. You'll see at the top --
8   A. Stop. You can ask me questions about this
9   all day long. This is an in-house made spreadsheet.
10  It's not a report, and so when it says warehouse, they
11  could write Bossier City, they could write Imperial
12  Bossier City, they could write Harrison. I mean, this
13  is just --
14      MS. FINGER: Mr. Ali, I have not asked a
15  question. Objection, nonresponsive. There is no
16  question pending.
17  A. I understand that -- I understand that
18  you're, but --
19  Q. (By Ms. Finger) Answer according to my
20  questions, Mr. Ali.
21      THE REPORTER: Wait, wait, wait. We've
22  got to go one at a time. We've got to go one at a
23  time.
24  A. No, I -- I get it. I get it, but it's
25  getting late in the day and this is --

### 252

1   Q. (By Ms. Finger) I understand. If you want
2   to wrap this up quickly, Mr. Ali, if you want to wrap
3   this up quickly, I need you to answer my questions and
4   not testify as to a monologue that is nonresponsive to
5   any question that I have pending. Can we do that?
6   A. Yes, absolutely.
7   Q. At trial, your lawyer can ask you whatever
8   questions he wants so that you can give whatever
9   testimony you want, but right now it's my turn to ask
10  the questions that I need answers to, okay?
11  A. No, I -- I get it and I'm sure you have lots
12  of questions about this document because it's very
13  unusual.
14  Q. As you stated, this is an internal document
15  produced by Harrison or Imperial; is that correct?
16  A. Yeah, this is -- this is -- I wouldn't
17  even -- I wouldn't even classify it as an internal
18  document. I would classify this as a document
19  prepared to fit the conclusion that they're looking
20  for in this case. I didn't --
21  Q. Is it your allegation that this document is
22  fabricated, Mr. Ali?
23  A. I -- I -- I would -- I would probably argue
24  it is because I guarantee you the other thousands of
25  customers that they have, they don't have Warehouse

**297**

1    Mr. Holman, are we good to go off the
2  record?
3        **MR. HOLMAN:** We're good to go.
4        THE VIDEOGRAPHER: All Right. Counsel,
5  pursuant to the Federal Rules, are there any other
6  agreements or stipulations pertaining to the
7  transcript, exhibits, or other pertinent matters?
8        **MS. FINGER:** Actually, while we're still
9  on the record, I would like to request that any notes
10 Mr. Ali has taken during this deposition be produced
11 in this litigation.
12       **MR. HOLMAN:** We would object.
13       **MS. FINGER:** On what grounds?
14       **MR. HOLMAN:** They're his private notes.
15 We haven't had a chance to review it. Potentially
16 there might be some privileged note taking. It's his
17 personal recollection -- his personal notes. It might
18 be privileged.
19       **MS. FINGER:** Were any of the notes
20 derived from communications with his attorney?
21       **MR. HOLMAN:** May be. We -- I don't know.
22 I haven't been able to review his notes.
23       **MS. FINGER:** Let me clarify that we are
24 asking for unprivileged notes that Mr. Ali has taken
25 during his deposition which he just mentioned in

**298**

1  response to his last question that relate to the
2  succinct answers he will be able to provide in the
3  response to the questions that I asked today that he
4  could not answer.
5        **MR. HOLMAN:** We'll take that under
6  advisement.
7        THE VIDEOGRAPHER: This marks the
8  conclusion of the videoconference deposition. We're
9  going off the record at 7:02 p.m.
10       (Deposition concluded at 7:02 p.m.)

**299**

1        CHANGES AND SIGNATURE.
2  **WITNESS NAME:** AMAR ALI        JANUARY 7, 2021
3  PAGE  LINE  CHANGE         REASON
4  _____
5  _____
6  _____
7  _____
8  _____
9  _____
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19 _____
20 _____
21 _____
22 _____
23 _____
24 _____
25 _____

**300**

1        I, AMAR ALI, have read the foregoing
2  deposition and hereby affix my signature that same is
3  true and correct, except as noted above.
4
5        _____
          AMAR ALI
6
7
8
9
10 THE STATE OF _____)
11 COUNTY OF _____)
12       Before me, _____, on this
13 day personally appeared AMAR ALI known to me (or
14 proved to me under oath or through _____)
15 (description of identity card or other document) to be
16 the person whose name is subscribed to the foregoing
17 instrument and acknowledged to me that they executed
18 the same for the purposes and consideration therein
19 expressed.
20       Given under my hand and seal of office this
21 _____ day of _____, 2021.
22        _____
           NOTARY PUBLIC IN AND FOR
23         THE STATE OF _____
24 My commission expires: _____
25

Amar Ali - January 7, 2021

```
                                                      301
 1  STATE OF TEXAS )
 2  COUNTY OF DALLAS )
 3        I, Kim M. Dickman, Certified Shorthand
 4  Reporter, in and for the State of Texas, certify that
 5  the foregoing deposition of AMAR ALI was reported
 6  stenographically by me at the time and place
 7  indicated, said witness having been placed under oath
 8  by me; that review was requested pursuant to Federal
 9  Rules of Civil Procedure 30(e)(1); and that the
10  deposition is a true record of the testimony given by
11  the witness.
12        I further certify that I am neither counsel
13  for nor related to any party in this cause and am not
14  financially interested in its outcome.
15        Given under my hand on this the 11th day of
16  January, 2021.
17        _____
18        Kim M. Dickman, Certified
          Shorthand Reporter No. 2181
19        in and for the State of Texas
          Dickman Davenport, Inc.
20        Firm Certification No. 312
          4228 North Central Expressway
21        Suite 101, Dallas, Texas 75206
          (214) 855-5100   (800) 445-9548
22        www.dickmandavenport.com
          e-mail: kd@dickmandavenport.com
23        My commission expires 4-30-21
24  TIME USED BY THE PARTIES:
    Ms. Anna K. Finger: 7 hours, 3 minutes
25  Mr. Guy Harvey Holman: 9 minutes
```