# EXHIBIT E

Barkat G. Ali - January 5, 2021

**1**

1      IN THE UNITED STATES DISTRICT COURT
2         NORTHERN DISTRICT OF TEXAS
3            DALLAS DIVISION
4  HARRISON COMPANY LLC,        )
                                )
5      Plaintiff,               )
                                )
6  VS.                          )  NO. 3:19-CV-1057-B
                                )
7  A-Z WHOLESALERS INC. and     )
   BARKAT G. ALI,               )
8                               )
       Defendants.              )
9
10
11      ORAL AND VIDEOTAPED DEPOSITION OF
12            BARKAT G. ALI
13            JANUARY 5, 2021
14          (Reported Remotely)
15
16      ORAL AND VIDEOTAPED DEPOSITION of BARKAT
17  G. ALI, produced as a witness at the instance of the
18  Plaintiffs, and duly sworn, was taken in the
19  above-styled and numbered cause on the 5th of January,
20  2021, from 10:59 a.m. to 5:07 p.m., before Audra B.
21  Paty, CSR in and for the State of Texas, reported by
22  machine shorthand, at 616 Clariden Ranch Road, in the
23  City of Southlake, County of Tarrant, State of Texas,
24  pursuant to Notice and the Federal Rules of Civil
25  Procedure.

**2**

1            A P P E A R A N C E S
2    FOR THE PLAINTIFF:
3        Mr. Joseph Anthony Unis, Jr.
         Mr. David L. Swanson
3        Ms. Anna K. Finger
4        LOCKE LORD LLP
         2200 Ross Avenue
5        Suite 2800
         Dallas, Texas 75201
6        214.740.8000
         junis@lockelord.com
7        dswanson@lockelord.com
         anna.k.finger@lockelord.com
8
9    FOR THE DEFENDANTS:
         Ms. Joyce W. Lindauer
10       Ms. Kerry S. Alleyne
         JOYCE W. LINDAUER, PLLC
11       1412 Main Street
         Suite 500
12       Dallas, Texas 75202
         972.503.4033
13       joyce@joycelindauer.com
         kerry@joycelindauer.com
14
15
         ALSO PRESENT:
16       Mr. Amar Ali
         Mr. Guy Tubbs, Videographer
17
18
19
20
21
22
23
24
25

**3**

1                   I N D E X
2  WITNESS                                    PAGE
3  BARKAT G. ALI
4  EXAMINATION BY MR. UNIS                       7
5
   CORRECTIONS MADE BY WITNESS                 177
6
   SIGNATURE OF WITNESS                        178
7
   REPORTER'S CERTIFICATION                    179
8
9  EXHIBITS                               IDENTIFIED
10 Exhibit  2 - Harrison Credit Application     52
11 Exhibit  3 - Harrison Company, LLC Terms
                 and Conditions                 58
12
   Exhibit  7 - Defendant Barkat G. Ali's
13               Responses and Objections to
                 Plaintiff's First Set of
14               Discovery Requests             91
15 Exhibit  9 - Defendant Barkat Ali's Response
                 to Plaintiff's Second Set of
16               Discovery Requests            101
17 Exhibit 10 - 9-10-18 Baquet letter to A-Z
                 Wholesalers and A. Ali and B.
18               Ali                           108
19 Exhibit 13 - 4-10-14 Baquet e-mail to Baquet 119
20 Exhibit 15 - Declaration of Barkat G. Ali  119
21 Exhibit 16 - Declaration of Amar B. Ali     XX
22 Exhibit 17 - E-mail string top e-mail 11-24-14
                 Barkat e-mail Albritton       131
23
   Exhibit 18 - E-mail string top e-mail 12-22-14
24               Barkat e-mail to Thomas       133
25

**4**

1  EXHIBITS                           IDENTIFIED
2  Exhibit 19 - E-mail string top e-mail 2-27-15
                 A. Ali e-mail to B. Ali      135
3
   Exhibit 20 - E-mail string top e-mail 3-5-15
4                Albritton e-mail to Barkat and Ali  138
5  Exhibit 23 - E-mail string top e-mail
                 3-26-15 Albritton e-mail to Barkat  139
6
   Exhibit 29 - 10-30-15 Prendergrast to A. Ali  142
7
   Exhibit 34 - Declaration of Sandy Zazulak  152
8
   Exhibit 35 - Spreadsheet                   158
9
   Exhibit 38 - Defendant's First Amended Answer
10               to Plaintiff's Original Complaint  159
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Barkat G. Ali - January 5, 2021

5

1         P R O C E E D I N G S
2         THE VIDEOGRAPHER:  Going on the record at
3  10:59 a.m.  Today is Tuesday, January 5th, 2021.  This
4  is the beginning of tape number 1, volume 1.  We are
5  here for the deposition of Barkat G. Ali in the case
6  styled Harrison Company, LLC versus A-Z Wholesalers,
7  Inc., et al.  This deposition is taking place at 616
8  Clariden Ranch Road, Southlake, Texas 76092.
9         The court reporter is Audra Paty.  We are
10  with Dickman Davenport, 4228 North Central Expressway,
11  Suite 101, Dallas, Texas 75206.
12         Will counsel and all those present please
13  state their appearance for the record after which the
14  court reporter will read a brief statement and then
15  swear in the witness.
16         MR. UNIS:  Joe Unis for plaintiff
17  Harrison Company, LLC here at Locke Lord in Dallas,
18  Texas, 2200 Ross Avenue.
19         MS. LINDAUER:  Joyce Lindauer for A-Z
20  Wholesalers, Inc. and Barkat G. Ali.  Oh, and I'm
21  sorry.  1412 Main Street, Suite 500, Dallas, Texas
22  75202.
23         THE REPORTER:  I'm going to make a
24  statement on the record and then I'll swear the
25  witness in.

6

1         MR. SWANSON:  This is David Swanson.  I'm
2  a partner of Joe Unis and also counsel for plaintiff
3  Harrison.
4         MS. FINGER:  And this is Anna Finger.
5  I'm also counsel for plaintiff Harrison at Locke Lord.
6         THE REPORTER:  My name is Audra Paty,
7  Texas Certified Shorthand Reporter Number 5987.  This
8  deposition is being conducted remotely in accordance
9  with the current Emergency Order regarding the
10  COVID-19 State of Disaster issued and signed by the
11  Supreme Court of Texas.  The deposition is being held
12  via videoconferencing equipment.  The witness and the
13  reporter are not in the same room.  The witness will
14  be sworn in remotely pursuant to agreement of all
15  parties.
16         The parties will stipulate that the
17  testimony is being given as if the witness was sworn
18  in person.
19         All parties please state your agreement
20  on the record at this time.
21         MR. UNIS:  By the Rules.
22         THE REPORTER:  Sorry?
23         MR. UNIS:  By the Rules.
24         THE REPORTER:  Okay.
25         MS. LINDAUER:  And we would agree by the

7

1  Rules.  That's fine.
2         BARKAT G. ALI,
3  having been first duly sworn, testified as follows:
4         EXAMINATION
5  BY MR. UNIS:
6     Q.  Good morning, Mr. Ali.  Could you please
7  state your full name for the record?
8     A.  Barkat Ali.
9     Q.  Do you have a middle name or a middle
10  initial?
11     A.  It's Ghulam.
12     Q.  And what does the G stand for?
13     A.  Ghulam.
14     Q.  Could you spell that for the court reporter,
15  please?
16     A.  G-H-U-L-A-M.
17     Q.  Mr. Ali, you understand that you're under
18  oath this morning, correct?
19     A.  Yes.
20     Q.  The testimony you give today is just like at
21  trial?
22     A.  Yes.
23     Q.  You and I other than maybe passing at the
24  courthouse, we have never met before, have we?
25     A.  I really don't remember.

8

1     Q.  You don't believe you have ever met me
2  before?
3     A.  I don't think so.
4     Q.  So far we're doing a pretty good job.  Can we
5  agree to try to not cut each other off during this
6  deposition.  I'll let you complete an answer and
7  you'll try to let me complete my question before you
8  start responding?
9     A.  Yes.
10     Q.  Thank you.  You're also doing a good job of
11  giving verbal responses and speaking clearly.  If you
12  could continue to try to do that throughout the
13  deposition.  The court reporter can't record head nods
14  or head shakes.  So will you agree to give yes and no
15  answers where appropriate, please?
16     A.  I will try to do my best.
17     Q.  That's all we can ask.  Thank you, sir.  And,
18  Mr. Ali, I know your son is in the room and he is also
19  Mr. Ali.  So I just want to go ahead and issue this
20  disclaimer.  If at any point I refer to you as Barkat
21  or your son as Amar, please understand I don't mean
22  any disrespect by the informality.  I'm just trying to
23  keep the players straight in this lawsuit.  Is that
24  understood?
25     A.  That's fine.

Barkat G. Ali - January 5, 2021

57

1  Q. Did you meet him before signing this
2  document?
3     A. I don't remember.
4     Q. What do you remember about your meetings with
5  Mr. Thomas?
6     A. I don't remember.
7     Q. You don't remember anything about any meeting
8  you had with Mr. Thomas?
9     A. No.
10    Q. That's a no?
11    A. No.
12    Q. Do you know who Mr. Thomas is?
13    A. I think I remember vaguely.
14    Q. What do you remember about Mr. Thomas?
15    A. I just remember the man met me twice, I
16 think.
17    Q. Were those meetings in person?
18    A. Yes.
19    Q. Do you recall where those meetings occurred?
20    A. I don't recall when it occurred.
21    Q. Where geographically?
22    A. I think it was at A-Z.
23    Q. In Dallas?
24    A. Yes.
25    Q. Do you recall any meeting outside of Dallas

58

1  with Mr. Harrison?
2     A. No.
3     Q. Did you have any communications with
4  Mr. Harris either telephonically or by e-mail?
5        MR. AMAR ALI: Do you mean Mr. Thomas?
6     Q. (BY MR. UNIS) Mr. Thomas. I'm sorry.
7     A. No.
8     Q. So the only interaction you had with
9  Mr. Thomas was those two meetings at A-Z that you
10 recall?
11    A. Yes.
12    Q. I'm now showing you what's been marked as
13 Exhibit 3 to your deposition.
14       (Exhibit No. 3 marked.)
15    Q. (BY MR. UNIS) Do you see that, sir?
16    A. Yes.
17    Q. Do you recognize this document?
18    A. Yes, that is the company LLC.
19    Q. Can you tell me what this document is?
20    A. It talks about terms and conditions.
21    Q. Is this your credit agreement or A-Z's credit
22 agreement with Harrison Company?
23    A. Yeah.
24    Q. Is that a yes?
25    A. Yeah.

59

1     Q. Is that a yes, sir? I'm sorry.
2     A. Yes.
3     Q. Do you have any reason to dispute that this
4  is a true and accurate copy of that credit agreement
5  between Harrison and A-Z?
6     A. Between Harrison and A-Z, yes.
7     Q. So you agree, sir, this is a true and
8  accurate copy of that agreement, correct?
9     A. Yes.
10    Q. And about three quarters of the way down the
11 page in the right column, that's your signature as
12 president on behalf of A-Z Wholesalers, Inc., correct?
13    A. Yes.
14    Q. And then below that you sign in your
15 individual capacity as guarantor under this agreement,
16 correct?
17    A. Yes. To Harrison, yes.
18    Q. Sir, to your knowledge, this agreement,
19 Exhibit 3, was never amended or modified was it?
20    A. No.
21    Q. A-Z ordered product from Harrison under this
22 agreement, didn't it, sir?
23    A. Yes.
24    Q. And Harrison delivered product to A-Z under
25 this agreement, correct?

60

1     A. Yes.
2     Q. And it delivered that product to the Dallas
3  warehouse for A-Z, right?
4     A. Yeah, I don't know that.
5     Q. Where did it deliver the product, sir?
6     A. I don't know that.
7     Q. You just told me that Harrison delivered
8  product, but you have no idea where it delivered that
9  product to?
10    A. No.
11    Q. Who would know?
12    A. Amar would know because Amar was running the
13 place day one.
14    Q. So you know that Harrison delivered product,
15 but only Amar would know where that product was
16 delivered to; is that correct?
17    A. Yes.
18    Q. Do you have any reason to believe that
19 Harrison did not deliver product to the Dallas
20 warehouse owned by -- or to A-Z's Dallas warehouse?
21    A. I don't know.
22    Q. You have no reason to dispute that, do you,
23 sir?
24    A. Well, I don't know whether it was delivered
25 or not. As I said, Amar should know that. I mean,

Barkat G. Ali - January 5, 2021

---

85

1    Q. You know nothing about the relationship,
2  correct?
3    A. No.
4    Q. How did you first learn of Imperial?
5    A. I don't remember.  I think three years back
6  when Brad came.  I don't know.
7    Q. So you had never heard of Imperial until you
8  met with Mr. Prendergrast three years ago?
9    A. Well, I start remembering when I was signing
10 checks to Imperial.  So that's all.  I did Harrison
11 and then Imperial.
12   Q. Okay.  So you first learned of Imperial when
13 someone put a check in front of you to sign that was
14 addressed to Imperial; is that right?
15   A. Yes.
16   Q. And did you ask why is this check addressed
17 to Imperial at that time?
18   A. No, I don't ask.
19   Q. You just signed it?
20   A. I signed it.
21   Q. So it didn't matter to you who the check was
22 addressed to, did it?
23   A. No.
24   Q. Do you know anything about A-Z's account
25 numbers with Harrison?

---

86

1    A. No, I don't know.
2    Q. Do you know if those account numbers ever
3  changed?
4    A. I don't know really.
5    Q. So you don't know if the account numbers ever
6  changed?
7    A. I don't know.
8    Q. So you wouldn't know if they changed why they
9  changed, would you, sir?
10   A. I don't know.
11   Q. And I asked you earlier about Harrison's
12 internal operations.  You said you had no knowledge of
13 those operations, right?
14   A. Yeah, I don't know.
15   Q. And so you don't know anything about
16 Imperial's operations either, do you, sir?
17   A. No.
18   Q. You don't know anything about its accounting
19 procedures, correct?
20   A. No.
21   Q. Nothing about its employees, correct?
22   A. No.
23   Q. And nothing about its relationship with
24 Harrison, right?
25   A. No.

---

87

1    Q. Other than the fact that you were addressing
2  checks to Imperial, what do you know about Imperial?
3    A. Nothing.  I don't know.  All I was signing
4  checks.
5    Q. You never placed an order yourself with
6  Imperial, did you?
7    A. Repeat the question.
8    Q. You personally never placed any order with
9  Imperial, correct?
10   A. No.
11   Q. And you never spoke with anyone at Imperial,
12 did you, sir?
13   A. No.
14   Q. Do you even know where Imperial is located?
15   A. No.
16   Q. I believe you testified earlier once you sent
17 a check off, you have no idea how it was applied,
18 correct?
19   A. Correct.
20   Q. Doesn't matter if you made it payable to
21 Harrison or if you made it payable to Imperial, you
22 don't know what happened to that check, right?
23   A. No.
24   Q. And you don't know who reported those sales
25 on their taxes?

---

88

1    A. No.
2    Q. Because you have no personal knowledge of
3  Harrison or Imperial's internal accounting practices,
4  correct, sir?
5    A. I don't need to know.
6    Q. I didn't ask you if you need to know.  I
7  asked if you do know.
8    A. No.
9    Q. What do you know about A-Z's payment terms
10 with Harrison, sir?
11   A. I don't know.
12   Q. You know nothing about the payment terms?
13   A. No.
14   Q. Okay.  And you testified earlier you
15 believed you were -- or you believed A-Z at some point
16 started purchasing from Imperial, correct?
17   A. I can recognize only with the checks, when I
18 was signing the checks.
19   Q. Okay.  So you know nothing about any alleged
20 payments terms between A-Z and Imperial, do you, sir?
21   A. No.
22   Q. How much do you believe A-Z owes Imperial?
23   A. I don't know.
24   Q. Do you believe that A-Z owes Imperial money?
25   A. I don't know.

---

Barkat G. Ali - January 5, 2021

173

1  for you and point you to the documents.
2        MR. UNIS: I appreciate that. He's a
3  fact witness so I just need to go through it with him.
4        MS. LINDAUER: No, I'm just saying you've
5  asked the wrong person all along the wrong questions.
6  I mean, his involvement was very minimal. I think
7  he's told you that, but that's okay. I mean, we've
8  sat here for several hours letting you ask the
9  question. So I understand why you're going through
10  the defenses, but you're going to get to depose Amar
11  and when you ask Amar, he'll give you the answers to
12  these questions.
13        MR. UNIS: I just want to avoid any
14  surprises down the road so I got to do it.
15        MS. LINDAUER: Trust me, there's not
16  going to be any surprises. You know what our position
17  is. Very simple.
18        MR. UNIS: As much as I would like to
19  trust you, I got three more affirmative defenses I
20  would like to ask him about.
21        MS. LINDAUER: No, I understand.
22        Q. (BY MR. UNIS) Paragraph 42, Mr. Ali, are you
23  with me there?
24        A. Yes, I'm listening.
25        Q. Defendants are not liable to plaintiff

174

1  because of failure of consideration related to the
2  credit agreement caused by Harrison's transferring
3  shipping and distribution to Imperial. Did I read
4  that correctly?
5        A. Yes.
6        Q. Okay. And the only factual basis you have
7  for this transfer of shipping distribution to Imperial
8  is the checks you signed; is that right?
9        A. Yes.
10        Q. Nothing else?
11        A. No.
12        Q. Paragraph 43, plaintiff's original complaint
13  is barred in whole or in part because any conduct by
14  defendants was ratified, consented to and/or
15  acquiesced by plaintiff. Did I read that correctly?
16        A. Yes.
17        Q. What conduct, if you know, do you contend
18  Harrison consented to?
19        A. I don't know.
20        Q. You don't know. Okay. Then paragraph 44, so
21  it's the next page, page 7, any and all conduct of
22  which plaintiff complains or which is attributed to
23  defendants was a just and proper exercise of its
24  management discretion. Did I read that correctly?
25        A. Yes.

175

1        Q. And do you know what is meant by defendants
2  management discretion, what that's referring to?
3        A. I don't know.
4        MR. UNIS: Mr. Ali, I think I may be at
5  the end. If we can go off the record very briefly
6  before I pass the witness just to make sure I didn't
7  miss anything. Five minutes.
8        MS. LINDAUER: Okay. That's fine.
9        THE VIDEOGRAPHER: We're off the record.
10  The time is 5:00.
11        (Recess 5:00 to 5:06.)
12        THE VIDEOGRAPHER: We're back on the
13  record. The time is 5:06.
14        MR. UNIS: Mr. Ali, I appreciate your
15  time and your patience with me today, working through
16  our various technical issues as well under these
17  unusual circumstances, but that's all I've got today
18  and I'll pass the witness.
19        MS. LINDAUER: For the record, Joyce
20  Lindauer for A-Z and also Mr. Ali and we'll reserve
21  our questions until the time of trial. Thank you.
22        THE VIDEOGRAPHER: The deposition is
23  complete. Will counsel please state all stipulations
24  with regard to custody of transcript, exhibits, and
25  any other pertinent matters?

176

1        MS. LINDAUER: Say again what you want us
2  to do. I'm sorry.
3        THE VIDEOGRAPHER: The deposition is
4  complete. Will counsel please state all stipulations
5  with regard to custody of transcript, exhibits and any
6  other pertinent matters.
7        MS. LINDAUER: I guess transcripts will
8  be held by you I guess. What do you deliver? Just
9  like normal, right? You deliver a copy of the
10  transcript and exhibits to counsel?
11        THE REPORTER: Yeah, basically do you
12  want to read and sign?
13        MS. LINDAUER: Yes, sure. That will
14  work.
15        THE REPORTER: Okay.
16        THE VIDEOGRAPHER: We're off the record.
17  The time is 5:07.
18        (Deposition concluded at 5:07 p.m.)
19
20
21
22
23
24
25

Barkat G. Ali - January 5, 2021

**177**

```
 1          CHANGES AND SIGNATURE
 2  WITNESS NAME:  BARKAT G. ALI   JANUARY 5, 2021
 3  PAGE  LINE  CHANGE          REASON
 4  _____
 5  _____
 6  _____
 7  _____
 8  _____
 9  _____
10  _____
11  _____
12  _____
13  _____
14  _____
15  _____
16  _____
17  _____
18  _____
19  _____
20  _____
21  _____
22  _____
23  _____
24  _____
25  _____
```

**178**

```
 1          I, BARKAT G. ALI, have read the foregoing
 2  deposition and hereby affix my signature that same is
 3  true and correct, except as noted above.
 4
 5          _____
                  BARKAT G. ALI
 6
 7
 8
 9
10  THE STATE OF _____)
11  COUNTY OF _____)
12          Before me, _____, on this
13  day personally appeared BARKAT G. ALI, known to me (or
14  proved to me under oath or through _____)
15  (description of identity card or other document) to be
16  the person whose name is subscribed to the foregoing
17  instrument and acknowledged to me that they executed
18  the same for the purposes and consideration therein
19  expressed.
20          Given under my hand and seal of office this
21  _____ day of _____, 2021.
22
23
            _____
            NOTARY PUBLIC IN AND FOR
24          THE STATE OF _____
    My commission expires: _____
25
```

**179**

```
 1  STATE OF TEXAS )
 2  COUNTY OF DALLAS )
 3          I, Audra B. Paty, Certified Shorthand
 4  Reporter, in and for the State of Texas, certify that
 5  the foregoing deposition of BARKAT G. ALI was reported
 6  stenographically by me at the time and place
 7  indicated, said witness having been placed under oath
 8  by me; that review was requested pursuant to Federal
 9  Rule of Civil Procedure 30(e)(1); and that the
10  deposition is a true record of the testimony given by
11  the witness.
12          I further certify that I am neither counsel
13  for nor related to any party in this cause and am not
14  financially interested in its outcome.
15          Given under my hand on this the 11th day of
16  January, 2021. Audra B. Paty
17          _____
                  Audra B. Paty, Certified
18              Shorthand Reporter No. 5987
                Dickman Davenport, Inc.
19              Firm Registration #312
                4228 North Central Expressway
20              Suite 101
                Dallas, Texas 75206
21              214.855.5100   800.445.9548
                e-mail:  abp@dickmandavenport.com
22              My commission expires 10-31-22
23
    Time used by each party:
24  Mr. Joseph Anthony Unis, Jr. - 5:13
    Ms. Joyce W. Lindauer - 0:00
25
```