Joyce W. Lindauer
State Bar No. 21555700
Guy H. Holman
State Bar No. 24095171
Kerry S. Alleyne
State Bar No. 24066090
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEFENDANTS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **HARRISON COMPANY, LLC.,** § | | |
| § | | |
| Plaintiff, § | | Civil Action No.: 3:19-cv-01057-B |
| § | | |
| v. § | | |
| § | | |
| **A-Z WHOLESALERS, INC.,** and § | | |
| **BARKAT G. ALI,** § | | |
| § | | |
| Defendants. § | | |

### RESPONSE TO PLAINTIFF'S MOTION IN LIMINE

COME NOW A-Z Wholesalers, Inc. ("A-Z"), and Barkat G. Ali ("Barkat"), Defendants in the above styled and numbered case ("Defendants"), and file this their *Response to Plaintiff's Motion in Limine* (the "Motion"), and would show unto the Court as follows:

Plaintiff's Motion in Limine seeks to exclude evidence on seven (7) topics.

1.  *Any argument regarding alleged payment and/or offset that Defendants did not plead, and is an affirmative defense.*

    a.   Debtor admits the allegation in the Motion that it did not plead the affirmative defenses of payment and offset. As such Defendant shall introduce no argument or

evidence in an effort to support such a defense which has admittedly been waived. However, the same evidence that could be used to support such defenses may be used to support Defendants' other defenses articulated and enumerated in the *Defendants' First Amended Answer to Plaintiff's Original Complaint* attached as Exhibit A to the *Amended Renewed Motion for Leave to File First Amended Answer* [Dkt. No. 36].

    2.    *Claim by Defendants about Harrison and/or Imperial's internal accounting and/or operations*.

        a.    Defendants only admit that they never received "a tutorial" on the accounting system used by Harrison in 2001, 2012, 2013. See *Deposition of Amar Ali, Individually and as Corporate Representative of A-Z Wholesalers, Inc*. ("Amar Deposition") 106:2-16. Defendants did not admit that they lack personal knowledge of accounting procedures of Harrison and/or Imperial since they are aware of how payments were applied to the outstanding balance of their accounts as evidenced by various account statements, email and text communications from both Harrison and Imperial employees, and deposition testimony. Defendants were in receipt of such documents and may testify to such effect as supported by such documentation which Defendants intend to submit for the Court's review.

    3.    *Testimony on any topic that A-Z's Designated Corporate Representative was unprepared to address and/or refused to address at his deposition*.

        a.    *Harrison's Damages Amount*.

            i.    A-Z's corporate representative, Amar Ali, was prepared to address, and did address, the issue of monies owed to Harrison by stating that he contested the amount claimed due to improper accounting, and due to the fact that all monies in question are owed to Imperial. Having done so, further testimony on this topic would be both appropriate and

admissible. See Amar Deposition 225:2-14; 244:22-245:2. Admittedly, Amar Ali was not prepared to discuss the amount owed to Imperial as of the date of his deposition, an issue that was not in dispute. See Amar Deposition 225:24-226:4.

      b. *Additional Agreements with Harrison.*

          i. A-Z's corporate representative, Amar Ali, was prepared to address, and did address, the issue of additional agreements with Harrison, to wit, he stated that he would show "emails, text messages, the invoices from Imperial, the statements that [A-Z]… received on a weekly basis, other correspondence, and… other documents that were not executed intentionally…, or a credit agreement that [A-Z]… refused to sign." See Amar Deposition 293:10-19. Still, in truth, Amar Ali was unable to point to specifically identifiable emails in his deposition testimony, as Plaintiff asserts, and Defendants do not object to prohibition of testimony concerning any of those specific, but unidentified, email communications.

    4. *References to Imperial's State Court Lawsuit.*

      a. References to the Imperial State Court Lawsuit (Cause No. DC-19-04222 filed in the 101st District Court, Dallas County, Texas) are completely relevant to these proceedings as it was, and is Imperial, not Harrison, which has standing to sue for claims against Defendant. The references to that lawsuit, and the pleadings therein, speak to Harrison's and Imperial's understanding of exactly which business entity had or has a claim against the Defendants. Since these references and pleadings speak specifically to the issue of standing, they are relevant to these proceedings, and this Court should admit such for consideration by the finder or finders of fact. Further, testimony and/or demonstrative evidence that Imperial, not Harrison, is the entity with actual standing speaks to the root of the Plaintiff's case. Omission of such evidence or testimony would unfairly prejudice the Plaintiff in presentation of its case in chief.

5. *Defendants' Subjective Beliefs*.

    a.    Defendants' beliefs are not at issue here. Rather, the Defendants actually know who A-Z was doing business with, and that knowledge is wholly relevant to this case. Evidence clearly indicates that in or about March 2015, Imperial began conducting business previously conducted by Harrison as demonstrated by invoices, manifests, billing statements, emails, text messages, and other documents showing that orders were being place with, and were being serviced by, Imperial, not Harrison. As to the basis of Harrison's claim being rooted in a credit agreement that lapsed when A-Z began doing business solely with Imperial, Harrison's belief that the benefits of such agreement may continue to flow to Harrison, despite the lack of any business with A-Z after March 2015, is both illogical and irrelevant.

6. *Alleged agreements with, and conclusory allegations against, Imperial*.

    a.    Evidence concerning the agreement between A-Z and Imperial are at the evidentiary root of this case, and speak to Imperial's standing to make a claim against A-Z as opposed to Harrison. Defendants deny that the credit agreement between A-Z and Harrison terminated based only on the format of its invoices. Rather, the Defendants argue that after payment of amounts due and owing on Harrison-supplied products within 4-8 weeks of its final invoice dated March 27, 2015, all supplies were being provided by Imperial (not Harrison), were being shipped from an Imperial warehouse facility, in Imperial delivery trucks, invoiced by Imperial, bearing shipping manifests from Imperial, for which accounting statements bearing Imperial's organizational information were provided, and discussions about such shipments were being conducted between A-Z and employees of Imperial. Whether A-Z had an agreement with Imperial is completely relevant to the conduct of this case since such agreement goes to the root

of certain of A-Z's affirmative defenses, including but not limited to novation, modification, lack of privity of contract, and mutual mistake relating to repayment terms of any alleged arrearages.

        b.      Defendants dispute Harrison's assertion that A-Z's agreement with Imperial is irrelevant since Harrison was not a party to that agreement. It makes no sense for A-Z to enter into any agreement with Harrison since all business subsequent to March 2015 was being conducted with Imperial. As stated *supra*, and for the same reasons, it makes no sense that any orders would be placed with Harrison, or that payment would be tendered to Harrison.

        c.      It is clear that A-Z once conducted business with Harrison. After March 2015, it ceased its business with Harrison and began doing business with Imperial. The lapse of the credit agreement with Harrison, and the subsequent agreement with Imperial to supply A-Z with products are completely relevant and have significant bearing on this case. Evidence of such should be presented to a jury to ensure that it has an understanding of the relationship between and among A-Z, Harrison, and Imperial, and when those relationships began and ended.

    7.    *Settlement Communications*.

        a.      Defendants are in full agreement that evidence concerning negotiations between A-Z and Harrison may not be admitted by the Court in accordance with Fed. R. Evid. P. 408 for the purpose of proving or disproving the validity or amount of Harrison's claim against A-Z. However, such evidence may be admitted for the purpose of proving a witness's bias or prejudice. Fed. R. Evid. P. 408(b). It is only for this latter purpose that Defendants would conceivably present such evidence. As for the assertion that any communication between A-Z and Imperial is irrelevant and inadmissible, such is not a logical statement since "any communication" is not limited only to matters surrounding settlement agreements envisioned by Rule 408. Further, Rule 408 deals with settlement agreements between *any party*. See Fed. R. Evid. P. 408(a). As

the Plaintiff has so forcefully iterated, Imperial is not a party to these proceedings. As such, Rule 408 does not apply to any agreement involving Imperial, and any evidence of such should be admissible.

DATED: March 26, 2021.

Respectfully submitted,

 /s/ Joyce W. Lindauer
Joyce W. Lindauer
State Bar No. 21555700
Guy H. Holman
State Bar No. 24095171
Kerry S. Alleyne
State Bar No. 24066090
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
        guy@joycelindauer.com
        kerry@joycelindauer.com
ATTORNEYS FOR DEFENDANTS

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 26, 2021, a true and correct copy of the foregoing was served on all parties via the Court's ECF system.

 /s/ Joyce W. Lindauer
Joyce W. Lindauer