UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HARRISON COMPANY, L.L.C., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-1057-B |
| | § | |
| A-Z WHOLESALERS, INC. and | § | |
| BARKAT G. ALI, | § | |
| | § | |
| Defendants. | § | |

## REPLY IN SUPPORT OF HARRISON'S
## SECOND MOTION FOR SUMMARY JUDGMENT

Plaintiff Harrison Company, L.L.C. ("Harrison") files this Reply to Defendants' Response and Brief in Opposition to Plaintiff's Second Motion for Summary Judgment (Doc. 141, the "Response") and states:

### INTRODUCTION

Defendants' Response is long on volume, and short on authority and substance.[1] Defendants do not identify specific evidence in the record and articulate the precise manner how that evidence demonstrates a genuine issue of material fact on Harrison's claims under the Credit Agreement and Guaranty. Indeed, Defendants' Response brings nothing new to the analysis of the parties' cross-motions.

---

[1] Defendants' only cited authority is Tex. Bus. & Com. Code § 2.106(c), which defines "termination." Defendants' do not show how or if it applies; rather, Defendants merely assume or conclude it does, which it does not.

1

Defendants' new "reversal and concealment" catchphrase (the meaning of which is unclear) actually highlights a fundamental problem with their arguments—they are all based on their subjective belief (or confusion) that, at some unspecified point, they began doing business with Imperial. That belief, even if sincere, is irrelevant to the dispositive question of which entity performed (*i.e.*, actually procured and delivered the goods) under the Credit Agreement with A-Z.[2] On this question, the summary judgment record is conclusive—Harrison performed under the Credit Agreement, not Imperial.

Because the Response does not raise a genuine issue of material fact and for the reasons stated in this reply (and those in Harrison's other briefs (Docs. 134 and 139)), Harrison is entitled, as a matter of law, to recover the undisputed amounts owed by A-Z under the Credit Agreement and by Ali under the Guaranty.

## ARGUMENT AND AUTHORITIES

**A.   There is no disputed issue of material fact.**

The facts are undisputed. The question for the Court is the *legal conclusion* drawn from the undisputed facts.

### 1.   Defendants' list of undisputed facts.

Harrison agrees with the *facts* listed in the bullet points on pages 2-6 of Defendants' Response. They are undisputed—for example, statements, invoices, and manifests say "Imperial" and "Bossier," and the trucks are also branded with the "Imperial" name (although they also say "Harrison").

---

[2] For example, Defendants state the undisputed fact that Imperial, after receiving payments from A-Z, would credit Harrison's books internally, but "*A-Z would have no knowledge of this act*." Response at 3 (emphasis added). But A-Z's knowledge of Harrison and Imperial's internal accounting system is irrelevant to the dispositive question—which entity performed under the Credit Agreement.

Defendants, however, state certain matters as "fact" without evidentiary support. For example, they point out that Harrison and Imperial share certain executive level management and accounting services, which is true. Response at 2. But they add that this "blurs the principal/agent relationship." *Id.* There is no evidence that Harrison was acting as an agent for Imperial as Defendants claim.[3] As another example, Defendants say "Statements issued by Imperial to A-Z, reflect that Imperial was the seller." Response at 3. It is undisputed that the statements say "Imperial" and "Bossier." (Doc. 142, Ex. G). But no statement says "Imperial was the seller." (Doc. 142, Exs. E, G, I, and Z).

As Harrison's President Wayne Baquet explained, Harrison uses the "Imperial" brand name because it is more prominent. (Doc. 53, App. 2, ¶ 7). To distinguish between Harrison and Imperial, documents reference the warehouse locations for the different companies. *Id.* Harrison's warehouse is in Bossier City, Louisiana, so when documents say "Imperial" and "Bossier" it means that Harrison sold and shipped products to a Harrison customer. *Id.*[4] Baquet explained this in an October 30, 2014 letter to Harrison's customers—that Harrison would operate under the name "Imperial – Bossier City." (Doc. 135, App. 2-3. ¶ 7; Doc. 135, App. 20).[5] Defendants cite no

---

[3] If there were a principal/agent relationship, Harrison would be the principal and Imperial would be the agent providing executive level and accounting services for Harrison.

[4] Defendants falsely claim "the shipping manifests do not contain the 'Bossier' identifier." Response at 14. "Bossier" is on every one of the 39 manifests in Defendants' appendix (Defendants' Appendix, Exs. I, Z):



[5] Defendants say Baquet's letter "misstates several relevant facts." Response at 5. The letter does misstate certain facts, but those facts are irrelevant and immaterial to the only remaining issue in dispute. Defendants admit they entered the Credit Agreement and Guaranty, and they do not dispute the amount owed or that they have not paid. The remaining issue is whether Harrison performed under the Credit Agreement. No misstatement in Baquet's letter is relevant to that issue.

evidence to show that Imperial procured and delivered goods to A-Z. The undisputed evidence is that Harrison did so.

Harrison disagrees with Defendants' editorializing and their legal conclusions about the facts listed. For example, Defendants refer to a Debt Restructuring Term Sheet, emphasize that it states: "Based on our discussions, Imperial is willing to agree as follows," and erroneously conclude that it "evince[es] that Imperial considered the A-Z outstanding balance as owed to it." (Response at 5; Doc. 142, Ex. Q). First, the term sheet defines Imperial to include Harrison. So, the reference to Imperial does not mean "Imperial considered the A-Z outstanding balance as owed to it." (Response at 5). Second, this is, at most, a reflection of the undisputed fact that Imperial and Harrison share accounting services.

Harrison will not address every instance in which Defendants make claims or draw self-serving conclusions unsupported by competent evidence. The documents in Defendants' Appendix say what they say. It is for the Court to determine the legal effect of the documents.

### 2.  Defendants' list of supposedly disputed facts.

Defendants also list selected facts they claim to dispute. *See* Response at 6-7. Anticipating more sophistry by Defendants regarding Harrison and Imperial's operations, Harrison provided uncontroverted and transparent information on some of those operations. Admittedly, some of that information is unnecessary to establish Harrison's right to judgment. But no complained of fact is relevant or material to the issue before the Court.

First, Defendants dispute the statement that "Imperial has no agreement with A-Z or Ali." Response at 6. Even if A-Z and Ali had an agreement with Imperial, it is irrelevant because Harrison is suing Defendants on the Credit Agreement and Guaranty that it has with A-Z and Ali. The shipping manifests do not "obligate[]A-Z to pay Imperial" and do not "state[] that Imperial is

4

the seller." Moreover, as Defendants acknowledge, Harrison and Imperial shared certain accounting functions. *See* Response at 2. And Defendants admit they do not know if Imperial credited Harrison for A-Z payments made for goods A-Z received. *See* Response at 3.

Second, it is immaterial whether "Harrison []or Imperial will sell to a customer without a signed and approved credit application and agreement or personal guaranties," or that Imperial attempted to bargain for a credit agreement. Response at 6-7. Harrison provided this information to rebut A-Z's unsubstantiated contention that it had an oral agreement with Imperial. Harrison had a Credit Agreement with A-Z and a Guaranty from Ali—those are the bases of Harrison's claims.

Third, Defendants dispute that "[e]very time A-Z ordered from Harrison, Harrison sent an invoice to A-Z." Response at 7. Brad Prendergast's Declaration establishes this fact. *See* Prendergast Declaration at ¶ 5 (Doc. 135, App. 22). There is no dispute that Harrison's invoices were "branded" with Imperial's name, or that the invoices also said "Bossier." The legal question is whether "branding" documents with Imperial's name terminates the Credit Agreement and/or controls the question of which entity actually performed under the Credit Agreement. Defendants cite no authority that it does.

Fourth, it is immaterial whether Imperial has its own customers, whose orders Imperial fills from inventory in an Imperial warehouse, or that Harrison branded itself as "Imperial" in Bossier City. Response at 7, and Exs. S & L (pdf page 281). As previously explained, the Imperial "branding" is undisputed.

**B.    There is no dispute Harrison performed under the Credit Agreement.**

Defendants admit a failure to pay Harrison would "trigger a default under the Credit Agreement" if Harrison was the seller. Response at 7 (¶ 9). As shown in its Brief in Support of its

5

Second Motion for Summary Judgment (Doc. 134), the evidence is undisputed that Harrison was the seller.[6] Defendants argue, "because of the pattern of 'reversal and concealment' and the dual agency between certain Harrison and Imperial staff, any confusion that the public may have as to who the Seller is should be charged to Plaintiff." Response at 8 (¶ 11). First, "confusion that the public may have" is not a defense and does not excuse A-Z's performance under the Credit Agreement or Ali's under his Guaranty. Second, even if A-Z was confused, its subjective belief regarding which entity was supplying it goods is not a defense and immaterial. Even Defendants' Amazon analogy shows their argument is wrong—Harrison used the Imperial "platform," *i.e.*, did business using Imperial branding to sell goods to its customers, but the customers remain liable to Harrison.

C.   **No genuine issue of fact arises from Harrison's use of different customer numbers after Harrison and Imperial integrated the two companies' accounting systems.**

As explained in Harrison's Brief in Support of its Second Motion for Summary Judgment (Doc. 134), Harrison and Imperial share certain accounting functions and Harrison assigned new account numbers to A-Z as part of integrating the accounting systems in 2015. (Doc. 134 at 7-8 (citing Doc. 134, App. 22-23)). Harrison switched from 6-digit account numbers to 5-digit account numbers to accommodate the integrated accounting system. *Id.* And, for more than a year, Harrison's invoices to A-Z included both the old 6-digit numbers and the new 5-digit numbers. *Id.* Defendants conveniently ignore this fact because they cannot contest it and it is inconsistent with their timeline and argument.

---

[6] As shown in its Response to Defendants' Second Motion for Summary Judgment (Doc. 139, pp. 12-14), the same evidence, also disproves as a matter of law Defendants' affirmative defenses of lack of privity of contract, lack of capacity and authority to sue. Nothing in Defendants' Response (pp. 12-15) refutes Harrison's evidence, or creates a genuine issue of material fact on Harrison's claims against Defendants or the viability of Defendants' affirmative defenses.

Defendants claim Imperial assigned the new 5-digit account numbers to A-Z and argue its "customer number contention creates a genuine issue of material fact, because *if* customer numbers 95750 and 95751 were issued by Imperial to A-Z for goods sold and delivered by Imperial to A-Z, then for this and other reasons Harrison has no standing to sue Defendants." Response at 11 (emphasis added). First, this is just speculation, not evidence. Second, whether Imperial or Harrison assigned the new account numbers (remember this is an integrated accounting system) is irrelevant and immaterial to the question of which entity suppled goods to A-Z. Defendants' "customer number contention" concerns only Harrison and Imperial's internal accounting, and does not constitute a genuine issue of material fact.

### D. Defendants' objections to Harrison's summary judgment evidence are without merit.

Harrison is filing contemporaneously with this reply a Response to Defendants' Objections to Plaintiff's Summary Judgment Evidence, which it adopts by reference under Rule 10(c). For the reasons stated, Defendants' objections are without merit and the Court should overrule them.

### CONCLUSION

There is no material fact in dispute. All that remains is for the Court to apply settled law to the facts. The record demonstrates that Harrison is entitled to judgment as a matter of law. Harrison requests the relief stated in its Second Motion for Summary Judgment and supporting brief (Docs. 133, 134).

Respectfully submitted,

*/s/ David L. Swanson.*
David L. Swanson
  State Bar No. 19554525
  dswanson@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-6776
T: 214-740-8000
F: 214-740-8800

**ATTORNEY FOR PLAINTIFF**
**HARRISON COMPANY, L.L.C.**

## CERTIFICATE OF SERVICE

      I certify that on June 1, 2021, I filed this document using the Court's Electronic Case Filing ("ECF") system, which will automatically deliver a notice of electronic filing to Defendants' counsel of record, who are registered ECF users. Delivery of such notice of electronic filing constitutes service of this document as contemplated by Rule 5 of the Federal Rules of Civil Procedure. *See* LR 5.1.

*/s/ David L. Swanson.*
Counsel for Plaintiff

92211840v.2