# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **HARRISON COMPANY, L.L.C.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:19-CV-1057-B** |
| | § | |
| **A-Z WHOLESALERS INC. and** | § | |
| **BARKAT G. ALI,** | § | |
| | § | |
| **Defendants.** | § | |

---

## HARRISON'S MOTION FOR AWARD OF INTEREST, ATTORNEYS' FEES, AND <u>COSTS AND BRIEF IN SUPPORT</u>

---

David L. Swanson
  State Bar No. 19554525
  dswanson@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-6776
T: 214-740-8000
F: 214-740-8800

**ATTORNEYS FOR PLAINTIFF**
**HARRISON COMPANY, L.L.C.**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. ii

INDEX OF AUTHORITIES .......................................................................................... iii

INTRODUCTION ...........................................................................................................1

BACKGROUND .............................................................................................................2

STANDARD ....................................................................................................................4

INTEREST, FEES, AND COLLECTION COSTS APPLICATION ...............................4

A.    Louisiana Law Governs Awards of Pre-Judgment Interest and Attorneys' Fees. ...............5

    1.    Louisiana law governs the award of pre-judgment interest ....................................5

    2.    Louisiana law governs the determination of reasonable attorneys' fees ...............6

B.    Harrison is Entitled to Pre-judgment Interest at the Rate of 22% ........................................7

    1.    Harrison is entitled to 22% annual interest even if the court concludes Texas has the most significant relationship to this matter ....................................8

C.    Harrison is Entitled to Reasonable Attorneys' Fees Equal to 33% of the Total Amount Owed by A-Z and Ali. ..........................................................................................10

    1.    The stipulated 33% fee award is not clearly excessive but the Court should view the invoiced amount of $998,743.37 as the minimum reasonable amount of fees if the Court determines adjustments are appropriate .................12

D.    Harrison is Entitled to Recover All Attendant Collection Costs. ......................................14

E.    Harrison is Entitled to Post-Judgment Interest. ................................................................15

CONCLUSION AND PRAYER FOR RELIEF ............................................................16

CERTIFICATE OF CONFERENCE ............................................................................17

CERTIFICATE OF SERVICE ......................................................................................17

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Sherman Operating Co., LLC*,
2021 WL 860458 (E.D. Tex. Feb. 18, 2021) ..........................................................................5

*Bank of New Orleans & Tr. Co. v. Reed Printing & Custom Graphics, Ltd.*,
399 So. 2d 1260 (La. Ct. App. 1981) ....................................................................................8

*Brandner v. New Orleans Off. Supply Ctr., Inc.*,
654 So. 2d 858 (La. App. 4 Cir. 4/26/95), *writ denied*, 657 So. 2d 1039 (La. 6/30/95) ............................................................................................................................10, 11

*Camalo v. Courtois*,
280 So. 3d 956 (La. App. 22 Cir. 10/2/19), *writ denied*, 291 So. 3d 682 (La. 1/14/20) .............................................................................................................................12

*Equip. Sales & Serv. Co. v. Sec. Plumbing Inc.*,
666 So. 2d 1165 (La. App. 5 Cir. 12/13/95) ........................................................................11

*Fahs v. Martin*,
224 F.2d 387 (5th Cir. 1955) ...............................................................................................9

*Gibson v. Burns*,
505 So. 2d 66 (La. Ct. App. 1987) ......................................................................................11

*Grand Pointe Homeowners Ass'n, Inc. v. Heymann*,
307 So. 3d 285 (La. App. 22 Cir. 11/12/20) ..........................................................6, 7, 12, 13

*Helena Chem. Co. v. Nichols*,
695 So. 2d 990 (La. App. 22 Cir. 12/26/96) *as amended on reh'g,* 695 So. 2d 1000 (La. App. 22 Cir. 1/29/97) .........................................................................................12

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*,
203 F. Supp. 3d 755 (E.D. Tex. 2016), *amended in part*, No. 4:14-CV-00371, 2017 WL 1716589 (E.D. Tex. Apr. 27, 2017) ........................................................................9

*ITT Rayonier Inc. v. United States*,
651 F.2d 343 (5th Cir. 1981) ...............................................................................................3

*Jefferson Door Co. v. Lewis*,
713 So. 2d 835 (La. App. 5 Cir. 5/27/98), *writ denied*, 726 So. 2d 35 (La. 10/9/98) .............................................................................................................................8

*Lagraize v. Basler*,
    304 So. 3d 102 (La. App. 5 Cir. 9/9/20), *writ denied*, 307 So. 3d 1038 (La.
    12/22/20) ...................................................................................................................8

*Magnolia Fin. Grp., L.L.C. v. Antos*,
    No. CV 15-7144, 2018 WL 6920455 (E.D. La. Aug. 31, 2018) ......................................14, 15

*Miller v. University Sav. Assoc.*,
    858 S.W.2d 33 (Tex. App. 1993) .................................................................................9

*Spencer v. Boucher*,
    587 So. 2d 97 (La. Ct. App. 1991), *writ denied*, 590 So. 2d 1208 (La. 1992).........................8

*Vignette Publications, Inc. v. Harborview Enterprises, Inc.*,
    So. 2d 531 (La. App. 4 Cir. 9/12/01) 799....................................................................10

*W.R. Grace & Co. v. Cont'l Cas. Co.*,
    896 F.2d 865 (5th Cir. 1990) .....................................................................................5

**Statutes**

U.S.C.A. § 1920 28.......................................................................................................14, 15

La. Civ. Code Art. 2000, 28 U.S.C. § 1961(a)................................................................ *passim*

La. Civ. Code Art. 2924 ......................................................................................................8

La. Rev. Stat. § 9:3500......................................................................................................8

La. Rev. Stat. § 9:3509(A) ...........................................................................................1, 7, 8

La. Rev. Stat. § 12:703......................................................................................................8

La. Rev. Stat. § 3509......................................................................................................5, 8

Tex. Fin. Code § 303.001 – 303.004..................................................................................5, 6

**Other Authorities**

Fed. R. Civ. P. 10(c) .......................................................................................................2, 5

Fed. R. Civ. P. 54(d) ........................................................................................................1

Fed. R. Civ. P. 54(d)(1) ...................................................................................................15

Fed. R. Civ. P. 54(d)(2) ....................................................................................................4

Fed. R. Civ. P. Rule 54(d)(2)(B)..........................................................................................4

Plaintiff Harrison Company, L.L.C. ("Harrison"), files this Motion for Award of Interest, Attorneys' Fees, and Costs and Brief in Support against defendants A-Z Wholesalers Inc. ("A-Z") and Barkat G. Ali ("Ali"), jointly and severally, in accordance with Local Rule 7.1, Local Rule 7.2, the Court's July 8, 2021 Memorandum Opinion and Order, pursuant to the Credit Agreement's Terms or Conditions, La. Civ. Code Art. 2000, 28 U.S.C. § 1961(a), and Federal Rule of Civil Procedure 54(d), and states:

## INTRODUCTION

A-Z obtained from Harrison for subsequent resale $2,575,335.73 in commercial goods and refused to pay for the goods under the guise of an assertion the Court found "farfetched" (Doc. 153, 13) and unsupported by the evidence (*id.* at 9). A-Z and Ali refused to honor their obligations to Harrison, and forced Harrison to expend significant resources to recover a judgment of and against A-Z and Ali for amounts they did not dispute "[are] owed." (*Id.* at 6.) The Court also found that: (i) these obligations arise out of the Credit Agreement between Harrison and A-Z and the related "Guaranty" made by Ali (*id.* at 9, 13, 17); and (ii) the agreements—the validity of which A-Z and Ali do not dispute (*id.* at 15, 17)—entitle Harrison to an award of attorneys' fees and pre-judgment interest (*id*. at 19-20).

Under the Credit Agreement, A-Z and Ali agreed to pay Harrison 22% annual interest, Harrison's reasonable attorneys' fees in an amount equal to 33% of the unpaid balance (which includes accrued and unpaid interest), and "collection costs"[1] in the event A-Z purchased goods from Harrison, on credit, failed to pay for them, and caused Harrison to pursue recovery. (Doc. 53, App. 22, ¶¶ 1, 5.) Louisiana law applies and allows parties to business transactions to agree to pay interest at rates in excess of the cap generally applicable to non-business transactions. *See* La. Rev.

---

[1] The Court did not address "collection costs" contemplated by the Credit Agreement, and, in turn, the Guaranty, that obligate A-Z and Ali to pay those costs too. (Doc. 53, App 22, ¶ 5.)

Stat. § 9:3509(A). Louisiana law further allows for the recovery of attorneys' fees and costs agreed by the parties. *See* La. Civ. Code Art. 2000.

As of July 28, 2021, the unpaid principal balance owed Harrison by A-Z and Ali under the Credit Agreement is $2,575,335.73.  If the Court were to find that Louisiana law and the Credit Agreement apply to the amount of pre-judgment interest, then A-Z and Ali also owe Harrison $1,269,746.35 in pre-judgment interest up to and through July 28, 2021 (a total of 818 days),[2] and A-Z and Ali would also owe Harrison pre-judgment interest from and after July 29, 2021 up to and through the date of entry of a final judgment at the rate of $1,552.26 per day[3]. Applying Louisiana pre-judgment interest to the undisputed unpaid principal balance owed results in a total amount due as of July 28, 2021 of $3,845,082.08.  Applying Louisiana law and the Credit Agreement's terms requiring A-Z and Ali to pay Harrison reasonable attorneys' fees of no less than 33% of the balance due would result in a fee award to Harrison in the amount of $1,268,877.09.

Harrison is also entitled to recover $1,098.35 in other collection costs, taxable court costs, and post-judgment interest at a rate equal to the weekly average one-year constant maturity Treasury yield for the week preceding entry of final judgment pursuant to 28 U.S.C. § 1961(a).[4]

## **BACKGROUND**

On March 11, 2011, A-Z—a wholesaler—prepared and submitted to Harrison—a regional food distributor—a credit application, credit agreement, and guaranty by Ali (the "Credit Agreement" and "Guaranty"). (Doc. 53, App. 20-22.[5]) A-Z and Ali do not dispute the validity of

---

[2]   (.22 / 365) * (818) * ($2,575,335.73) = $1,269,746.35.
[3]   (.22 / 365) * ($2,575,335.73) = $1,522.26.
[4]   The weekly average one-year constant maturity Treasury yields are available at http://www.txnd.uscourts.gov/post-judgment-rates.
[5]   Harrison adopts by reference the appendices to its Motion for Summary Judgment (Doc. 53) and Second Motion for Summary Judgment (Doc. 135) pursuant to Federal Rule of Civil Procedure 10(c). The Appendix to this Motion consists of the Declaration of David L. Swanson, together with its exhibits. This appendix is cited as "Mot.

the Credit Agreement or Guaranty. (Doc. 153, 15, 17.) The Credit Agreement provides that "Purchaser agrees to any interest on all past due sums at the rate of 22 percent per annum." (Doc. 53, App. 22, ¶ 1.) The Credit Agreement further provides that "[A-Z] agrees to pay, in the event the account becomes delinquent and is turned over to an attorney or agency for collection, a reasonable fee. In no event shall the reasonable fee be less than 33% of the balance due plus all attendant collection costs." (*Id.* at ¶ 5.) The Guaranty reflects that Ali "personally guarantee[d] . . . payment of any obligation of [A-Z]" and that he further "agree[d] to pay" a reasonable fee that "in no event shall . . . be less than 33% of the balance due plus all attendant collection costs" in the event the account became delinquent. (Doc. 53, App. 22.)

Harrison began selling products to A-Z on credit after A-Z and Ali executed the Credit Agreement and Guaranty. (Doc. 53, App. 15, Prendergast ¶ 4.) Harrison became concerned with A-Z's outstanding credit balance in late 2017 as it had grown to over $3 million. (Doc. 53, App. 16, Prendergast ¶ 11.) A-Z began bouncing checks and submitting checks in round numbers irrespective of any invoice that Harrison issued. (Doc. 53, App. 16-17, Prendergast ¶ 12.) Certain of A-Z's checks were returned for insufficient funds. (Doc. 53, App. 17, Prendergast ¶ 13.) A-Z also stopped payment on its checks on several occasions. (*Id.*)

Harrison endeavored to work with A-Z and Ali in 2018 to figure out a way for Harrison to collect some of the amount A-Z owed while still being able to sell products to A-Z. (Doc. 53, App. 16, Prendergast ¶ 11; Doc. 53, App. 4, Baquet ¶ 15.) Harrison hired counsel to negotiate a resolution with A-Z and Ali. (Doc. 53, App. 4, Baquet ¶ 15.) The parties exchanged drafts of documents to memorialize the parties' plan; however, the parties ultimately did not reach an

---

App. __." In addition to these materials, Harrison moves the Court to take judicial notice of the docket and filings in this matter and of these proceedings more generally. *See, e.g., ITT Rayonier Inc. v. United States*, 651 F.2d 343, 345 n.2 (5th Cir. 1981) ("A court may ... take judicial notice of its own records or of those of inferior courts.").

agreement and Harrison decided to cease sales to A-Z in early 2019. (*Id.* at ¶¶ 15-16.) Harrison

made its last sale to A-Z on March 4, 2019. (Doc. 135, App. 23-24, Prendergast ¶ 12; *see also id.*

at App. 48, Prendergast Ex. 3.)

Harrison retained Locke Lord LLP in 2019 to represent it in attempting to collect the

obligation A-Z and Ali owed to Harrison. (Doc. 53, App. 4, Baquet ¶ 16.) Harrison "agreed to pay

that firm for its reasonable and necessary fees, costs, and expenses" to collect the obligation. (*Id.*)

Harrison, through its attorneys, sent a demand to A-Z and Ali on May 2, 2019. (Doc. 53, App. 29-

30.) A-Z and Ali nevertheless refused to honor their obligations, causing Harrison's attorneys to

move forward with this lawsuit. A-Z's outstanding principal balance—for which Ali is liable

should A-Z refuse to pay (Doc. 153, 17-18)—is currently $2,575,335.73 (*id.* at 5). A-Z and Ali do

not dispute that they owe this amount of money. (*Id.* at 6.)

## STANDARD

Federal Rule of Civil Procedure 54(d)(2) governs motions for attorneys' fees and related

nontaxable expenses. Rule 54(d)(2)(B) provides that:

> Unless a statute or a court order provides otherwise, the motion must:
>
> > (i) be filed no later than 14 days after the entry of judgment;
> >
> > (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
> >
> > (iii) state the amount sought or provide a fair estimate of it; and
> >
> > (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

## INTEREST, FEES, AND COLLECTION COSTS APPLICATION

The Court previously ruled that both A-Z and Ali are obligated to pay Harrison pre- and

post-judgment interest and reasonable attorneys' fees pursuant to the Credit Agreement and

Guaranty. (Doc. 153, 19-20.) The Court has not yet ruled as to whether Louisiana or Texas

substantive law applies to determine the amount of pre-judgment interest, attorneys' fees, and costs A-Z and Ali owe Harrison. Louisiana and Texas law differ regarding the rate of pre-judgment interest a party may agree to pay as well as the method of determining reasonable attorneys' fees. Harrison's choice of law analysis is limited to these issues. *See W.R. Grace & Co. v. Cont'l Cas. Co.*, 896 F.2d 865, 874 (5th Cir. 1990). Federal procedural law applies because the basis for the Court's jurisdiction is diversity. *Allen v. Sherman Operating Co., LLC*, 2021 WL 860458, at *2 (E.D. Tex. Feb. 18, 2021).

## A.    Louisiana Law Governs Awards of Pre-Judgment Interest and Attorneys' Fees.

Harrison adopts by reference its Trial Brief on Application of Louisiana Law (Doc. 95) pursuant to Federal Rule of Civil Procedure 10(c). Louisiana has the most significant relationship with this dispute. A-Z and Ali contracted with a Louisiana entity to purchase goods from a Louisiana entity, and also consented to jurisdiction and venue in Louisiana. (*Id.*) For the reasons stated in the Trial Brief, Louisiana law should control.

### 1.    Louisiana law governs the award of pre-judgment interest

The Court should look to Louisiana law to determine the interest rate applicable to Harrison's award of pre-judgment. Louisiana law allows parties to commercial transactions to agree to interest rates in excess of the otherwise applicable 12% per annum cap, with no articulated limit. *See* La. Rev. Stat. § 3509. The maximum interest rate to which parties were capable of agreeing under Texas law when the Credit Agreement and Guaranty were executed, on March 11, 2011, was 18%. *See* Tex. Fin. Code § 303.001 – 303.004.[6]

---

[6]    The weekly ceiling rate is available at https://occc.texas.gov/sites/default/files/uploads/credit-letters/03-08-11.pdf.

**2.**     *Louisiana law governs the determination of reasonable attorneys' fees*

The Court should look to Louisiana law when determining the reasonableness of Harrison's attorneys' fees. Texas and Louisiana courts have both recently clarified the correct methods used to determine the reasonableness of attorneys' fees. In Texas, "the fact finder's starting point for calculating an attorneys' fees award is determining the reasonable hours worked multiplied by a reasonable hourly rate . . . ," *i.e.,* the lodestar. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP Id.*, 578 S.W.3d 469, 497 (Tex. 2019). The party seeking fees bears the burden of proving each of the foregoing and this burden can be met by showing "(1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." The fee award may be adjusted depending on factors not subsumed by the first step in the process. *Id.* at 500.

Louisiana law provides that where, as here, the dispute involves the payment of money and the parties "have expressly agreed that the obligor shall also be liable for the obligee's attorney fees in a fixed or determinable amount, the obligee is entitled to that amount as well." La. Civ. Code Art. 2000. Stipulated fee agreements are not subject to review by a court unless the fee award would be "clearly excessive," in which case the court is to determine a reasonable fee after considering several reasonableness factors. (*See* § C(1), *infra*.) Louisiana courts do not technically apply a lodestar method, but they consider generally the same factors. *See Grand Pointe Homeowners Ass'n, Inc. v. Heymann*, 307 So. 3d 285, 288 (La. App. 22 Cir. 11/12/20). Louisiana courts consider:

> (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge.

*Id.* at 289 (citation omitted). Louisiana law also holds that attorneys' fees to which a party is entitled form "'a part of the calculation of the results obtained because such an award in th[is] instance is also a part of the total recovery.'" *Heymann*, 307 So. 3d at 388 (quoting *State v. Louisiana Land & Expl. Co.*, 272 So. 3d 937, 941 (La. App. 22 Cir. 5/15/19)).

**B.      Harrison is Entitled to Pre-judgment Interest at the Rate of 22%.**

The Credit Agreement obligates A-Z to pay Harrison pre-judgment interest. (Doc. 153, 19-20.) Both A-Z and Ali agreed to pay interest "at the rate of 22 percent per annum." (Doc. 53, App. 22, ¶ 1; *see also id.* at App. 22, Guaranty.) The Court awarded $2,575,335.73 in underlying monetary damages on July 8, 2021, a figure equal to the value of goods A-Z ordered from Harrison and that neither A-Z nor Ali paid. (Doc. 153, 18.) This amount was due to Harrison on or before the date Harrison filed suit, on May 2, 2019. (Doc. 1.) Harrison is entitled to pre-judgment from May 2, 2019 up to and through July 28, 2021 in the amount of $1,269,746.35 (a total of 818 days), plus an additional $1,552.26 per day until the entry of a final judgment.

Louisiana's personal transaction interest rate cap does not apply to this commercial payment obligation. La. Rev. Stat. § 9:3509(A) provides in relevant part that:

> any debtor that is a . . . a foreign corporation . . . or any other person or individual borrowing funds for commercial, business, or agricultural purposes or deferring payment of an obligation for commercial, business, or agricultural purposes, may agree to pay interest in excess of the maximum rate of conventional interest authorized by the laws of this state . . . and as to any such agreement such debtor shall be prohibited from asserting a claim or defense of usury or of the taking of interest in excess of the maximum rate of conventional interest, and any person whatsoever signing as co-maker, guarantor, or endorser for such debtor shall also be prohibited from asserting any such claim or defense.

La. Rev. Stat. § 9:3509(A). A-Z is a corporation that purchased goods from Harrison and resold those goods to others. (Doc. 53, App. 23.) The Court previously found that A-Z purchased and did not pay for the $2,575,335.73 of goods under the Credit Agreement. (Doc. 153, 14.) A-Z obtained

the goods on credit, which is "borrowing funds for commercial, business, or agricultural purposes or deferring payment of an obligation for commercial, business, or agricultural purposes . . . ." La. Rev. Stat. § 9:3509(A).

Harrison is entitled to pre-judgment interest up to and through the date the Court enters final judgment at the rate of 22%. Louisiana's generally applicable 12% interest rate cap in La. Rev. Stat. § 9:3500 does not apply to this commercial transaction. *See Spencer v. Boucher*, 587 So. 2d 97, 102 (La. Ct. App. 1991), *writ denied*, 590 So. 2d 1208 (La. 1992) (allowing interest in excess of 12% and holding that the 12% rate cap in former La. Civ. Code Art. 2924 (now La. Rev. Stat. § 9:3500) did not apply to a loan agreement obtained for the purpose of stocking a convenience store); *Lagraize v. Basler*, 304 So. 3d 102, 113 (La. App. 5 Cir. 9/9/20), *writ denied*, 307 So. 3d 1038 (La. 12/22/20) (reversing the trial court and awarding the contracted 25% annual interest against an LLC and two of its members who obtained a loan for business purposes); *Jefferson Door Co. v. Lewis*, 713 So. 2d 835, 838 (La. App. 5 Cir. 5/27/98), *writ denied*, 726 So. 2d 35 (La. 10/9/98) (affirming trial court's award of 18% interest pursuant to credit application and holding the 12% interest rate cap inapplicable).

Ali, as guarantor, is also obligated to pay interest at the rate of 22%. *See Bank of New Orleans & Tr. Co. v. Reed Printing & Custom Graphics, Ltd.*, 399 So. 2d 1260, 1262 (La. Ct. App. 1981) (holding that the endorser of a corporation's debt was also liable to pay contractual interest in excess of the generally applicable rate cap pursuant to La. Rev. Stat. § 12:703 (now La. Rev. Stat. § 3509(A)); *see also Lagraize*, 304 So. 3d at 113 (same, citing La. Rev. Stat. § 3509(A)).

### 1.    *Harrison is entitled to 22% annual interest even if the court concludes Texas has the most significant relationship to this matter*

Which state has the most significant relationship to this matter is ultimately irrelevant. A unique conflict of laws rule applies regarding the enforceability of a contract's provision for

interest. There is no doubt that Louisiana has a substantial relationship to this matter and that Texas's interest rate cap of 18% at the relevant time was four percentage points lower than the 22% per annum rate called for under the Credit Agreement. (Doc. 53, App. 22, ¶ 1.) The Credit Agreement's provision for 22% interest is valid no matter which state's law applies. *Fahs v. Martin*, 224 F.2d 387, 397 (5th Cir. 1955) ("But with respect to the question of usury, it may be stated as a well-established rule that a provision in a contract for the payment of interest will be held valid in most states if it is permitted by the law of the place of contracting the place of performance, or any other place with which the contract has any substantial connection") (citation omitted); Restatement (Second) of Conflict of Laws § 203 (1971) ("The validity of a contract will be sustained against the charge of usury if it provides for a rate of interest that is permissible in a state to which the contract has a substantial relationship and is not greatly in excess of the rate permitted by the general usury law of the state of the otherwise applicable law under the rule of § 188").

A-Z and Ali cannot challenge the Credit Agreement's provision for 22% interest because they knew or could have calculated the amount of interest they owed to Harrison every step of the way and did not assert usury as an affirmative defense. *See Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 203 F. Supp. 3d 755, 759 (E.D. Tex. 2016), *amended in part*, No. 4:14-CV-00371, 2017 WL 1716589 (E.D. Tex. Apr. 27, 2017) (holding that affirmative defenses are generally waived if not raised in the first responsive pleading and are waived in other cases where prejudice would result to the plaintiff); *Miller v. University Sav. Assoc.*, 858 S.W.2d 33, 37 (Tex. App. 1993) (noting that usury is an affirmative defense and finding waiver where interest was ascertainable). A-Z and Ali did not assert usury as an affirmative defense and instead argued that they procured the over $2 million in goods from Imperial Trading Co., LLC pursuant to an oral

agreement. (*See generally* Doc. 141.) A-Z and Ali "do not dispute the validity of the Credit Agreement" (Doc. 153, 15) and waived any challenge to the validity of the Credit Agreement's interest provision.

**C.      Harrison is Entitled to Reasonable Attorneys' Fees Equal to 33% of the Total Amount Owed by A-Z and Ali.**

The Court found that both A-Z and Ali owe Harrison its attorneys' fees under the Credit Agreement and Guaranty. (Doc. 153, 19.) The Credit Agreement provides that "[t]he undersigned Purchaser agrees to pay, in the event the account becomes delinquent and is turned over to an attorney or agency for collection, a reasonable fee. In no event shall such reasonable fee be less than 33% of the balance due plus all attendant collection costs." (Doc. 53, App. 22, ¶ 5.) Louisiana law expressly allows this very type of agreement for attorneys' fees. La. Civ. Code Art. 2000 provides in relevant part that "If the parties, by written contract, have expressly agreed that the obligor shall also be liable for the obligee's attorney fees in a fixed or determinable amount, the obligee is entitled to that amount as well." La. Civ. Code Art. 2000 prevents a court from modifying the amount of attorneys' fees owed pursuant to a stipulated fee provision unless the amount of fees is "clearly excessive[.]" *Brandner v. New Orleans Off. Supply Ctr., Inc.*, 654 So. 2d 858, 862 (La. App. 4 Cir. 4/26/95), *writ denied*, 657 So. 2d 1039 (La. 6/30/95).

The "balance due" under the Credit Agreement includes the accrued and unpaid interest at the rate of 22%. *See Bank of St. Charles v. Fire Prot. Sys.*, Inc., 497 So. 2d 25, 25 (La. Ct. App. 1986) (awarding contractual attorneys' fees equal to 25% of the aggregate of the underlying loan and contractual interest where the contract obligated the borrower to pay fees on the amount the borrower owed); *Vignette Publications, Inc. v. Harborview Enterprises, Inc.*, 799 So. 2d 531, 538 (La. App. 4 Cir. 9/12/01) (the term "unpaid balance" in contract calling for attorneys' fees of 25%

of the "unpaid balance" included principal and interest). Interest must be added to the underlying

unpaid principal balance before calculating the 33% attorneys' fees award.

Courts are not to question a stipulated fee award unless the award is "clearly excessive."

G*ibson v. Burns*, 505 So. 2d 66, 68 (La. Ct. App. 1987). The *Gibson* Court held that:

> [R]eview of purportedly excessive attorney fees should be tempered with judicial
> restraint. The courts should not be in the business of setting fees. Article 2000
> authorizes a valid contract for attorney fees and the courts should not interfere with
> that contract unless there is a "clearly excessive fee" involved. . . . We interpret that
> term to mean so grossly out of proportion with the fees charged for similar services
> by other attorneys in the locale as to constitute an unquestionable abuse of the
> attorney's professional responsibilities to the public.

*Id.* The fee award of "33% of the balance due" (Doc. 53, App. 22, ¶ 5) is not clearly excessive and

there is no basis to question it. Courts have upheld similar stipulated fee agreements. *See* G*ibson*,

505 So. 2d at 68 (finding that stipulated fee provision of 25% of the amount recovered was not

"clearly excessive" where the stipulated fees amounted to $11,727 and the actual fees billed, based

on an hourly rate, amounted to $7,109.90); *see also Brandner v. New Orleans Off. Supply Ctr.,*

*Inc.*, 654 So. 2d at 863 (stipulated fee award based on percentage of amount recovered upheld even

without support as to the actual amount billed); *Equip. Sales & Serv. Co. v. Sec. Plumbing Inc.*,

666 So. 2d 1165, 1167 (La. App. 5 Cir. 12/13/95) (awarding attorneys' fees equal to 25% of the

indebtedness as called for by the guaranty agreement).

In *Gibson*, the stipulated fee provision led to an award roughly 65% higher than the total

amount billed. *See Gibson*, 505 So. 2d at 68.[7] The difference on a percentage basis between the

33% stipulated fee provision in the Credit Agreement and Guaranty and the total amount billed to

date in this matter is far less significant. The 33% stipulated fee provision would result in an award

roughly 27% higher than the total amount billed thus far by Harrison's attorneys ($998,743.37)

---

[7]     (11,727 / 7,109.90) / 100 = 64.94%

(*see* Mot. App. 7, Swanson ¶ 27) if calculated as of July 28, 2021, for instance. [8, 9] The stipulated fee award is not clearly excessive, especially considering the fact that Harrison's attorneys billed at a discounted rate. (Mot. App. 6, Swanson ¶ 19.) Harrison is entitled to an award of attorneys' fees equal to 33% of the sum of underlying monetary damages plus accrued and unpaid interest.

### 1.   The stipulated 33% fee award is not clearly excessive but the Court should view the invoiced amount of $998,743.37 as the minimum reasonable amount of fees if the Court determines adjustments are appropriate

The Court is to consider the reasonableness factors employed by Louisiana courts to determinable a reasonable amount of fees in the event the Court finds the 33% stipulated fee award to be "clearly excessive." *See Helena Chem. Co. v. Nichols*, 695 So. 2d 990, 994 (La. App. 22 Cir. 12/26/96) *as amended on reh'g,* 695 So. 2d 1000 (La. App. 22 Cir. 1/29/97). Louisiana courts consider of primary relevance when assessing the reasonableness of fees the "results obtained" by the party's attorneys as the courts agree with the United States Supreme Court that this is the most important factor. *Heymann*, 307 So. 3d at 288 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). Louisiana courts thus routinely award attorneys' fees far in excess of the underlying damages. *See, e.g., Heymann*, 307 So. 3d at 288 (awarding $50,675 in fees and $21,655 in monetary damages); *Camalo v. Courtois*, 280 So. 3d 956, 962 (La. App. 22 Cir. 10/2/19), *writ denied*, 291 So. 3d 682 (La. 1/14/20), and *writ denied*, 291 So. 3d 686 (La. 1/14/20) (awarding $108,250 in fees and $30,000 in monetary damages). Virtually all other reasonableness factors support a fee award of at least the $998,743.37 Harrison has been billed for this matter to date.

The Court granted Harrison's recent summary judgment motion, awarded Harrison $2,575,335.73 in underlying monetary damages, and held that Harrison was entitled to interest and

---

[8]      Accrued and unpaid interest as of July 28, 2021 was $1,269,746.35. *See* n. 2. 33% of the sum of $1,269,746.35 plus the underlying principal amount of $2,575,335.73 is $1,268,877.09.

[9]      (1,268,877.09 / 998,743.37) / 100 = 27.05%

fees under the Credit Agreement and Guaranty. (*See* Doc. 153.) Harrison is contractually entitled to pre-judgment interest from A-Z and Ali as A-Z and Ali purchased the over $2 million in goods pursuant to the Credit Agreement rather than some separate oral agreement. (Doc. 153, 14-19.) Harrison's attorneys also secured at least $1,269,746.35 in interest for Harrison from A-Z and Ali. (*Id.* at 19-20.) The Court should include this interest award when assessing the results Harrison's attorneys obtained in this matter. *See Heymann*, 307 So. 3d at 388.

Harrison's attorneys demonstrated their case so clearly that the Court found A-Z and Ali's position to be "farfetched" and unsupported by the evidence. (Doc. 153, pp. 9, 13-14.) Harrison's attorneys persisted and provided competent representation to Harrison in this case for over two years in order to achieve the foregoing results. Harrison's representation involved filing 5 pleadings and motions (excluding motions *in limine* and trial briefs) (Docs. 1, 25, 51, 79, 133), filing 8 response briefs and objections (Docs. 22, 60, 63, 69, 103, 139, 144, 145), issuing and answering written discovery (Mot. App. 3-4, Swanson ¶¶ 8, 13), and taking 2 depositions (*id.* at App. 170). Harrison's attorneys also prepared and filed a motion *in limine* (Doc. 92), proposed jury instructions and *voir dire* (Docs. 93, 94), a trial brief (Doc. 95), and numerous other trial submissions, such as exhibit lists and pre-trial disclosures (Docs. 108, 109, 120, 125). Harrison's attorneys further participated in mediation (Doc. 38) and attended a pre-trial conference (Doc. 130).

Harrison's attorneys have spent 2,173.25 hours on this matter to date, not including time cut and time spent prior to the drafting of the complaint. (Mot. App. 6, Swanson ¶ 23.) Harrison's attorneys are highly experienced attorneys whose skills command significant rates at a well-respected law firm. (*Id.* at App. 3-4, ¶¶ 9-10.) The undersigned, for instance, has over thirty-four years of experience. (*Id.* at App. 1, ¶ 2.) At the same time, the blended hourly rate billed by

Harrison's attorneys in this case was $457.26/hour. (*Id.* at App. 7, ¶ 25.) This is below the rate Harrison's attorneys typically charge. (*Id.* at App. 6, ¶19.) This rate is also in line with rates charged by similarly qualified attorneys in the Dallas area. (*Id.* at ¶ 9.)

A-Z and Ali cannot legitimately dispute these facts, and Harrison is entitled to attorneys' fees of at least $998,743.37, the amount Harrison has been billed for this matter to date (*Id.* at App. 7, ¶ 27), in the event the Court elects to adjust the amount of fees to which Harrison is contractually entitled pursuant to the Credit Agreement and Guaranty (Doc. 53, App. 22). Harrison "agreed to pay [its attorneys their] reasonable and necessary fees, costs, and expenses" in connection with their efforts to collect the balance A-Z and Ali owed Harrison. (Doc. 53, App. 4, Baquet ¶ 16.) The Court should consider the discounts Harrison's attorneys provided when undertaking this hypothetical analysis as those discounts indicate the truly reasonable amount of fees would be closer to the 33% contracted for in the Credit Agreement and Guaranty. (*Id.* at App. 6, ¶ 19.)

**D.      Harrison is Entitled to Recover All Attendant Collection Costs.**

Harrison is entitled to recover "all attendant collection costs" in addition to the award of 33% of the balance due pursuant to the Credit Agreement and Guaranty. (Doc. 53, App. 22, ¶ 5; *see also id.* at App. 22, Guaranty.) A party is typically entitled to only those costs specified in 28 U.S.C.A. § 1920 absent an agreement or statute to the contrary. *See Magnolia Fin. Grp., L.L.C. v. Antos*, No. CV 15-7144, 2018 WL 6920455, at *4 (E.D. La. Aug. 31, 2018), *report and recommendation adopted*, No. CV 15-7144, 2019 WL 77241 (E.D. La. Jan. 2, 2019). A-Z and Ali agreed to pay Harrison "*all* attendant collection costs[.]" (Doc. 53, App. 22, emphasis added.) This agreement is enforceable and A-Z and Ali are therefore obligated to pay Harrison *all* costs Harrison has incurred to collect the obligation A-Z and Ali owe Harrison. *See Magnolia Fin. Grp., L.L.C.*, 2018 WL 6920455, at *4 (awarding $23,688.95 for "all expenses incurred in collection" and interpreting that phrase to include "costs for nine deposition transcripts – including two trips to

14

Boca Raton, Florida to conclude depositions – document production costs, mailing and courier service, service costs on the out-of-state defendants, teleconference charges, and other routine charges incurred in three long years of litigation . . . .").

Harrison has a contractual right to recover *all* costs incurred in connection with this matter pursuant to the Credit Agreement and Guaranty. (Doc. 53, App. 22.) This right clearly encompasses those costs taxable pursuant to Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920. *See Magnolia Fin. Grp., L.L.C.*, 2018 WL 6920455, at *4. Harrison nonetheless elects to file a bill of costs seeking recovery of those taxable costs specified in the United States District Court for the Northern District of Texas's form AO 133, Bill of Costs ("Form AO 133") after the Court enters final judgment in this matter.

Harrison incurred $1,098.35 in costs that are not specifically identified in Form AO 133 in attempting to collect the balance A-Z and Ali owed to Harrison. (*See* Mot. App. 173-175, Swanson Ex. 6, itemizing the costs incurred in this matter.) All costs Harrison incurred in connection with its collection efforts were reasonably necessary. (Mot. App. 5, Swanson ¶ 14.) A-Z and Ali forced Harrison to litigate this matter for over two years and to start preparing for trial. (*Id*. at App. 6, ¶¶ 20, 22.) Harrison is entitled to recover its collection costs.

### E.      Harrison is Entitled to Post-Judgment Interest.

28 U.S.C. § 1961(a) provides that a party is entitled to post-judgment interest on a judgment and that "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." Harrison is entitled to post-judgment interest pursuant to 28 U.S.C. § 1961(a).

## <u>CONCLUSION AND PRAYER FOR RELIEF</u>

A-G and Ali agreed to pay 22% annual interest on amounts they owed and failed to pay. They further agreed to pay attorneys' fees equal to 33% of the balance A-Z owed under the Credit Agreement, which includes the 22% contractual interest, plus all attendant collection costs. Harrison therefore prays that the Court enter judgment awarding Harrison: (a) the underlying unpaid principal amount of $2,575,335.73; (b) pre-judgment interest in the amount of $1,269,746.35, plus a per diem of $1,552.26 up to and through the date of entry of a final judgment from and after July 29, 2021; (c) attorneys' fees equal to 33% of the sum of the underlying principal amount plus accrued and unpaid interest up to and through the date the Court enters final judgment; (d) costs in the amount of $1,098.35; (e) post-judgment interest in accordance with 28 U.S.C. § 1961(a); and (f) such other and further relief as the Court deems just and proper.[10]

Respectfully submitted,

*/s/ David L. Swanson*
David L. Swanson
  State Bar No. 19554525
  dswanson@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-6776
T: 214-740-8000
F: 214-740-8800

**ATTORNEYS FOR PLAINTIFF**
**HARRISON COMPANY, L.L.C.**

---

[10]      Harrison's Proposed Order is submitted herewith for the Court's consideration.

**CERTIFICATE OF CONFERENCE**

I, David L. Swanson, an attorney, hereby certify that on July 29, 2021, I spoke with counsel of record for the Defendants by telephone and was advised that this motion is opposed.

*/s/ David L. Swanson*
Counsel for Plaintiff


**CERTIFICATE OF SERVICE**

I certify that on July 29, 2021, I filed this document using the Court's Electronic Case Filing ("ECF") system, which will automatically deliver a notice of electronic filing to Defendants' counsel of record, who are registered ECF users.  Delivery of such notice of electronic filing constitutes service of this document as contemplated by Rule 5 of the Federal Rules of Civil Procedure.  See LR 5.1.

*/s/ David L. Swanson*
Counsel for Plaintiff

17