UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS – DALLAS DIVISION

| | | |
|---|---|---|
| HARRISON COMPANY LLC,<br>  *Plaintiff,* | §<br>§<br>§<br>§ | |
| *v.* | § | Civil Action No. 3:19-CV-1057-B |
| | § | |
| A-Z WHOLESALERS, INC. and<br>BARKAT G. ALI,<br>  *Defendants.* | §<br>§<br>§ | |

### DEFENDANT'S RESPONSE IN OPPOSING PLAINTIFF'S MOTION FOR AWARD OF INTEREST, ATTORNEYS' FEES, AND COSTS AND BRIEF IN SUPPORT

COME NOW A-Z Wholesalers, Inc. and Barkat G. Ali ("Defendants") to file this response to Harrison Company LLC's ("Plaintiff"" or "Harrison") *Motion for Award of Interest, Attorneys' Fees, and Costs and Brief in Support* ("Motion"), filed July 29, 2021.

**Summarizing -** On July 8, 2021, this Court issued its Memorandum Opinion and Order granting Harrison's Second Motion for Summary Judgment (Doc. 136). This Court then ordered Harrison to file supplemental documentation demonstrating the amount of attorney fees and interest that Harrison seeks, as well as its basis for calculating its request (Doc. 154). Harrison has filed his documentation, seeking fees based on a contingent contract term and a high-level summary of tasks. Defendants herein respond to Plaintiff's documentation and argue that the fee request should be denied for: 1) lack of reasonableness; 2) insufficient detail in the fee and task listing.

Plaintiff's requested for 22% interest should be denied as contrary to the promissory note upon which the invoices sued were based, which limited interest to 7%. That same note prohibited attorney fees outright. This Court should respect the contractual obligations of A-Z Wholesalers as accepted by Imperial.

# I. ATTORNEY FEES

1. The attorney fees provision in the Credit Agreement and Guaranty ("Agreement") (Doc. 153, 19) of 33% of the total amount allegedly owed by A-Z and Ali is excessive and unreasonable under both Texas and Louisiana law in light of the work actually performed by Harrison's counsel, and such an amount should therefore not be awarded by this Court.

### A. Legal Standard.

#### i. *Louisiana Law*.

2. "According to the Louisiana State Bar Rules of Professional Conduct, Rule 1.5, 'A lawyer's fee shall be reasonable,' the amount to be determined by numerous factors set forth in the rule: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent. *Warner v. Carimi Law Firm*, 678 So. 2d 561, 565-66 (5th Cir. 1996).

3. "The prohibition against unreasonable attorney's fees cannot be abrogated by contractual provisions fixing attorney fees as a percentage of the amount to be collected." *Id*. at 566 (citing *Central Progressive Bank v. Bradley*, 502 So. 2d 1017 (La. 1987)). Rather, courts may, when called upon, examine the record and ascertain whether attorney fees are excessive and unreasonable even when there exists a contractual stipulation fixing fees at a percentage of

amount to be collected. *Id*. (citing *Sunbelt Federal Bank, F.S.B. v. Catha,* 517 So. 2d 385, 386 (La.App. 5th Cir. 1987)).

4. "Although La. Civ. Code Ann. Art. 2000 provides that an obligor shall be liable for attorney's fees as stipulated in a written contract, the Louisiana Supreme Court has held this article to be unenforceable where such fees are excessive and unreasonable." *Desselle v. Moreauville State Bank*, 553 So. 2d 1067 (La. App. 3d Cir. 1989).

  ii.  **Texas Law.**

5. As Harrison states on page six of its Motion, Texas courts determine attorney fees by "determining the reasonable hours worked multiplied by a reasonable hourly rate . . . ." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 497 (Tex. 2019).

6. Under *Rohrmoos*, "a claimant seeking an award of attorney's fees must prove the attorney's reasonable hours worked and reasonable rate by presenting sufficient evidence to support the fee award sought. Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed (4) **the reasonable amount of time required to perform the services,** and (5) the reasonable hourly rate for each person performing such devices." *Id*. at 501-502.

7. General, conclusory testimony devoid of real substance will not support a fee award. *Id*.

8. While contemporaneous billing records are not required to prove that requested fees are reasonable and necessary, billing records are strongly encouraged to prove the reasonableness and necessity of requested fees when those elements are contested. *Id*. at 502.

 **B. Harrison waived any claim for attorney fees.**

9. Section 38.002(2) of the Texas Civil Practices and Remedies Code, any request for payment of a claim requires presentment of such claims to the opposing party. "The purpose of

presentment is to allow the opposing party a reasonable opportunity to pay a claim without incurring an obligation for attorney's fees." *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2006).

10. Harrison never satisfied this presentment requirement and therefore has waived any right to claim such interest and fees at this time.

11. The only demand for payment in the instant matter was not made by Harrison, but by Imperial Trading Co., LLC ("Imperial") on March 18, 2019. This claim led to a suit in state court. *See* Imperial Trading's Verified Petition filed in State Court. (Exhibit 1, pages 39-41.)

12. Additionally, a Promissory Note between A-Z Wholesalers, Inc. and Imperial in the amount of $250,000.00 that was entered into on January 11, 2019 states that no fees would be applicable and any interest on the principal amount of the note would incur 7% interest rate on the $250,000 despite the fact that Imperial wanted a 21% interest rate. (Exh. 1, pp. 23-27).

13. Regardless, this presentment was insufficient, as Imperial makes a demand for payment referencing a Credit Agreement that never existed between Imperial and A-Z Wholesalers, Inc. Moreover, such demand does not state that 33% in attorney's fees will be sought.

14. All parties agree that the Promissory Note between A-Z Wholesalers,Inc and Imperial resulted in credit provided to A-Z Wholesalers. Invoices sued on are based on this note; to complete this argument, the invoices that are the basis of this suit range from October 2018 to March 2019; the credit extended was based on the terms of above-described note.

15. Defendants should not be required to pay attorney's fees requested by Harrison based on an agreement never made when an agreement accepted and upon which this suit is based includes contractual terms that no attorney fees would be awarded and interest of 7% was negotiated between A-Z Wholesalers and Imperial.

### C. Harrison's requested fees and interest are facially unreasonable.

16. Additionally, the gross profit that A-Z Wholesalers, Inc. ("A-Z") realized from the resale of the products in question amounted to only $51,507.00. Harrison now makes a demand for fees and interest in the amount of $2,575,335.73—a total $1,783,943.95 greater than the total gross profit realized by A-Z. This amount is 35 times greater than A-Z's gross profit and as such is per se unreasonable.

### D. Harrison has no claim to attorney fees and costs.

17. The underlying Written Agreement are all invoices and shipping manifest/bill of lading from Imperial, not the Harrison Credit Agreement and Guaranty. All the invoices made the subject of this lawsuit are from Imperial, not Harrison. Harrison is suing on invoices due to Imperial. The Imperial invoices and shipping manifest/bill of lading are the written agreements that control and as such, according to the shipping manifest from Imperial for invoices that are being sued on in this case by Harrison states, "I acknowledge receipt of the product(s) listed on the above referenced invoice(s) and by signing this document agree that the company and/or person listed below is financially responsible for paying the amount of the invoice(s) and all cost and attorney fees associated with any collection efforts, **to Imperial Trading Co., Inc.** [emphasis added] (see Harrison Bates Labeled 689-727, among others)." See Exhibit 2.

18. According to the written agreement, the Imperial invoices and shipping manifest/bill of lading, any cost and attorney's fees would be due to Imperial, not Plaintiff Harrison. Plaintiff can show no agreement regarding attorney's fees explicitly stated or agreed to by the parties, therefore the court cannot award 33% as requested by Plaintiff Harrison. Also, no interest is noted in the written agreement (invoices and shipping manifest/bill of lading). Any agreement regarding fees would have to be oral, if anything.

19. As the Court has been told, Imperial attempted and offered to enter into a Credit Agreement and Guaranty with A-Z Wholesalers, Inc. on August 28, 2018; A-Z Wholesalers rejected the offer and did not sign the Credit Agreement and Personal Guaranty with Imperial. Imperial's attempt to enter into a new written Credit Agreement and Guaranty with A-Z Wholesalers, Inc. demonstrates that Imperial believed it needed to have a new Credit Agreement and Guaranty for any claims for interest, attorney's fees or a personal guaranty that would govern the relationship moving forward. Notably, the credit application from Imperial contains several conflicts including stating a 0% interest rate in some parts and 21% interest rate in other parts and 18% attorney's fees, not the 33% being sought by Plaintiff Harrison for the Imperial invoices made subject to this lawsuit. (Testimony on this matter is in the record under the Deposition of Amar B. Ali, AZ-278-400 and his declaration at A-Z 198.)

### E. Harrison's requested fees are not reasonable compared to those customarily charged under either Texas or Louisiana law.

#### i. Breaking down Harrison's attorneys' 2,173.25 hours of billing.

20. In determining if attorney fees are reasonable and non-excessive, both Texas and Louisiana analyze whether those fees are comparable to those charged by other attorneys within the same locality providing similar services.

21. Harrison spends a significant amount of effort in its Motion focusing entirely on elements related to its securing a favorable outcome in court, and conveniently avoids discussing the fact that its fees are multiples higher than even the most highfalutin Dallas law firms.

22. While this is a commendable strategy, Defendants feel obligated to discuss the factors Harrison forgot about, or at least failed to mention.

23. Here, Harrison asserts that its attorneys have spent a total of **2,173.25 hours** on the present case as of July 27, 2021. Harrison offers no substantive support for this assertion, failing

to provide any contemporaneous billing records to support its position that its attorney fees are not excessive. Defendants believe that Harrison's lack of support for its alleged attorney fees warrants dismissal of such fees, but in case this Court disagrees, Defendants offer a break-down of Harrison's attorneys' purported billing practices.

24.     All Harrison offers in support is a conclusory list of work its attorneys performed on page 13 of its Motion. This list includes the following:

      a)      five pleadings and motions (Docs. 1, 25, 51, 79, 133);
      b)      eight response briefs and objections (Docs. 22, 60, 63, 69, 103, 139, 144, 145);
      c)      written discovery (Mot. App. 3-4);
      d)      two depositions (Mot. App. 170);
      e)      one motion *in limine* (Doc. 92);
      f)      proposed jury instructions and *voir dire* (Docs. 93, 94);
      g)      one trial brief (Doc. 95);
      h)      exhibit lists and pre-trial disclosures (Docs. 108, 109, 120, 125); and
      i)      mediation (Doc. 38).

25.     Each of these tasks Harrison alleges it performed adds up to a **total of 25 tasks**.

26.     If Harrison's assertion that its attorneys spent 2,173.25 hours completing these tasks is accurate, then Harrison's attorneys spent an astounding **86.93 hours per task on average**.

27.     As shown in the attached Declaration of Warren Norred, the average Dallas-area attorney does not take 86.93 hours to perform any of the above tasks.

28.     One finds it difficult to imagine where exactly the 86.93 hours spent on Harrison's 10-page complaint (Doc. 1) or the combined 173.86 hours spent on a whopping two depositions (Mot. App. 170) ended up going.

29.     Regardless, Harrison's attorney's generous billing practices lead to its patently absurd claim of $998,743.37 hours allegedly billed. As these figures are insufficiently substantiated and not remotely reflective of the standard practices of similar attorneys in the same locale, Defendants ask that this Court deny Harrison's request for fees.

   *ii.*  *Harrisons request for $1,268,877.09.*

30. Harrison attempts to use its alleged 2,173.25 hours to justify the reasonableness of a jump to the 33% figure stipulated in the Agreement—an increase 27% for a total of $1,268,877.09 in attorney fees.

31. But if the previous figure of $998,743.37 is grossly excessive and unreasonable, then fees amounting to 27% *more* than $998,743.37 must also be excessive and unreasonable—and according to *Central Progressive Bank v. Bradley*, the fact that a contractual stipulation fixing the fees at a certain percentage exists does not preclude the court from making such a finding of unreasonableness. *Bradley*, 502 So. 2d at 1017.

32. For this reason, the Court should deny Harrison's Motion.

## II. PRE-JUDGMENT INTEREST

### A. Texas law should govern pre-judgment interest rates.

33. Next, Harrison claims on page 9 of its Motion that this court should look to Louisiana law to determine the interest rate applicable to Harrison's award of pre-judgment.

34. Harrison attempts to support this claim using the "most significant relationship" approach to choice of law, stating that Louisiana has the most significant relationship to this dispute because Harrison is a Louisiana entity and the Agreement contained a clause requiring consent to personal jurisdiction and venue in Louisiana.

35. But this is an incorrect application of the most significant relationship test, as "the more significant relationship test for choice of law considers: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicil, residence, nationality, place of incorporation, and place of

business of the parties. Courts weigh these factors not by their number, but by their quality." *3D/Int'l, Inc. v. Romano*, 811 F. App'x 244 (5th Cir. 2020).

36. Additionally, "the place of contracting for the choice of law most significant relationship test is the place where occurred the last act necessary to give the contract binding effect." *Id*.

37. Here, the parties negotiated and contracted in Dallas, Texas, the contract was performed in Dallas, Texas, the subject matter of the contract was located in Dallas, Texas, and Defendants Barkat Ali and A-Z Wholesalers, Inc. are domiciled and incorporated in Texas, respectively.

38. As such, despite the fact that the Agreement had a venue provision for Louisiana and Harrison is a Louisiana entity, at least four out of the five factors used to determine which state has the more significant relationship favor Texas over Louisiana. Therefore, Texas law regarding interest rates should apply.

39. Because Texas law should govern pre-judgment interest rates in this case, if this Court finds that any pre-judgment interest rate is applicable to Defendants' alleged debt, it should deny Harrison's request to apply the Agreement's 22% interest rate.

40. In an effort to secure the 22% interest rate despite Texas clearly having the more significant relationship to the parties than Louisiana, Harrison cites to *Fahs v. Martin*, 224 F.2d 387, 397 (5th Cir. 1955) and the Restatement (Second) of Conflict of Laws § 203 (1971), both of which state that a provision of a contract will be held valid as long as a state with which the contract had a substantial connection considered the interest rate non-usurious.

41. But Harrison has not established that the Agreement ever had a substantial connection to Louisiana, and as Defendants have provided, Texas is the state with which the parties and the Agreement have the most substantial relationship. (No one disputes that substantial performance of the contract occurred in Texas. The contract was formed in Texas, and orders were sent from

Texas, sold in Texas to A-Z, received in Texas by A-Z and the inventory stayed in Texas.) As such, this Court should not accept Harrison's conclusory assertion that Louisiana definitively has a substantial connection to the Agreement, and instead should recognize that Texas law should govern any applicable interest rates in the present case.

42.    The Declaration of Warren V. Norred follows and incorporated herein, includes further argument that the fees sought in this case are not reasonable, as the amount sought far exceeds any reasonable amount that any litigant would pay for the tasks listed by Plaintiff.

                    Respectfully submitted,

                    NORRED LAW, PLLC
                    By: /s/Warren V. Norred
                    Warren V. Norred, Texas Bar Number 24045094
                    515 E Border Street, Arlington, Texas 76010
                    P. 817.704.3984 F. 817.524.6686

**CERTIFICATE OF SERVICE** – This is to certify that on August 19, 2021, the foregoing document was served on all counsel of record and parties, through the Court's e-file system.
                    By: /s/Warren V. Norred
                    Warren V. Norred

Exhibit 1: Imperial Trading's Verified Petition filed in State Court

Exhibit 2: Manifests

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS – DALLAS DIVISION

| | | |
|---|---|---|
| HARRISON COMPANY LLC, § | | |
|   *Plaintiff*, § | | |
| § | | |
| *v.* § | | Civil Action No. 3:19-CV-1057-B |
| § | | |
| A-Z WHOLESALERS, INC. and § | | |
| BARKAT G. ALI, § | | |
|   *Defendants*. § | | |

## Declaration of Warren V. Norred

My name is Warren V. Norred, my date of birth is February 21, 1963, and my office address is 515 E. Border Street, Arlington, TX 76010, U.S. I declare under penalty of perjury that the foregoing statement is true and correct.

Executed in Tarrant County, State of Texas on August 19, 2021.


Warren V. Norred

1. I am an attorney and name partner at Norred Law PLLC, and I am licensed to practice law in Texas.

2. I have been practicing law in the DFW area for over a decade and I am familiar with reasonable pricing for legal services in the State of Texas.

3. I have previously testified regarding reasonable attorneys fees in Texas in multiple courts and I have litigated in every federal court in Texas, as well as every attached bankruptcy court.

4. I have also litigated in federal courts in California and Kansas and in the Fifth and Ninth Court's of Appeal.

5. I have tried to verdict more than a dozen trials, the longest of which lasted ten days, including jury deliberations. My most complex single federal case was a two-day patent case. Beyond jury trials, I have completed several dozen cases to Judgment involving fees.

6. In August of 2021, I was retained by A-Z Wholesalers and Barkat G. Ali to represent them in a suit against Harrison Company LLC.

7. As part of my representation, I have filed Defendant's Response Opposing Plaintiff's Motion for Award of Interest, Attorney's Fees, and Costs and Brief In Support.

8. The subject suit under consideration is a mundane contract dispute, heard before a federal court due to diversity. The main issue of import to the litigants is whether a personal guarantee survived a shift of purchase orders from a first business to a second business which owned the first business.

9. I am aware that the Credit Agreement and Guaranty (Doc. 153, 19) stipulates that 33% of the total amount allegedly owed by A-Z and Ali is excessive and unreasonable under the law of Texas given the work known to have been performed by Harrison's counsel on its behalf.

10. I am aware that Harrison has failed to tender to the court a detailed breakdown of its time spent and billing notes in this matter.

11. I am aware that Harrison's assertion that it spent 2,173.25 hours on this case to complete 25 tasks breaks down to an average of 86.93 hours per task.

12. I am not aware of any task in this case that should require 86.9 hours to execute, let alone all 25 listed tasks. There exists nothing in this list that should have taken more than eight hours, and that is twice what I could have charged for most of these items.

13. In some, nothing in this run-of-the-mill contract dispute warrants the exceptional investment of time by opposing counsel.

14. The only reasonable explanation that can account for opposing counsel known billable hours is an effort to unreasonably inflate the cost of litigation to the benefit of the attorneys and to the detriment of all clients involved.