UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HARRISON COMPANY, L.L.C., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-1057-B |
| | § | |
| A-Z WHOLESALERS, INC. and | § | |
| BARKAT G. ALI, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Harrison Company, L.L.C. ("Harrison")'s Renewed Motion for Award of Interest and Attorneys' Fees (Doc. 174). Because Harrison is entitled to interest and attorneys' fees but not the total amount requested, the Court **GRANTS in part and DENIES in part** the Renewed Motion.

## I.

## BACKGROUND

On May 2, 2019, Harrison filed this breach-of-contract and breach-of-guaranty action against Defendant A-Z Wholesalers, Inc. ("A-Z") and A-Z's president and CEO, Defendant Barkat Ali. Doc. 1, Compl. Harrison is a regional food distributor that fills orders and distributes products to its customers from its warehouse in Bossier City, Louisiana. Doc. 135, Pl.'s App., 2. A-Z is a wholesale distributor that sells various food products, beverages, tobacco products, and other items, primarily to convenience store operators. Doc. 138, Defs.' App., 246.

In March 2011, Harrison executed a credit agreement (the "Credit Agreement") with A-Z to supply A-Z with various products. Doc. 135, Pl.'s App., 22. At the same time, the parties

executed a separate guaranty (the "Guaranty"). *Id.*; Doc. 138, Defs.' App., 24. The Guaranty obligated A-Z to pay "any interest on all past due sums at the rate of 22 percent per annum." Doc. 138, Defs.' App., 24. Regarding attorneys' fees, it provided, "[A-Z] agrees to pay, in the event the account becomes delinquent and is turned over to an attorney or agency for collection, a reasonable fee. In no event shall such reasonable fee be less than 33⅓% of the balance due plus all attendant collection costs." *Id.* Ali similarly agreed to pay a reasonable fee of no "less than 33⅓% of the balance due plus all attendant collection costs" if the account became delinquent. *Id.* And Ali agreed to "pay [Harrison] on demand any sum which may become due to [Harrison] by [A-Z] whenever [A-Z] shall fail to pay the same." *Id.* After the parties executed the Credit Agreement and Guaranty, Harrison began selling A-Z cigarettes and other products. Doc. 135, Pl.'s App., 22. However, at some point thereafter, A-Z failed to make payments for the goods that it was receiving. *See* Doc. 53, Pl.'s App., 16–17.

On May 2, 2019, Harrison sued A-Z and Ali to collect this unpaid balance. Doc. 1, Compl. On July 8, 2021, the Court entered summary judgment in favor of Harrison, awarding Harrison damages totaling $2,575,335.73 plus reasonable attorneys' fees and interest to be determined later. Doc. 153, Mem. Op. & Order, 21. Shortly thereafter, Harrison filed a Motion for Award of Interest, Attorneys' Fees, and Costs (the "Original Motion"). Doc. 154, Orig. Mot. However, before the Court ruled on that motion, Defendants filed a notice of appeal. Doc. 169, Notice Appeal. In light of the appeal, the Court denied the Original Motion without prejudice pending the outcome of the appeal. Doc. 171, Order. The Fifth Circuit affirmed the Court's summary judgment order, *Harrison Co. v. A-Z Wholesalers, Inc.*, 44 F.4th 342 (5th Cir. 2022), and entered judgment on September 2, 2022, Doc. 173, J.

On November 15, 2022, Harrison filed a Renewed Motion for Award of Interest and Attorneys' Fees (the "Renewed Motion") and incorporated the Original Motion by reference under Federal Rule of Civil Procedure 10(c). Doc. 174, Renewed Mot., 2. Harrison argues Louisiana law governs the prejudgment interest and attorneys' fees awards. *Id.* at 3; Doc. 154, Orig. Mot., 5–7. In the Renewed Motion, Harrison requests

> (a) $1,333,388.89 in pre-judgment interest[;] (b) $1,289,879.12 (or, alternatively $998,743.37 if the Court determines that Texas law is applicable) in reasonable attorneys' fees for work Harrison's attorneys performed in this Court; (c) $78,065 in reasonable attorneys' fees for work Harrison's attorneys performed defending against Defendants' appeal; (d) post-judgment interest on the amount the Court awarded in its September 7, 2021 Final Judgment in accordance with 28 U.S.C. § 1961(a); (e) post-judgment interest on the amount the Court awards in response to Harrison's Renewed Motion in accordance with 28 U.S.C. § 1961(a).

Doc. 174, Renewed Mot., 5–6. Defendants respond that they do not owe prejudgment interest, or, if they do, the interest rate should not exceed 7%. *See* Doc. 179, Renewed Mot. Resp., 1–3. They also argue that Harrison's requested attorneys' fees should be denied because Harrison has not shown the fees are reasonable. *See id.* at 3–6. The Court considers the Renewed Motion below.

## II.

## ANALYSIS

In its Motion, Harrison requests five awards: (1) prejudgment interest on the principal balance; (2) trial attorneys' fees; (3) post-judgment interest on the principal balance, trial attorneys' fees, and prejudgment interest; (4) appellate attorneys' fees; and (5) post-judgment interest on the awarded appellate attorneys' fees. Doc. 174, Renewed Mot., 5–6. As outlined below, the Court awards Harrison its requested prejudgment interest and trial attorneys' fees but

reduces its appellate fee award. The Court also awards post-judgment interest on these awards and the outstanding principal balance.

The Court begins with prejudgment interest. At summary judgment, the Court awarded prejudgment interest but did not decide the amount or the governing law. Harrison argues Louisiana law applies, and Defendants do not dispute its application. The parties' Guaranty provides for prejudgment interest at a rate of 22%. Under Louisiana law, this rate is enforceable. The Court therefore awards Harrison prejudgment interest on the principal balance at a rate of 22% per annum, for a total of $1,333,388.89 in prejudgment interest.[1]

Similarly, the Court awarded attorneys' fees at summary judgment but did not determine the amount or governing law. Harrison again argues Louisiana law applies, and Defendants again do not brief the issue. The Guaranty specifies a 33 1/3% rate for attorneys' fees. Harrison requests a fee award equal to 33% of the unpaid principal balance and prejudgment interest award. This rate is enforceable under Louisiana law because it is not clearly excessive. The Court therefore awards Harrison $1,289,879.12 in trial attorneys' fees.[2] On the principal balance, trial attorneys' fees, and prejudgment interest awards, the Court awards post-judgment interest from September 7, 2021, at the federal interest rate of 0.07% per annum.

The Court also awards Harrison appellate attorneys' fees and post-judgment interest on that award. To determine appellate attorneys' fees, the Court applies the Texas lodestar. The Court reduces the requested rate and hours and awards Harrison $60,637.50 in appellate

---

[1] This amount reflects 22% interest on the outstanding principal balance of $2,575,335.73 over a period of 859 days, from May 2, 2019, the date Harrison filed this action, through September 7, 2021, the date the Court entered its final judgment. Doc. 174, Renewed Mot., 3.

[2] This amount reflects 33% of the outstanding principal balance of $2,575,335.73 and the requested prejudgment interest award of $1,333,388.89. *See* Doc. 174, Renewed Mot., 3.

attorneys' fees. And finally, the Court awards Harrison post-judgment interest on the appellate fee award, from the date of this judgment, at the federal interest rate of 5.36% per annum.

A.      *Prejudgment Interest on the Principal Balance*

At summary judgment, the Court held Harrison is entitled to prejudgment interest from Defendants. Doc. 153, Mem. Op. & Order, 19–20. The Court did not decide the amount of interest or what state's law governs the issue. *See id.* Harrison argues Louisiana law applies and requests prejudgment interest at a rate of 22% per annum, as provided in the Guaranty. *See* Doc. 154, Orig. Mot., 5; Doc. 174, Renewed Mot., 3. In their Renewed Motion Response, Defendants do not dispute that Louisiana law governs. *See* Doc. 179, Renewed Mot. Resp., 1–3. Instead, they argue that, under either Texas or Louisiana law, they do not owe prejudgment interest, or, if they do, the interest rate should not exceed 7%. *See id.* Because Defendants do not dispute that Louisiana law applies, the Court applies Louisiana law on the issue of prejudgment interest. *See Friou v. Phillips Petrol. Co.*, 948 F.2d 972, 974 (5th Cir. 1991) ("A party who inadequately briefs an issue is considered to have abandoned the claim."); *Harrison Co.*, 44 F.4th at 346 n.1 (5th Cir. 2022) ("A-Z and Ali claim Texas law applies. Harrison claims there is no 'substantive difference between Texas and Louisiana law' for its claims and so does not dispute applying Texas law. We thus apply Texas law.").[3]

---

[3] In their Original Motion Response, Defendants argue Texas law applies. Doc. 162, Orig. Mot. Resp., ¶¶ 33–42. But Defendants do not incorporate their Original Motion Response or otherwise renew this argument in their Renewed Motion Response. *See* Doc. 179, Renewed Mot. Resp. This omission does not affect the outcome of the Renewed Motion, because the argument would be unavailing. Neither the Credit Agreement nor the Guaranty contains a choice of law clause, so the Court would determine the state with the "most significant relationship to the transaction and the parties" and apply that state's law. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 678 (Tex. 1990). To determine the state with the "most significant relationship" to a contract dispute, courts look to sections 6 and 188 of the *Restatement (Second) of Conflict of Laws* (1971). *Sonat Expl. Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 233 (Tex. 2008). The most important conflict-of-laws principle in contractual disputes is protection of the justified expectation of the parties that their contract will be enforced according to its terms. *Id.* at 234–

"State law governs the award of prejudgment interest in diversity cases." *Harris v. Mickel*, 15 F.3d 428, 429 (5th Cir. 1994). Under Louisiana law, "[w]hen the object of the performance [of a contract] is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties." La. Civ. Code Ann. art. 2000. Thus, although conventional interest rates are capped at 12% per annum, *see* La. Stat. Ann. § 9:3500(C)(1), courts applying Louisiana law have enforced prejudgment interest at higher rates when the parties' contract so provides, *see, e.g.*, *H-S Int'l, Inc. v. ABO Ventures, Inc.*, 2016 WL 614698, at *4 (E.D. La. Feb. 16, 2016) (awarding prejudgment interest at the contractual rate of 18%); *Emergency Staffing Sols., Inc. v. Morehouse Par. Hosp. Serv. Dist. No. 1*, 2011 WL 1337371, at *4 (W.D. La. Apr. 7, 2011) (same). Therefore, under Louisiana law, Harrison is entitled to 22% prejudgment interest under the Credit Agreement.

Under Louisiana law, courts may award prejudgment interest in a breach-of-contract case, "run[ning] from the date of judicial demand," *see Trans-Glob. Alloy Ltd. v. First Nat. Bank of Jefferson Par.*, 583 So.2d 443, 457 (La. 1991),[4] through the date of judgment, *see, e.g.*, *Danna v.*

---

35. So when one state's law would invalidate a contractual term and another would enforce it, courts will not "apply[] a state law that would invalidate the contract, at least not unless those expectations are substantially outweighed by the interests of the state with the invalidating rule." *Id.* at 235. This is especially true in contracts between "sophisticated parties." *See id.* at 236. Here, Texas does not have interests that substantially outweigh the parties' expectations that the Agreement will be enforced according to its terms. So Louisiana has the must substantial relationship on the question of prejudgment interest, and the Court would therefore apply Louisiana law.

[4] Where, as here, "the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties." La. Civ. Code Ann. art. 2000; *accord St. Paul's Evangelical Lutheran Church v. Quick Response Restoration, Inc.*, 381 F. App'x 408, 412 (5th Cir. 2010) (per curiam) ("[A] debt or claim for the payment of money or damages under a contract is ascertainable and becomes due on the date an active violation occurred or the obligor was put in default, which can be earlier but never later than judicial demand, and legal interest runs from that date.") (quoting *Mini Togs Prod., Inc. v. Wallace*, 513 So. 2d 867, 873 (La. App. 2 Cir. 1987)). However, Harrison only requests prejudgment interest from the date of judicial demand, so the Court calculates damages for delay in performance from that date.

*Ritz-Carlton Hotel Co.*, 2020-0116, p. 9 (La. App. 4 Cir. 3/24/21). So Harrison is entitled to 22% interest on the outstanding principal balance, as provided in the Credit Agreement and Guaranty. La. Civ. Code Ann. art. 2000. In total, Harrison is entitled to $1,333,388.89 in prejudgment interest, reflecting 22% interest on the outstanding principal balance of $2,575,335.73 over a period of 859 days, from May 2, 2019, the date Harrison filed this action, through September 7, 2021, the date the Court entered its final judgment.

B.      *Trial Attorneys' Fees*

In its Renewed Motion, Harrison again seeks attorneys' fees for the proceedings before this Court. Doc. 174, Renewed Mot., 2. Arguing Louisiana law governs the issue, Harrison requests $1,289,879.12 in attorneys' fees. *Id.* at 3; Doc. 154, Orig. Mot., 6–7, 10–14. This amount reflects a 33% fee on the outstanding principal balance of $2,575,335.73 and the prejudgment interest award of $1,333,388.89. Doc. 174, Renewed Mot., 3. In their Renewed Motion Response, Defendants do not address the choice-of-law question and do not contest the requested trial attorneys' fees. *See* Doc. 179, Renewed Mot. Resp. (opposing only prejudgment interest and appellate attorneys' fees).

An award of attorneys' fees "is governed by the same law that serves as the rule of decision for the substantive issues in the case." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). The Court awarded Harrison attorneys' fees at summary judgment but did not decide the amount or whether Texas or Louisiana law governed the issue. Doc. 153, Mem. Op. & Order, 19–20. Because Defendants do not dispute that Louisiana law applies, the Court applies Louisiana law. *See Friou*, 948 F.2d at 974; *Harrison Co.*, 44 F.4th at 346 n.1.

In Louisiana, attorneys' fees are recoverable when authorized by statute or contract. *See Steptore v. Masco Const. Co.*, 93-2064, p. 8 (La. 8/18/94), 643 So.2d 1213, 1218. Here, attorneys'

fees are provided for by contract. The Guaranty obligated A-Z and Ali to pay a reasonable fee of no "less than 33⅓% of the balance due plus all attendant collection costs" if A-Z's account became delinquent. Doc. 138, Defs.' App., 24.

In Louisiana, courts are statutorily required to give deference to contractual attorneys' fee awards. *See* La. Civ. Code. Ann. art. 2000 ("If the parties, by written contract, have expressly agreed that the obligor shall also be liable for the obligee's attorney fees in a fixed or determinable amount, the oblige is entitled to that amount as well."). But where such awards are "excessive and unreasonable," the Louisiana Supreme Court prohibits their enforcement. *Central Progressive Bank v. Bradley*, 502 So. 2d 1017, 1017 (La. 1987) (per curiam). Thus, a court applying Louisiana law must review and control attorneys' fees, even when the fee amount is contractually provided. *See id.*; *Nat'l Info. Servs., Inc. v. Gottsegen*, 98-528, p. 15 (La. App. 5 Cir. 6/1/99), 737 So.2d 909, 919. However, where fees are contractually provided, this "review of purportedly excessive attorney fees should be tempered with judicial restraint. The courts should not be in the business of setting fees. Article 2000 authorizes a valid contract for attorney fees and the courts should not interfere with that contract unless there is a 'clearly excessive fee' involved." *Gibson v. Burns*, 505 So.2d 66, 69 (La. App. 4 Cir. 1987).

Under Louisiana law, a fee is clearly excessive if it is "so grossly out of proportion with the fees charged for similar services by other attorneys in the locale as to constitute an unquestionable abuse of the attorney's professional responsibilities to the public." *Nat'l Info. Servs.*, 98-528, p. 16, 737 So.2d at 920. "The actual time expended and the complexity of the case are the dominant factors in a court's determination of reasonableness or excessiveness." *Id.* Another important consideration is the result obtained. *See Grand Pointe Homeowners Ass'n v. Heymann*, 2020-36, p. 8 (La. App. 3 Cir. 11/12/20), 307 So.3d 285, 290. Courts may also compare

the contractual amount to the actual fee amount. *See, e.g.*, *Traffic Scan Network, Inc. v. Winston*, 98-2428, p. 5 (La. App. 4 Cir. 7/21/99), 766 So.2d 557, 560.

The Court cannot conclude the requested fee "constitutes an unquestionable abuse of [Harrison's counsel's] professional responsibilities to the public." *See Nat'l Info. Servs.*, 98-528, p. 16, 737 So.2d at 920. Defendants do not argue that the requested fee is clearly excessive. *See* Doc. 179, Renewed Mot. Resp. And Harrison won a complete victory, both at the trial level and on appeal. While the case was a breach-of-contract and breach-of-guaranty action, the litigation was contentious and time consuming. It involved two cross-motions for summary judgment. And while the requested fee award of $1,268,877.09 would produce a blended hourly rate of $583 per hour, courts in Dallas have found higher fees reasonable when they are unopposed. *See, e.g.*, *Hill v. Schilling*, 2022 WL 1321548, at *6 (N.D. Tex. May 3, 2022) (Lindsay, J.). And Louisiana courts have found contractual fee awards that exceeded an attorneys' actual fees by over 50% were not clearly excessive. *See, e.g.*, *Gibson*, 505 So.2d at 69 (reversing the trial court's award of $7,109.90, which was calculated from the attorney's actual hours and rates, and enforcing the contractual fee award of $11,727); *Bonfanti v. Davis*, 487 So.2d 165, 170 (La. App. 3 Cir. 1986) (reversing the trial court's $1,000 fee award and enforcing the contractual fee award of $2,927.61). Here, the contractual rate would produce a fee award 27% higher than the rate Harrison submits as reasonable under the Texas lodestar. In light of these circumstances and Defendants' lack of opposition, the Court concludes the requested fee is not clearly excessive. The Court therefore awards Harrison $1,289,879.12 in trial attorneys' fees.

C. *Post-judgment Interest on Trial Awards*

"In diversity cases, federal law controls the award of postjudgment interest, including decisions about when postjudgment interest begins to accrue." *Art Midwest, Inc. v. Clapper*, 805

F.3d 611, 615 (5th Cir. 2015). Under federal law, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Post-judgment interest is available "on the entire amount of the final judgment, including damages, prejudgment interest, and attorney's fees." *See Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1280 (5th Cir. 1991). When a court recognizes a right to damages, prejudgment interest, and attorneys' fees in the final judgment, post-judgment interest accrues from the date of the judgment. *See id.*; *Spear Mktg., Inc. v. Bancorpsouth Bank*, 2016 WL 193586, at *16 (N.D. Tex. Jan. 14, 2016) (Boyle, J.) (noting interest on attorneys' fees accrues from the date the court recognizes a right to the fees), *aff'd*, 844 F.3d 464 (5th Cir. 2016).

Post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding. [sic] the date of the judgment." 28 U.S.C. § 1961(a). This award is "compounded annually from the date of the entry of judgment." *Church of the Open Door of Waco v. Church Mut. Ins. Co.*, 604 F. Supp. 3d 543, 551 (W.D. Tex. 2022); 28 U.S.C. § 1961(b). When a judgment is affirmed on appeal, courts calculate post-judgment interest from the date of the entry of the judgment by the district court. *See Art Midwest*, 805 F.3d at 615–16. As noted above, the Court entered Final Judgment on September 7, 2021. Doc. 166, Final J. For the calendar week preceding the judgment, the average rate was 0.07% per annum. *See Selected Interest Rates (Daily) - H.15*, https://www.federalreserve.gov/releases/H15/data.htm; Federal Reserve Bank of St. Louis, *Selected Interest Rates Instruments, Yields in percent per annum: Weekly*, https://fred.stlouisfed.org/release/tables?rid=18&eid=290&od=2021-09-07#. The Court

therefore **GRANTS** Harrison's request for post-judgment interest on the damages, prejudgment interest, and attorneys' fees awards, at 0.07% per annum, from September 7, 2021, until paid.

D.   *Appellate Attorneys' Fees*

Harrison seeks $78,065.00 in attorneys' fees for successfully defending its summary judgment award on appeal. Doc. 174, Renewed Mot., 5. This amount reflects 120.5 hours billed by Harrison's appellate counsel, Thomas Loose and David Swanson. Doc. 174-1, Loose Decl., 3–4. Mr. Loose and Mr. Swanson are both partners at Locke Lord and billed at rates between $610 and $650 per hour. *Id.* at 1–3. Defendants raise several objections: (1) the requested rates do not reflect a reasonable hourly rate for the community, (2) the redacted billing entries do not provide enough information for meaningful review, and (3) the time was billed exclusively by partners. *See* Doc. 179, Renewed Mot. Resp., 3–7.

As previously mentioned, "[s]tate law controls both the award of and the reasonableness of [attorneys'] fees awarded where state law supplies the rule of decision." *Mathis*, 302 F.3d at 461. This is also true of appellate attorneys' fees. *See ATOM Instrument Corp. v. Petrol. Analyzer Co.*, 969 F.3d 210, 218–19 (5th Cir. 2020) (applying Texas law to determine the availability of appellate attorneys' fees for successful appeal of a Texas cause of action). On appeal, the Fifth Circuit applied Texas law. *See Harrison Co.*, 44 F.4th at 346 n.1. So on the issue of appellate attorneys' fees, the Court does the same.

"Under Texas law, if a party is entitled to recover attorneys' fees in the trial court, the party is also entitled to attorneys' fees after successfully defending on appeal." *ATOM Instrument*, 969 F.3d at 218. "The issue of appellate attorney's fees is a matter for the district court following the resolution of an appeal." *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 433 (5th Cir. 2003). "When a claimant wishes to obtain attorney's fees from the

opposing party, the claimant must prove that the requested fees are both reasonable and necessary." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 489 (Tex. 2019). The Texas lodestar analysis governs the reasonableness of appellate attorneys' fees awards. *See Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 354 (Tex. 2020); *Scott Pelley P.C. v. Wynne*, 578 S.W.3d 694, 703–04 (Tex. App.—Dallas 2019, no pet.).

To determine a reasonable fee, courts first calculate the lodestar by multiplying the number of hours reasonably expended by the reasonable hourly rate for such work. *Rohrmoos*, 578 S.W.3d at 489. Then courts apply the *Arthur Andersen* factors[5] to determine whether the lodestar should be adjusted. *Id.* (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)). The party seeking attorneys' fees must provide, "at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* at 502.

1.  Reasonable Rate

First, the Court addresses the reasonable market rate for similar services. The party seeking attorneys' fees bears the burden of establishing the prevailing market rate for similar services. *See id.* at 501–02. "Generally, the reasonable hourly rate for a particular community is

---

[5] They are
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

established through affidavits of other attorneys practicing there." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). And the Court typically receives "copies of resumes or summaries of the qualifications of attorneys involved in the litigation, as well as information regarding the individuals' litigation skills generally." *Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979, 987 n.19 (S.D. Tex. 1997).

Importantly, it is not enough to show that other attorneys of comparable skill, experience, and reputation charge the requested rates. The charged rates must also be similar to "other attorneys in the general locality or area doing *similar work*." *Brazos Cnty. Water Control & Imp. Dist. No. 1 v. Salvaggio*, 698 S.W.2d 173, 178 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) (emphasis added). Thus, "[t]he hourly rates of urban big law firm lawyers, for a large number of lawyers charging a large number of hours may be appropriate for complicated and risky litigations, or large-exposure matters, but may not be appropriate for less demanding cases." *Ross Dress for Less, Inc. v. ML Dev. LP*, 2022 WL 2704545, at *4 (S.D. Tex. July 12, 2022).

Harrison requests attorneys' fees between $610 and $650. It supports this request with declarations submitted in another case, *Hill*, 2022 WL 1321548. *See* Doc. 174-1, Loose Decl., 41–86. The *Hill* court found rates ranging from $730 to $830 reasonable for senior counsel and shareholders at Locke Lord who handled a Fifth Circuit appeal of a challenging and contentious litigation. *See Hill v. Washburne*, 953 F.3d 296, 301 (5th Cir. 2020) (noting the appeal was the fifth appeal of a settlement agreement intended to end protracted and complicated litigation concerning trusts).

However, such rates are the exception, not the rule. *See, e.g., US Green Bldg. Council, Inc. v. Wardell*, 2016 WL 3752964, at *8 (N.D. Tex. June 17, 2016) (Ramirez, Mag. J.) (collecting cases and reducing requested hourly rates to $500 per hour for experienced partners), *report and*

*recommendation adopted*, 2016 WL 3766362 (N.D. Tex. July 11, 2016) (Lynn, C.J.). Although this case was contentious, it was ultimately a contract dispute resolved at summary judgment. *See Fluor Corp. v. Citadel Equity Fund Ltd.*, 2011 WL 3820704, at *6 (N.D. Tex. Aug. 26, 2011) (Boyle, J.) ("The contentious nature of the litigation does not alter the fact that this suit was ultimately a contract interpretation dispute disposed of on summary judgment."). And the appeal did not present especially complicated issues. Given the complexity of the case, Harrison's requested rate of appellate attorneys' fees is unreasonable under Texas law. The Court notes that Harrison has either attached or referenced the qualifications of its counsel, and both are partners with significant experience. The Court finds $525 per hour is a reasonable rate for Harrison's appellate counsel.

2. Reasonable Hours

The party requesting attorneys' fees also bears the burden of showing the number of hours billed is reasonable. *Rohrmoos*, 578 S.W.3d at 501–02. Doing so requires "evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, [and] (4) the reasonable amount of time required to perform the services." *See id.* at 502; *Agredano v. State Farm Lloyds*, 2021 WL 4228340, at *9 (W.D. Tex. Sept. 16, 2021). "Charges for duplicative, excessive, or inadequately documented work should be excluded." *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762 (Tex. 2012).

Harrison asserts its counsel billed 120.5 hours on the appeal and argues this amount is reasonable. Doc. 174, Renewed Mot., 4–5. It notes that it used billing judgment and "excluded . . . block billed entries." Doc. 174-1, Loose Decl., 4. Defendants argue that Harrison's entries are block billed, vague, or overly redacted. Doc. 179, Renewed Mot. Resp., 5; Doc. 179-1, Korn Decl., 8–12. The Court agrees regarding one entry. Mr. Loose's entry for his work on January 10,

2022, insulates the entry from meaningful review. The Court therefore reduces the reasonable hours to 115.5. The Court otherwise disagrees with Defendants' characterization of Harrison's billing entries. The entries are almost entirely unredacted, specify the tasks completed, and do not impermissibly rely on block billing. The Court finds 115.5 hours is a reasonable number of hours to expend on this appeal. This lodestar calculation produces an award of $60,637.50.

### 3. Lodestar Adjustment

This lodestar calculation is "presumptively reasonable," but the Court must determine whether "other considerations . . . justify an enhancement or reduction" to this amount. *Rohrmoos*, 578 S.W.3d at 496, 501. The Court does so by weighing the *Arthur Andersen* considerations. *Id.* at 501. The Court may not apply "considerations already incorporated into the base calculation . . . to rebut the presumption that the base calculation reflects reasonable and necessary attorney's fees." *Id.* The remaining factors that may justify an enhancement or reduction are "'the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer,' 'the time limitations imposed by the client or by the circumstances,' and 'the nature and length of the professional relationship with the client.'" *Mignogna v. Funimation Prods., LLC*, 2022 WL 3486234, at *17 (Tex. App.—Fort Worth Aug. 18, 2022, pet. denied) (quoting *Rohrmoos*, 578 S.W.3d at 494, 499–500). Thus, an adjustment is only necessary in "rare circumstances." *Rohrmoos*, 578 S.W.3d at 502.

The Court finds adjustment of the lodestar is unnecessary. As mentioned, Defendants raise several objections to the requested appellate attorneys' fees: (1) the requested rates do not reflect a reasonable hourly rate for the community, (2) the redacted billing entries do not provide enough information for meaningful review, and (3) the time was billed exclusively by partners. *See* Doc. 179, Renewed Mot. Resp., 3–7. The Court finds the first two objections are resolved by

the Court's lodestar calculation. Harrison responds to the final objection by arguing it took "the most economical approach as the associates who worked on this matter through the summary judgment stage were no longer at Locke Lord. It would have taken a significant amount of time for a new associate to learn the facts needed to efficiently work on the appeal." Doc. 180, Renewed Mot. Reply. Under the circumstances, the Court agrees that such a decision does not justify adjustment of the lodestar. The Court therefore awards $60,637.50 in appellate attorneys' fees, reflecting a reasonable rate of $525 multiplied by 115.5 reasonable hours billed.

E.    *Post-judgment Interest on Appellate Attorneys' Fees*

As noted above, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Post-judgment interest on the Court's award of appellate attorneys' fees accrues from the date of the Court's forthcoming final judgment. *Fuchs*, 939 F.2d at 1280; 28 U.S.C. § 1961(a). For the calendar week preceding the judgment, the average rate was 5.36% per annum. *See Selected Interest Rates (Daily) - H.15*, https://www.federalreserve.gov/releases/H15/data.htm; Federal Reserve Bank of St. Louis, *Selected Interest Rates Instruments, Yields in percent per annum: Weekly*, https://fred.stlouisfed.org/release/tables?rid=18&eid=290&od=2023-08-18#. The Court therefore **GRANTS** Harrison's request for post-judgment interest on the appellate attorneys' fees award, at 5.36% per annum, from the date of this order, until paid.

## IV.

## CONCLUSION

Because Harrison is entitled to interest and attorneys' fees but not the total amount requested, the Court **GRANTS in part** and **DENIES in part** the Renewed Motion. Specifically,

in addition to the damages totaling $2,575,335.73 awarded at summary judgment, the Court awards Harrison

- $1,333,388.89 in prejudgment interest, reflecting 22% interest on the outstanding principal balance of $2,575,335.73 over a period of 859 days;

- $1,289,879.12 in trial attorneys' fees per the parties' contract; and

- $60,637.50 in appellate attorneys' fees, reflecting a reasonable rate of $525 multiplied by 115.5 reasonable hours billed.

In addition, the Court awards post-judgment interest on the damages, prejudgment interest, and trial attorneys' fees awards, which total $5,198,603.74, at the statutory rate of 0.07% per annum, compounded annually, from July 8, 2021, until paid. The Court also awards post-judgment interest on the appellate attorneys' fees award of $60,637.50, at the statutory rate of 5.36% per annum, compounded annually, from the date of the Court's forthcoming final judgment, until paid.

**SO ORDERED.**

**SIGNED: August 24, 2023.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE